## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

FORREST A K WELLS, Individually and
on Behalf of All Others Similarly Situated,

              Plaintiff,

     v.                                  **JURY TRIAL DEMANDED**

SEASTAR MEDICAL HOLDING
CORPORATION, ERIC SCHLORFF, and
CARYL BARON,

              Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

Plaintiff Forrest A K Wells ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SeaStar Medical Holding Corporation ("SeaStar" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the

1

Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired SeaStar securities between October 31, 2022 and March 26, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. SeaStar initially operated as a special purpose acquisition company ("SPAC")[1] under the name LMF Acquisition Opportunities, Inc. ("LMAO").

3. On April 22, 2022, the Company, then still operating as a SPAC, and SeaStar Medical, Inc. ("Legacy SeaStar"), a medical technology company developing extracorporeal therapies to reduce the consequences of excessive inflammation on vital organs, jointly announced that they had entered into a merger agreement (the "Merger Agreement"). As contemplated under the Merger Agreement, the combined company would be known as "SeaStar Medical Holding Corporation" and would operate under the same management team as Legacy SeaStar, with all Legacy SeaStar shares owned by Legacy SeaStar's existing equity holders to be converted into Class A Common Stock of the combined company (the "Merger").

4. The Company and Legacy SeaStar touted the overall prospects of the combined company following the Merger, asserting that Legacy SeaStar had an enterprise value of

---

[1] A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

approximately $85 million, while highlighting Legacy SeaStar's Selective Cytopheretic Device ("SCD") for the treatment of hyperinflammation and the SCD's regulatory and commercial prospects. For example, the companies announced that Legacy SeaStar intended to submit an application for its SCD for approval with the U.S. Food and Drug Administration ("FDA") under the Humanitarian Device Exemption ("HDE") to commence commercialization for the treatment of pediatric acute kidney injury ("AKI"). Moreover, the companies announced that the Merger had already been unanimously approved by both Legacy SeaStar and the Company's Boards of Directors and that the holders of a majority of Legacy SeaStar's voting power had likewise already approved the Merger, with the Merger subject to final approval by stockholders of the Company and other customary closing conditions.

5.     On July 20, 2022, the Company and Legacy SeaStar jointly announced that Legacy SeaStar had submitted an application under the HDE (the "HDE Application") to the FDA for use of Legacy SeaStar's SCD for critically ill children with AKI, which purportedly "follow[ed a] successful pilot study demonstrating the SCD was safe with probable clinical benefits for pediatric patients[.]"

6.     On October 17, 2022, the Company, Legacy SeaStar, and Vellar Opportunity Fund SPV LLC - Series 4 ("Vellar") entered into an agreement (the "Prepaid Forward Agreement") for an equity prepaid forward transaction. The terms of the Prepaid Forward Agreement permitted Vellar to purchase through a broker in the open market shares of Class A common stock, par value $0.0001 per share, of the Company (together with the shares of common stock of the post-Merger Company) from holders of those shares, other than the Company or affiliates of the Company.

7.      On October 18, 2022, following purported positive regulatory developments for the SCD, as announced by the Company and Legacy SeaStar following the unveiling of the Merger, the Company's stockholders voted to approve the Merger.

8.      On October 28, 2022, the Company and Legacy SeaStar consummated the Merger pursuant to the Merger Agreement, whereby a wholly owned subsidiary of the Company, LMF Merger Sub, Inc. ("Merger Sub"), merged with and into Legacy SeaStar, with Legacy SeaStar surviving that merger as a wholly owned subsidiary of the Company.  As a result of the Merger, Legacy SeaStar's business, operations, and management became the Company's business, operations, and management, and the Company renamed itself "SeaStar Medical Holding Corporation."

9.      The following trading day, October 31, 2022, the Company's common stock and warrants began publicly trading on the Nasdaq Stock Market ("NASDAQ") under the ticker symbols "ICU" and "ICUCW," respectively.

10.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) SeaStar and/or Legacy SeaStar had deficient compliance controls and procedures related to the HDE Application; (ii) accordingly, there were deficiencies with the HDE Application, the FDA was unlikely to approve the HDE Application in its present form, and the SCD's regulatory prospects were overstated; (iii) the Company had downplayed the true scope and severity of deficiencies in its financial controls and procedures, while overstating Defendants' efforts to remediate the same; (iv) accordingly, SeaStar had failed to properly account for the classification of certain outstanding warrants and the Prepaid Forward Agreement; (v) as a result, SeaStar was likely to restate one or

4

more of its previously issued financial statements; (vi) accordingly, SeaStar's post-Merger business and financial prospects were overstated; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

11.      On May 9, 2023, SeaStar announced that it had received a letter from the Center for Biologics Evaluation and Research ("CBER") of the FDA, rejecting the Company's HDE application for its pediatric SCD because "the application [wa]s not approvable in its current form[.]"  SeaStar's Chief Executive Officer ("CEO"), Defendant Eric Schlorff ("Schlorff"), also disclosed that the Company had engaged in "a series of [purported] collaborative meetings and correspondence over the past 10 months" with the FDA, had made repeated responses "to the Agency's recommendations," and that there were "current deficiencies cited by the Agency in their letter[.]"

12.      On this news, SeaStar's stock price[2] fell $0.77 per share, or 39.69%, to close at $1.17 per share on May 10, 2023.

13.      Then, on March 27, 2024, SeaStar announced that it would restate its financial statements for the fiscal year ended December 31, 2022, as well as for the interim periods ended March 31, 2023, June 30, 2023, and September 30, 2023 (the "Affected Periods").  The Company disclosed that the restatement would impact the accounting treatment and classification of certain outstanding warrants and the Prepaid Forward Agreement.  Defendant Schlorff further disclosed that "[t]he restatement . . . is related to the reporting of non-cash accounting items," noting that "[w]e pursued a [SPAC] as our route to become a public company in late 2022 due to the challenging market conditions at that time," but that, "[m]any SPACs, including ours, relied on a host of complex financial instruments" and, "[u]nfortunately, we determined that certain complex

---

[2] The historical closing stock prices and their attendant declines in value, as referenced herein, reflect the value of SeaStar's stock prior to a 1-for-25 stock split that took place on June 10, 2024, after the end of the Class Period.

financial instruments required accounting treatment that differed from our previous judgment, which led to the need for a restatement."

14.     On this news, SeaStar's stock price fell approximately $0.04 per share, or 4.84%, to close at approximately $0.71 per share on March 27, 2024.

15.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

16.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

18.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  SeaStar is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

19.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

20.     Plaintiff, as set forth in the attached Certification, acquired SeaStar securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

21.     Defendant SeaStar is a Delaware corporation with principal executive offices located at 3513 Brighton Boulevard, Suite 410, Denver, Colorado 80216.   The Company's common stock and warrants trade in an efficient market on the NASDAQ under the ticker symbols "ICU" and "ICUCW," respectively.

22.     Defendant Schlorff has served as SeaStar's CEO at all relevant times.

23.     Defendant Caryl Baron ("Baron") served as SeaStar's Interim CFO from before the start of the Class Period to January 10, 2024, after which she served as Vice President of Finance of the Company.

24.     Defendants Schlorff and Baron are collectively referred to herein as the "Individual Defendants."

25.     The Individual Defendants possessed the power and authority to control the contents of SeaStar's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of SeaStar's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with SeaStar, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

26.     SeaStar and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

27.     SeaStar initially operated as a SPAC under the name LMF Acquisition Opportunities, Inc.

28.     On April 22, 2022, the Company, then still operating as a SPAC, and Legacy SeaStar, a medical technology company developing extracorporeal therapies to reduce the consequences of excessive inflammation on vital organs, jointly announced that they had entered into the Merger Agreement.  As contemplated under the Merger Agreement, the combined company would be known as "SeaStar Medical Holding Corporation" and would operate under the same management team as Legacy SeaStar, with all Legacy SeaStar shares owned by Legacy SeaStar's existing equity holders to be converted into Class A Common Stock of the combined company.

29.     The Company and Legacy SeaStar touted the overall prospects of the combined company following the Merger, asserting that Legacy SeaStar had an enterprise value of approximately $85 million, while highlighting Legacy SeaStar's SCD for the treatment of hyperinflammation and the SCD's regulatory and commercial prospects.  For example, the companies announced that Legacy SeaStar intended to submit an application for its SCD for approval with the FDA under the HDE to commence commercialization for the treatment of pediatric AKI.  Moreover, the companies announced that the Merger had already been

8

unanimously approved by both Legacy SeaStar and the Company's Boards of Directors and that the holders of a majority of Legacy SeaStar's voting power had likewise already approved the Merger, with the Merger subject to final approval by stockholders of the Company and other customary closing conditions.

30.     On July 20, 2022, the Company and Legacy SeaStar jointly announced that Legacy SeaStar had submitted the HDE Application to the FDA for use of Legacy SeaStar's SCD for critically ill children with AKI, which purportedly "follow[ed a] successful pilot study demonstrating the SCD was safe with probable clinical benefits for pediatric patients[.]"

31.     On October 17, 2022, the Company, Legacy SeaStar, and Vellar entered into the Prepaid Forward Agreement for an equity prepaid forward transaction.  The terms of the Prepaid Forward Agreement permitted Vellar to purchase through a broker in the open market shares of Class A common stock, par value $0.0001 per share, of the Company (together with the shares of common stock of the post-Merger Company) from holders of those shares, other than the Company or affiliates of the Company.

32.     On October 18, 2022, following purported positive regulatory developments for the SCD, as announced by the Company and Legacy SeaStar following the unveiling of the Merger, the Company's stockholders voted to approve the Merger.

33.     On October 28, 2022, the Company and Legacy SeaStar consummated the Merger pursuant to the Merger Agreement, whereby a wholly owned subsidiary of the Company, Merger Sub, merged with and into Legacy SeaStar, with Legacy SeaStar surviving that merger as a wholly owned subsidiary of the Company.  As a result of the Merger, Legacy SeaStar's business, operations, and management became the Company's business, operations, and management, and the Company renamed itself "SeaStar Medical Holding Corporation."

34.     The following trading day, October 31, 2022, the Company's common stock and warrants began publicly trading on the NASDAQ under the ticker symbols "ICU" and "ICUCW," respectively.

**Materially False and Misleading Statements Issued During the Class Period**

35.     The Class Period begins on October 31, 2022, when SeaStar issued a press release (the "October 2022 Press Release") during pre-market hours, announcing that the newly combined Company had commenced trading on the NASDAQ and outlining the Company's corporate strategy and near-term catalysts.  The October 2022 Press Release touted the HKD Application and the SCD's regulatory prospects, stating, *inter alia*:

> The Company's innovative platform therapy, the SCD, is a patented cell-directed extracorporeal therapy that selectively targets the most activated pro-inflammatory neutrophils and monocytes to stop the cytokine storm that causes organ failure and possible death in critically ill patients. The therapy works with continuous kidney replacement therapy (CKRT) to target and neutralize pro-inflammatory neutrophils and monocytes allowing the body to return to homeostasis.

> * * *

> Based on positive findings from SeaStar Medical's Pilot Study (NCT02820350) of pediatric patients with AKI which demonstrated that the SCD was safe for use in pediatric patients, the Company filed for [HDE] with the [FDA] for use of the SCD for critically ill children over 20 kg with AKI.

> *Upcoming Expected Value-Driving Milestones*

> - Q1 2023: FDA approval under HDE

> - Q2 2023: Commercial launch of SCD for pediatric AKI

36.     The October 2022 Press Release also quoted Defendant Schlorff, who likewise touted the HKD Application and the SCD's regulatory prospects, as well as SeaStar's business and financial prospects, stating, in relevant part:

> SeaStar Medical has continued to deliver on its promises with operational excellence. I am incredibly pleased with the progress made and proud of the team

that has put in a tremendous amount of effort to get the Company to where we are today . . . . As a publicly listed company, we gain valuable access to the capital markets which I believe will help build momentum and propel the Company to the next level of growth. In addition to the progress we've made on the corporate front, we continue to advance our innovative SCD therapy platform. We have a number of value-driving anticipated milestones, including our potential near-term evolution to a commercial stage company driven by potential FDA approval in our lead program, pediatric AKI . . . . I am excited for what is to come and look forward to providing updates as we execute on the milestones ahead.

37.     On November 3, 2022, SeaStar issued a press release "announc[ing] positive interim data" from an ongoing study evaluating the SCD in children.  That press release stated that "[t]he SCD is currently being evaluated by the FDA for [HDE] marketing approval for use in children (>20 kgs) with AKI"; that "[t]he Company expects the FDA to complete a substantive review of its HDE application during the first quarter of 2023, with a potential commercial launch expected in the second quarter of 2023"; and that "Stuart Goldstein, MD, Director of the Center for Acute Care Nephrology at Cincinnati Children's Hospital" had "served as a consultant to SeaStar Medical in the preparation and submission of the HDE [A]pplication."

38.     On November 14, 2022, SeaStar filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2022 (the "3Q22 10-Q").  With respect to SeaStar's classification of certain warrants as liabilities, the 3Q22 10-Q stated, in relevant part:

> The Company evaluates all of its financial instruments, including issued stock purchase warrants, to determine if such instruments are derivatives or contain features that qualify as embedded derivatives, pursuant to ASC 480 and ASC 815-15. The classification of derivative instruments, including whether such instruments should be recorded as liabilities or as equity, is re-assessed at the end of each reporting period. In accordance with ASC 825-10 "Financial Instruments", offering costs attributable to the issuance of the derivative warrant liabilities have been allocated based on their relative fair value of total proceeds and are recognized in the statement of operations as incurred.
>
> The 10,350,000 warrants issued in connection with the IPO (the "Public Warrants") and the 5,738,000 Private Placement Warrants are recognized as derivative

liabilities in accordance with ASC 815-40. Accordingly, the Company recognizes the warrant instruments as liabilities at fair value and adjust the instruments to fair value at each reporting period. The liabilities are subject to re-measurement at each balance sheet date until exercised. The fair value of the Public Warrants issued are estimated using the quoted market price and Private Placement Warrants have been estimated using a Monte Carlo simulation model each measurement date. Derivative warrant liabilities are classified as non-current liabilities as their liquidation is not reasonably expected to require the use of current assets or require the creation of current liabilities.

39.     The 3Q22 10-Q also downplayed the true scope and severity of deficiencies in

SeaStar's financial controls and procedures, stating, in relevant part:

Our management evaluated, with the participation of [the Individual Defendants], the effectiveness of our disclosure controls and procedures as of September 30, 2022, pursuant to Rule 13a-15(b) under the Exchange Act. Based upon that evaluation, [the Individual Defendants] concluded that, as of September 30, 2022, our disclosure controls and procedures were not effective.

Specifically, management's determination was based *solely* on the following material weaknesses which existed as of September 30, 2022. Since inception in 2020 to the present, the Company did not effectively segregate certain accounting duties due to the small size of its accounting staff. In addition, we did not have sufficient controls in place surrounding the accounting of complex financial instruments. This lack of control led to improper accounting classification of warrants we issued in January 2021 which, due to its impact on our financial statements. This lack of control led to improper accounting classification of warrants we issued in January 2021 which we determined to be a material weakness. This mistake in classification was brought to our attention only when the SEC issued a Staff Statement on Accounting and Reporting Considerations for Warrants Issued by [SPACs] dated April 12, 2021 (the "SEC Statement"). The SEC Statement addresses certain accounting and reporting considerations related to warrants of a kind similar to those we issued at the time of our initial public offering in January 2021.

* * *

In connection with the evaluation of the SEC Statement and management's subsequent re-evaluation of its Prior Financials, the Company determined that there were errors in its accounting for its warrants and shares as temporary equity. Management concluded that a deficiency in internal control over financial reporting existed relating to the accounting treatment for complex financial instruments and that the failure to properly account for such instruments constituted a material weakness. This material weakness resulted in the need to restate the Prior Financials.

(Emphasis added.)

40.     Indeed, the 3Q22 10-Q assured investors that, "[n]otwithstanding the determination that our internal control over financial reporting was not effective, as of September 30, 2022, and that there was a material weakness as identified in this Quarterly Report, we believe that our financial statements contained in this Quarterly Report fairly present our financial position, results of operations and cash flows for the periods covered hereby in all material respects"—thereby effectively representing that the identification of a material weakness related to SeaStar's accounting for warrants had no bearing on the accuracy of SeaStar's reported financial results.

41.     Appended as exhibits to the 3Q22 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 3Q22 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

42.     On December 2, 2022, SeaStar issued a press release entitled "SeaStar Medical Bolsters Operational Expertise with Appointment of Thomas R. Mullen as Vice President of Operations and Product Development" (the "December 2022 Press Release"), stating, in relevant part:

> SeaStar . . . today announced the appointment of Thomas R. Mullen as Vice President of Operations and Product Development. Mr. Mullen is a proven medical device professional with 30 years of experience leading business operations, manufacturing, engineering, ***product development and regulatory remediation***.

* * *

Mr. Mullen has served as a consultant to SeaStar Medical since 2020, during which time he oversaw contract manufacturing activities, ***assisted with agency submissions and provided remediation of compliance documentation***.

* * *

As VP, Operations and Product Development, Mr. Mullen will oversee the development and advancement of the Company's [SCD] . . . . The SCD is currently being evaluated by the FDA for a[n HDE] marketing approval for use in children (>20 kgs) with [AKI]. The Company expects the FDA to complete a substantive review of its HDE application during the first quarter of 2023, with a potential commercial launch expected in the second quarter of 2023.

(Emphases added.)

43.     The December 2022 Press Release also quoted Defendant Schlorff, who stated, in relevant part:

SeaStar Medical has continued to evolve and remains on a trajectory of growth including near-term potential for commercialization. As we continue our preparations for success in treating both acute and chronic illnesses through advanced product offerings, we believe Tom's extensive experience and expertise will be invaluable. We have had the pleasure of working with Tom since 2020 and during that time he has, among other things, ***ensured that our business objectives and agency regulations were met***. As we continue to progress, we are pleased to welcome him as VP, Operations and Product Development, and look forward to continuing to leverage the leadership and skills he has amassed over the course of his career[.]

(Emphasis added.)

44.     On March 30, 2023, SeaStar issued a press release announcing its 2022 financial results and providing a business update (the "FY22 Earnings Release"). The FY22 Earnings Release reported, *inter alia*, that SeaStar's total assets amounted to approximately $4.77 million, while the Company's total liabilities amounted to approximately $13 million, for the year ended December 31, 2022.

45. With respect to the HDE Application, the FY22 Earnings Release stated, in relevant part:

> We anticipate our first U.S. regulatory approval for the SCD will be for pediatric patients with AKI being treated in the ICU with CKRT.
>
> * * *
>
> - In June 2022 we submitted an [HDE] application to the FDA, having met the criteria with clinical results showing safety and probable clinical benefit to critically ill children with AKI who have few treatment options. A non-controlled pivotal study funded by the FDA Office of Orphan Products Development showed that those treated with the SCD had no reported adverse events, a 50% reduction in mortality rate and no dialysis required at Day 60. The U.S. addressable population of about 4,000 pediatric patients is within the 8,000-patient HDE criteria.
>
> - We continue active discussions with the FDA regarding the HDE application and remain hopeful for a near-term determination.

46. Also on March 30, 2023, SeaStar filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2022 (the "2022 10-K"). The 2022 10-K affirmed that SeaStar's total assets amounted to approximately $4.77 million, while the Company's total liabilities amounted to approximately $13 million, for the year ended December 31, 2022.

47. With respect to SeaStar's various warrants and the classification of those warrants, the 2022 10-K stated, *inter alia*:

> Prior to the [Merger], SeaStar Medical, Inc. had outstanding warrants to purchase shares of SeaStar Medical, Inc.'s preferred stock which had been issued in conjunction with various debt financings. Upon effectiveness of the [Merger], 57,942 outstanding warrants were converted into 69,714 warrants to purchase common stock of SeaStar Medical Holding Corporation ("Legacy SeaStar Warrants") at their previous exercise prices. On December 31, 2022, there were 69,714 Legacy SeaStar Warrants outstanding, which are accounted for as equity.
>
> As part of LMAO's initial public offering, under the Warrant Agreement dated as of January 25, 2021 and, prior to the effectiveness of the [Merger], LMAO issued 10,350,000 warrants each of which entitled the holder to purchase one share of

common stock at an exercise price of $11.50 per share ("Public Stockholders' Warrants"). Simultaneously with the closing of the Initial Public Offering, LMAO completed the private sale of 5,738,000 million warrants each of which entitled the holder to purchase one share of common stock at an exercise price of $11.50 per share, to LMAO's sponsor ("Private Placement Warrants"). Upon the effectiveness of the [Merger], the outstanding Public Stockholders' Warrants and Private Placement Warrants automatically converted into warrants of SeaStar Medical Holding Corporation. The Company has reviewed the terms of the warrants to determine whether the warrants should be classified as liabilities or stockholders' deficit in its consolidated balance sheets. In order for a warrant to be classified in stockholders' deficit, the warrant must be (a) indexed to the Company's equity and (b) meet the conditions for equity classification in ASC 815-40, Derivatives and Hedging-Contracts in an Entity's own Equity. If a warrant does not meet the conditions for equity classification, it is carried on the consolidated balance sheets as a warrant liability measured at fair value, with subsequent changes in the fair value of the warrant recorded in the consolidated statements of operations as change in fair value of warrants. The Company determined that the warrants are required to be classified as stockholders' deficit as of the date of the [Merger]. The Company has the ability to redeem outstanding Public Shareholders' Warrants at any time after they become exercisable and prior to their expiration, at a price of $0.01 per warrant, provided that the last reported sales price of our common stock equals or exceeds $18.00 per share . . . for any 20 trading days within a 30 day trading-day period. The Company does not have the ability to redeem the Private Placement Warrants. The Private Placement Warrants were valued at $6,688 at the date of the [Merger] date. On December 31, 2022, there were 10,350,000 Public Shareholders' Warrants outstanding and 5,738 Private placement Warrants outstanding.

On October 28, 2022, the Company entered into a Private Investment in Public Equity ("PIPE") Agreement, pursuant to which the PIPE investors purchased an aggregate of 700,000 shares of common stock at $10.00 per share and received 700,000 PIPE Investor Warrants, which entitled the holder to purchase one share of common stock of SeaStar Medical Holding Corporation at $11.50 per share, for an aggregate purchase price of $7,000. At December 31, 2022, there were 700,000 PIPE Investor Warrants outstanding, which are accounted for as equity.

48.     With respect to the Prepaid Forward Agreement entered into between the Company,

Legacy SeaStar, and Vellar (in addition to a separate forward purchase agreement entered into

with another entity), as well as the Company's accounting for the same, the 2022 10-K stated, in

relevant part:

On October 17 and October 25, 2022, LMAO and [Legacy SeaStar] entered into forward purchase agreements ("FPA") with [Vellar] and HB Strategies LLC ("HB Strategies" and together with Vellar, the "FPA Sellers"). According to the terms of

the FPAs, the FPA Sellers purchased, through a broker in the open market, shares of Class A Common Stock from holders other than LMAO or affiliates of LMAO, including from holders who had previously elected to redeem shares pursuant to the redemption rights in connection with the [Merger] (such purchased shares, the "Recycled Shares").

\* \* \*

The FPA Sellers may in its [*sic*] discretion sell Recycled Shares they purchased, (the "Terminated Shares"). The Company is entitled to proceeds from sales of Terminated Shares equal to the number of Terminated Shares multiplied by the Reset Price (the "Reset Price"). Following the closing of the [Merger] (the "Closing"), the Reset Price will initially be $10.00 per Share, but will be adjusted on the last scheduled trading day of each month commencing on the first calendar month following the Closing to the lowest of (a) the then-current Reset Price, (b) $10.00 and (c) the volume weighted average price ("VWAP Price") of the Shares of the last ten (10) trading days of the prior calendar month, but not lower than $5.00.

The maturity date of the FPA (the "Maturity Date") will be the earliest of (a) the third anniversary of the Closing, and (b) after any occurrence during any 30 consecutive trading-day period, the VWAP Price for 20 trading days is less than $3.00 per Share, at the FPA Seller decision.

At the Maturity Date, the FPA Sellers will be entitled to retain a cash amount equal to the number of unsold Recycled Shares multiplied by $2.50, and the FPA Sellers will deliver to the Company the unsold Recycled Shares.

As of December 31, 2022, the FPA Sellers have paid the Company proceeds from sales of Terminated Shares of $0.0 million. While the Company may receive cash proceeds from sales of Terminated Shares by FPA Sellers, the FPA Sellers may not have any incentive to sell Terminated Shares unless the trading price of our Common Stock is above the Reset Price. The Reset Price on February 10, 2023 was $5.00 per share, and there is no guarantee that the trading price of our Common Stock will equal or exceed the current Reset Price, or that the future trading price of our Common Stock may equal or exceed the Reset Price in subsequent applicable periods. In such a case, the FPA Sellers may not sell Terminated Shares, in which case we will not be able to receive any cash proceeds from the FPAs. In addition, if the FPA Sellers decide to sell their shares into the market, it may cause the trading price of our Common Stock to decline significantly.

49.     In addition, the 2022 10-K continued to downplay the true scope and severity of

deficiencies in SeaStar's financial controls and procedures, while simultaneously touting

Defendants' efforts to remediate the same, stating, in relevant part:

17

In the course of preparing the consolidated financial statements that are included in this Annual Report, the Company has identified material weaknesses in its internal controls over financial reporting as of December 31, 2022, which relates to a deficiency in the design and operation of its financial accounting and reporting controls . . . . Specifically, the Company identified deficiencies in internal controls over financial reporting which were determined to rise to the level of material weakness. The Company has identified that additional headcount will be addressed in the near term to allow for further research and internal dialogue on complex accounting transactions prior to final conclusion. The Company will also continue to review the overall internal control environment as we develop the requisite internal control framework.

50.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 41, *supra*, signed by the Individual Defendants.

51.     The statements referenced in ¶¶ 35-50 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) SeaStar and/or Legacy SeaStar had deficient compliance controls and procedures related to the HDE Application; (ii) accordingly, there were deficiencies with the HDE Application, the FDA was unlikely to approve the HDE Application in its present form, and the SCD's regulatory prospects were overstated; (iii) the Company had downplayed the true scope and severity of deficiencies in its financial controls and procedures, while overstating Defendants' efforts to remediate the same; (iv) accordingly, SeaStar had failed to properly account for the classification of certain outstanding warrants and the Prepaid Forward Agreement; (v) as a result, SeaStar was likely to restate one or more of its previously issued financial statements; (vi) accordingly, SeaStar's post-Merger business and financial prospects were overstated; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

52.     In addition, throughout the Class Period, SeaStar's periodic financial filings were required to disclose the adverse facts and circumstances detailed above regarding the Company's HDE Application and the SCD's regulatory prospects under applicable SEC rules and regulations. Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required the Company to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants' failure to disclose the damage that would result from the likely delayed approval of the HDE Application, especially in light of the Company's self-professed "continu[ing] active discussions with the FDA" regarding that application, violated Item 303 because this issue represented known trends and uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Begins to Emerge

53.     On May 9, 2023, during post-market hours, SeaStar issued a press release (the "May 2023 Press Release"), announcing that it had received a letter from the FDA's CBER, rejecting the Company's HDE application for its pediatric SCD, stating, in relevant part:

> SeaStar . . . has received a letter from the [CBER] of the [FDA] regarding the Company's [HDE] application for its pediatric [SCD], which is designed to treat critically ill children with [AKI] on [CKRT]. In the letter, ***the FDA indicated that the application is not approvable in its current form*** but outlined specific guidance as to how the application may be amended and resubmitted successfully.

(Emphasis added.)

54.     The May 2023 Press Release also quoted Defendant Schlorff, who stated, in relevant part:

> We are disappointed by the FDA's decision not to approve our HDE application at this time. After a series of collaborative meetings and correspondence over the past 10 months, and repeatedly being responsive to the Agency's recommendations, this determination is surprising[.]

19

* * *

> We believe that each of the current deficiencies cited by the Agency in their letter are readily addressable. However, we intend to initially request FDA's administrative review and submit an appeal if needed. In parallel, we plan to implement other mitigations, where appropriate, and continue working with CBER with the goal of achieving pediatric HDE approval[.]

55.     On this news, SeaStar's stock price fell $0.77 per share, or 39.69%, to close at $1.17 per share on May 10, 2023.  Despite this decline in the Company's stock price, SeaStar securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of deficiencies in the Company's financial controls and procedures, as well as Defendants' efforts to remediate the same.

56.     For example, on May 15, 2023, SeaStar issued a press release announcing its first quarter 2023 financial results and providing a business update.  That press release reported, *inter alia*, that the Company's total liabilities amounted to $14.27 million, that net total other expenses amounted to $521,000, and that net loss amounted to approximately $5.3 million for the quarter.

57.     Also on May 15, 2023, SeaStar filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2023 (the "1Q23 10-Q").  The 1Q23 10-Q affirmed that SeaStar's total liabilities amounted to $14.27 million and that net loss amounted to approximately $5.3 million for the quarter, as well as reported, *inter alia*, that net total other expenses amounted to $681,000 (as opposed to $521,000) for the quarter.

58.     In addition, the 1Q23 10-Q contained substantively the same statements as referenced in ¶ 48, *supra*, regarding the Prepaid Forward Agreement entered into between the Company, Legacy SeaStar, and Vellar, and the Company's accounting for the same.

59.     The 1Q23 10-Q also contained substantively the same statements as referenced in ¶ 49, *supra*, downplaying the true scope and severity of deficiencies in SeaStar's financial controls and procedures, while simultaneously touting Defendants' efforts to remediate the same.

60.     Appended as exhibits to 1Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 41, *supra*, signed by the Individual Defendants.

61.     On August 14, 2023, SeaStar issued a press release announcing its second quarter 2023 financial results and providing a business update. That press release reported, *inter alia*, that the Company's total liabilities amounted to approximately $13.78 million for the quarter, and that net total other expenses amounted to $595,000, while net loss amounted to approximately $8.93 million, for the six months ended June 30, 2023.

62.     Also on August 14, 2023, SeaStar filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2023 (the "2Q23 10-Q"). The 2Q23 10-Q affirmed that SeaStar's total liabilities amounted to approximately $13.78 million for the quarter, and that net total other expenses amounted to $595,000, while net loss amounted to approximately $8.93 million, for the six months ended June 30, 2023.

63.     With respect to the Prepaid Forward Agreement and SeaStar's accounting for the same, the 2Q23 10-Q stated, in relevant part:

> During the six months ended June 30, 2023, 374,005 recycled shares were sold by Forward Purchase Agreement Sellers ("FPA Sellers"). The Company received $1,870 for the shares sold and recognized a gain of $1,306 on the sale. Losses on remeasurement of $69 and $1,723 were recorded in Change in fair value of forward option-prepaid forward contracts on the unaudited condensed consolidated statements of operations for the three and six months ended June 30, 2023, respectively.
>
> In March 2023, the price of the Company stock was below $3.00 for more than 20 trading days and the FPA Sellers at their discretion had the ability to specify the

maturity dates for the FPA. During the three months ended June 30, 2023, the FPA
Sellers specified the maturity dates and the FPAs matured and were settled by
transferring 1,096,972 shares to the FPA Sellers, with a fair value of $558. As the
FPAs were classified as a liability at fair value, upon settlement, the FPAs were
marked to their fair value at the settlement dates and the liability was settled.

64.     In addition, the 2Q23 10-Q contained substantively the same statements as
referenced in ¶ 49, *supra*, downplaying the true scope and severity of deficiencies in SeaStar's
financial controls and procedures, while simultaneously touting Defendants' efforts to remediate
the same.

65.     Appended as exhibits to 2Q23 10-Q were substantively the same SOX certifications
as referenced in ¶ 41, *supra*, signed by the Individual Defendants.

66.     On November 14, 2023, SeaStar issued a press release announcing its third quarter
2023 financial results and providing a business update.  That press release reported, *inter alia*, that
the Company's total liabilities amounted to $18.15 million for the quarter, and that net total other
expenses amounted to approximately $5.09 million, while net loss amounted to approximately
$16.36 million, for the nine months ended September 30, 2023.

67.     Also on November 14, 2023, SeaStar filed a quarterly report on Form 10-Q with
the SEC, reporting the Company's financial and operating results for the quarter ended September
30, 2023 (the "3Q23 10-Q").  The 3Q23 10-Q affirmed that SeaStar's total liabilities amounted to
$18.15 million for the quarter, and that net total other expenses amounted to approximately $5.09
million, while net loss amounted to approximately $16.36 million, for the nine months ended
September 30, 2023.

68.     With respect to the Prepaid Forward Agreement and SeaStar's accounting for the
same, the 3Q23 10-Q stated, in relevant part:

During the nine months ended September 30, 2023, 374,005 recycled shares were
sold by Forward Purchase Agreement Sellers ("FPA Sellers"). The Company

received $1,870 for the shares sold and recognized a gain of $1,306 on the sale. Losses on remeasurement of $0 and $1,723 were recorded in Change in fair value of forward option-prepaid forward contracts on the unaudited condensed consolidated statements of operations for the three and nine months ended September 30, 2023, respectively.

In March 2023, the price of the Company stock was below $3.00 for more than 20 trading days and the FPA Sellers at their discretion had the ability to specify the maturity dates for the Forward Purchase Agreements ("FPA"). During the nine months ended September 30, 2023, the FPA Sellers specified the maturity dates and the FPAs matured and were settled by transferring 1,096,972 shares to the FPA Sellers, with a fair value of $558. As the FPAs were classified as a liability at fair value, upon settlement, the FPAs were marked to their fair value at the settlement dates and the liability was settled.

69.     In addition, the 3Q23 10-Q contained substantively the same statements as referenced in ¶ 49, *supra*, downplaying the true scope and severity of deficiencies in SeaStar's financial controls and procedures, while simultaneously touting Defendants' efforts to remediate the same.

70.     Appended as exhibits to 3Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 41, *supra*, signed by the Individual Defendants.

71.     The statements referenced in ¶¶ 56-70 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had downplayed the true scope and severity of deficiencies in its financial controls and procedures, while overstating Defendants' efforts to remediate the same; (ii) accordingly, SeaStar had failed to properly account for the classification of certain outstanding warrants and the Prepaid Forward Agreement; (iii) as a result, SeaStar was likely to restate one or more of its previously issued financial statements; (iv) accordingly, SeaStar's post-Merger business and financial prospects

were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

72.     On March 27, 2024, during pre-market hours, SeaStar issued a press release (the "March 2024 Press Release") announcing that it would restate its financial statements for the Affected Periods, stating, *inter alia*:

> SeaStar . . . will restate its financial statements for the fiscal year ended December 31, 2022 and for the interim periods ended March 31, 2023, June 30, 2023 and September 30, 2023.
>
> The restatement will impact the accounting treatment and classification of certain outstanding warrants and the [Prepaid Forward Agreement]. Due to the additional audit procedures involved in the restatement, SeaStar Medical expects to file Form 12b-25 with the [SEC], which provides issuers with a 15-day grace period to file an Annual Report on Form 10-K, which is deemed to have been timely filed.

73.     The March 2024 Press Release also quoted Defendant Schlorff, who stated, in relevant part:

> The restatement is not expected to have a material impact on our business operations or our cash position, but rather is related to the reporting of non-cash accounting items . . . . We pursued a [SPAC] as our route to become a public company in late 2022 due to the challenging market conditions at that time. Many SPACs, including ours, relied on a host of complex financial instruments. Unfortunately, we determined that certain complex financial instruments required accounting treatment that differed from our previous judgment, which led to the need for a restatement.

74.     Also on March 27, 2024, during pre-market hours, SeaStar filed a current report on Form 8-K (the "March 2024 8-K") with the SEC, which provided additional details regarding the Company's need to restate financial statements for the Affected Periods, stating, in relevant part:

> On March 21, 2024, after discussion with the Company's management, the Audit Committee determined that a restatement of the Company's audited financial statements for the fiscal year ended December 31, 2022 and unaudited interim financial statements for the fiscal quarters ended March 31, 2023, June 30, 2023

and September 30, 2023 would be appropriate in order to restate the accounting treatment of the following instruments:

1.   *Classification of Warrants* — Private placement and PIPE warrants (the "**Liability Classified Warrants**") were originally classified as components of stockholders' equity, however, there were certain features that precluded equity classification in accordance with ASC 815-40 – Derivatives and Hedging - Contracts in Entity's Own Equity and resulted in the warrants being liability classified. The Liability Classified Warrants are required to be remeasured at each reporting period date, and the changes in fair value recognized as a component of earnings.

2.   *Prepaid Forward Purchase Agreements* — The prepaid forward purchase agreements were originally accounted for as net assets of the Company, with changes in fair value recognized through earnings. However, after further analysis, the prepaid forward purchase agreements should have been accounted for as hybrid instruments constituting a combination of (i) a subscription receivable on the Company's own common stock and (ii) an embedded derivative liability in the form of a future settlement at maturity of $2.50 per share of the Company's common stock not sold off to investors. The prepayment amount is required to be classified in the equity section of the Company's consolidated balance sheet and the derivative liability is required to be remeasured at each reporting period date, and the changes in fair value recognized as a component of earnings.

The Company's [CFO] and Audit Committee discussed the matters disclosed herein with WithumSmith+Brown, PC, ("WSB") who was appointed as the Company's independent registered public accounting firm on November 28, 2023, as well as Armanino LLP, the Company's independent registered accounting firm prior to the WSB appointment.

The Company intends to include the (i) original and (ii) the amended and restated (including the necessary reconciling bridges): (a) Consolidated Balance Sheets, (b) Consolidated Statements of Operations, (c) Consolidated Statements of Changes in Stockholders' Deficit and (d) Consolidated Statements of Cash Flows necessary to provide the relevant understanding of those financial statement captions restated for the following periods: (1) As of and the year-ended December 31, 2022, (2) three-months ended March 31, 2023, (3) three-and six-months ended June 30, 2023, and (4) three-and nine-months ended September 30, 2023.   The proposed restatement described above impacts non-cash items in the Company's financial statements.

In addition, the Company expects to disclose in its Form 10-K a material weakness in its design and operation of effective internal controls over financial reporting in connection with the aforementioned restatement.

75.     Following SeaStar's issuance of the March 2024 Press Release and filing of the March 2024 8-K, the Company's stock price fell approximately $0.04 per share, or 4.84%, to close at approximately $0.71 per share on March 27, 2024.

76.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

77.     On April 16, 2024, SeaStar filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 10-K").  Among other results, the 2023 10-K reported SeaStar's amended and restated financial statements for the Affected Periods, including, *inter alia*, total assets that declined from approximately $4.77 million to approximately $3.04 million, as well as total liabilities that increased from approximately $13 million to $23.8 million, for the year ended December 31, 2022; total liabilities that increased from $14.27 million to approximately $27.02 million for the quarter ended March 31, 2023; total liabilities that increased from approximately $13.78 million to approximately $14.35 million for the quarter ended June 30, 2023; and total liabilities that increased from $18.15 million to approximately $18.53 million for the quarter ended September 30, 2023.

78.     In addition, the 2023 10-K revealed that net total other expenses had increased from $681,000 to approximately $2.52 million, while net losses had increased from approximately $5.3 million to approximately $7.1 million, for the three months ended March 31, 2023; that net total other expenses had increased from $595,000 to approximately $1.21 million, while net losses had increased from approximately $8.93 million to approximately $9.54 million, for the six months

ended June 30, 2023; and that net total other expenses had increased from approximately $5.09 million to approximately $5.5 million, while net losses had increased from approximately $16.36 million to approximately $16.78 million, for the nine months ended September 30, 2023.

## SCIENTER ALLEGATIONS

79.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  As a SPAC, SeaStar's value to investors relied primarily, if not entirely, on Defendants' ability to close a merger with another company or entity of promising value. Accordingly, Defendants widely touted the regulatory and commercial prospects of Legacy SeaStar's SDE product in the months leading up to the Company's stockholder meeting to approve the Merger.  Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired SeaStar securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

81.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, SeaStar securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by SeaStar or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

82.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

83.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

84.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SeaStar;

- whether the Individual Defendants caused SeaStar to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of SeaStar securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

85.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

86.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- SeaStar securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold SeaStar securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

87.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

88.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

89.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

90.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

91.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SeaStar securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire SeaStar securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

92.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to inSeaStar the market for SeaStar securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about SeaStar's finances and business prospects.

93.     By virtue of their positions at SeaStar, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

94.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of SeaStar, the Individual Defendants had knowledge of the details of SeaStar's internal affairs.

95.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

31

SeaStar.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to SeaStar's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of SeaStar securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning SeaStar's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired SeaStar securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

96.    During the Class Period, SeaStar securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of SeaStar securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of SeaStar securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of SeaStar securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

97.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

98.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

99.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    During the Class Period, the Individual Defendants participated in the operation and management of SeaStar, and conducted and participated, directly and indirectly, in the conduct of SeaStar's business affairs.  Because of their senior positions, they knew the adverse non-public information about SeaStar's misstatement of income and expenses and false financial statements.

101.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to SeaStar's financial condition and results of operations, and to correct promptly any public statements issued by SeaStar which had become materially false or misleading.

102.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which SeaStar disseminated in the marketplace during the Class Period concerning

SeaStar's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause SeaStar to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of SeaStar within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of SeaStar securities.

103.    Each of the Individual Defendants, therefore, acted as a controlling person of SeaStar.  By reason of their senior management positions and/or being directors of SeaStar, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, SeaStar to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of SeaStar and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

104.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by SeaStar.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  July 5, 2024

Respectfully submitted,

POMERANTZ LLP

<u>*/s/ Jeremy A. Lieberman*</u>
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 01E0719F-5505-47BC-8A54-773126A78C06

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.   I, __Forrest A K Wells_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against SeaStar Medical Holding Corporation ("SeaStar") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire SeaStar securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired SeaStar securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   The attached sheet lists all of my transactions in SeaStar securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: 01E0719F-5505-47BC-8A54-773126A78C06

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed** <u>5/1/2024</u>
                     **(Date)**



        **(Signature)**

Forrest A K Wells
_____
       **(Type or Print Name)**

**SeaStar Medical Holding Corporation (ICU)**                                **Forrest AK Wells**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 1/17/2024 | 10 | $0.6100 |
| Purchase/Acquisition | 1/18/2024 | 70 | $0.6049 |
| Purchase/Acquisition | 1/18/2024 | 3 | $0.5900 |
| Purchase/Acquisition | 1/18/2024 | 1 | $0.5900 |
| Purchase/Acquisition | 1/18/2024 | 4 | $0.6000 |
| Purchase/Acquisition | 1/25/2024 | 35 | $0.8200 |
| Purchase/Acquisition | 1/25/2024 | 2 | $0.8500 |
| Purchase/Acquisition | 2/7/2024 | 1 | $0.8300 |
| Purchase/Acquisition | 2/9/2024 | 44 | $0.8398 |
| Purchase/Acquisition | 2/9/2024 | 2 | $0.8400 |
| Purchase/Acquisition | 2/9/2024 | 17 | $0.8400 |
| Purchase/Acquisition | 2/9/2024 | 1 | $0.8500 |
| Purchase/Acquisition | 2/12/2024 | 160 | $0.9500 |
| Purchase/Acquisition | 2/12/2024 | 45 | $0.9242 |
| Purchase/Acquisition | 2/13/2024 | 5 | $0.9580 |
| Purchase/Acquisition | 2/13/2024 | 1 | $0.9500 |
| Purchase/Acquisition | 2/14/2024 | 17 | $0.8800 |
| Purchase/Acquisition | 2/22/2024 | 2 | $1.0500 |
| Purchase/Acquisition | 2/22/2024 | 130 | $1.0700 |
| Purchase/Acquisition | 2/27/2024 | 230 | $0.7517 |
| Purchase/Acquisition | 2/27/2024 | 15 | $0.7533 |
| Purchase/Acquisition | 3/1/2024 | 905 | $0.7990 |
| Purchase/Acquisition | 3/1/2024 | 11 | $0.8045 |
| Purchase/Acquisition | 3/1/2024 | 2 | $0.8050 |
| Purchase/Acquisition | 3/4/2024 | 185 | $0.7801 |
| Purchase/Acquisition | 3/4/2024 | 2 | $0.7750 |
| Purchase/Acquisition | 3/4/2024 | 3 | $0.7767 |
| Purchase/Acquisition | 3/4/2024 | 3 | $0.7800 |
| Purchase/Acquisition | 3/4/2024 | 1 | $0.7700 |
| Purchase/Acquisition | 3/5/2024 | 103 | $0.7599 |
| Purchase/Acquisition | 3/5/2024 | 20 | $0.7600 |
| Purchase/Acquisition | 3/5/2024 | 2 | $0.7500 |
| Purchase/Acquisition | 3/6/2024 | 28 | $0.6854 |
| Purchase/Acquisition | 3/6/2024 | 70 | $0.6823 |
| Sale | 3/14/2024 | (130) | $0.8650 |