# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

FORREST A K WELLS, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

           v.

SEASTAR MEDICAL HOLDING CORPORATION, ERIC SCHLORFF, and CARYL BARON,

                Defendants.

Civil Action No. 1:24-cv-01873-RMR-TPO

JURY TRIAL DEMANDED

<u>CLASS ACTION</u>

---

# OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
# AMENDED CLASS ACTION COMPLAINT

---

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   SUMMARY OF FACTS ............................................................................ 1

      A.   SeaStar and Its Lead Product Candidate ....................................... 1

      B.   Defendants Exploited HDE Approval to Secure a $85 Million Valuation ...... 2

      C.   Defendants Misrepresented the Review Process and FDA Interactions ...... 3

      D.   Persistent Deficiencies Forced Formal Action by the FDA .......................... 4

      E.   Perpetual GAAP Violations Required Significant Restatement ................... 5

III.  RELEVANT LEGAL STANDARD ............................................................. 6

IV.   ARGUMENT .............................................................................................. 7

      A.   The Complaint Is Not an Impermissible Puzzle Pleading ........................... 7

      B.   The Complaint Adequately Pleads Falsity of the HDE Statements .............. 8

           1.  The HDE Statements Are Not Shielded by Statutory Safe Harbor ...... 14

           2.  The HDE Statements Are Material Statements of Fact ....................... 17

      C.   The Complaint Adequately Pleads Baron "Made" All Misstatements ......... 20

      D.   The Complaint Adequately Pleads Scienter to HDE Statements .............. 21

      E.   The Complaint Adequately Pleads Scienter to Accounting Statements ..... 26

      F.   The Complaint Adequately Pleads Loss Causation to HDE Statements ... 29

V.    CONCLUSION ........................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**

*Abady v. Lipocine Inc.*,

No. 2:19-cv-00906, 2023 WL 2938210 (D. Utah Apr. 13, 2023) ........................... 8, 30

*Adams v. Kinder-Morgan, Inc.*,

340 F.3d 1083 (10th Cir. 2003) .......................................................... 26, 28

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,

532 F.Supp.3d 189 (E.D. Pa. 2021).......................................................... 17

*In re Amylin Pharms. Inc. Sec. Litig.*,

No. 01CV1455 BTM (NLS), 2003 WL 21500525 (S.D. Cal. May 1, 2003)................. 18

*In re Ancor Communs., Inc. Sec. Litig.*,

22 F. Supp. 2d 999 (D. Minn. 1998)......................................................... 28

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,

505 F.Supp.2d 662 (D. Colo. 2007) ......................................................... 27

*In re Atossa Genetics Inc. Sec. Litig.*,

868 F.3d 784 (9th Cir. 2017) ................................................................. 16

*Atlas v. Accredited Home Lenders Holding Co.*,

556 F.Supp.2d 1142 (S.D. Cal. 2008) ....................................................... 20

*Bielousov v. GoPro, Inc.*,

No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017)......................... 26

*In re BioMarin Pharm. Inc. Sec. Litig.*,

No. 3:20-cv-06719-WHO, 2022 WL 164299 (N.D. Cal. Jan. 6, 2022)....................... 25

*In re Biovie Inc. Sec. Litig.*,

No. 3:24-cv-00035-MMD-CSD, 2025 WL 947667 (D. Nev. Mar. 27, 2025)...... 9, 16, 25

*Butala v. Owlet,* Inc.,

No. 2:21-cv-09016-FLA (JEMx), 2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) ........... 25

*In re Carter's, Inc. Sec. Litig.*,

No. 1:08–CV–02940–AT, 2012 WL 3715241 (N.D. Ga. Aug. 28, 2012)..................... 27

*In re Catalina Marketing Corp. Sec. Litig.,*

390 F.Supp.2d 1110 (M.D. Fla. 2005) ......................................................................... 27

*Central Laborers' Pension Fund v. Integrated Elec. Servs.*,

497 F.3d 546 (5th Cir. 2007) ...................................................................................... 26

*Cheetany v. Bergstrom*,

No. 2:20-cv-01692-GMN-DJA, 2022 WL 2541778 (D. Nev. June 21, 2022).............. 10

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,

No. 3:21-cv-00762-WQH-NLS, 2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .......... 30

*Costabile v. Natus Med. Inc.*,

293 F.Supp.3d 994 (N.D. Cal. 2018)........................................................................... 16

*Croker v. Carrier Access Corp.,*

No. Civ.05CV01011LTB-OES. 2006 WL 2035366 (D. Colo. July 18, 2006)............... 23

*Cupat v. Palantir Techs., Inc.*,

No. 22-CV-02384-GPG-SBP, 2024 WL 1374903 (D. Colo. Mar. 31, 2024).................. 8

*Curley v. Perry*,

246 F.3d 1278 (10th Cir. 2001) .................................................................................. 30

*In re CV Therapeutics, Inc.*,

No. C 03–03709 SI, 2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ........................ 13, 16

*Dura Pharms., Inc. v. Broudo*,

544 U.S. 336 (2005) .............................................................................................. 29

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,

709 F.Supp.3d 1296 (D. Colo. 2023) ............................................................ 14, 18, 28

*In re Emergent Biosolutions Inc. Sec. Litig.*,

Civ. No. DLB-21-955, 2023 WL 5671608 (D. Md. Sept. 1, 2023).............................. 22

*Emps.' Ret. Sys. of R.I v. Williams Cos., Inc.,*

889 F.3d 1153 (10th Cir. 2018) ............................................................................. 8, 15

*Exkae Ltd. v. Domo, Inc.*,

No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735 (D. Utah Dec. 15, 2020).................. 8

*Fort Worth Employers' Retirement Fund v. Biovail Corp.,*

615 F.Supp.2d 218 (S.D.N.Y. 2009)......................................................................... 30

*Frater v. Hemispherx Biopharma, Inc.,*

996 F.Supp.2d 335 (E.D. Pa. 2014)............................................................... 9, 12, 25

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,

No. 2:20-cv-00368-JNP-DBP, 2022 WL 716653 (D. Utah Mar. 9, 2022).......... 8, 13, 14

*Glazer Cap. Mngmt., L.P. v. Forescout Tech., Inc.*,

63 F.4th 747 (9th Cir. 2023) ............................................................................... 11, 17

*In re Gold Res. Corp. Sec. Litig.*,

957 F.Supp.2d 1284 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) ........ 15, 16

*Gorlamari v. Verrica Pharms., Inc.*,

No. 22-cv-2226, 2024 WL 150341 (E.D. Pa. Jan. 11, 2024) ...................................... 10

*Goucher v. Iterum Therapeutics plc*,

648 F.Supp.3d 962 (N.D. Ill. 2022) ........................................................................ 14

*Gov't of Guam Ret. Fund v. Invacare Corp.*,

No. 1:13CV1165, 2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) .............................. 12

*Hammer v. Frontier Fin. Corp.*,

Case No. C10-0643, 2011 WL 13229260 (W.D. Wash. Sept. 7, 2011) ...................... 20

*Hedick v. Kraft Heinz Co.*,

Case No. 19-cv-1339, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021)........................... 16

*Heiner v. Watford*,

No. 20-cv-02652-NYW-STV, 2022 WL 18777077 (D. Colo. Nov. 21, 2022), *aff'd and*

*adopted by* 2023 WL 2824288 (D. Colo. Mar. 27, 2023)........................................... 30

*Homyk v. ChemoCentryx*,

No. 21-cv-03343-JST, 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)............. 10, 24, 25

*Hsing Ching Hsu v. Puma Biotech., Inc.*,

No. SACV 15-00865 AG (JCGx), 2017 WL 3205774 (C.D. Cal. July 25, 2017)......... 17

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,

706 F.Supp.3d 1225 (D. Kan. 2023) ......................................................................... 9

*In re Immune Response Sec. Litig.*,

375 F.Supp.2d 983 (S.D. Cal. 2005)................................................................. 14, 23

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,

45 F.4th 1236 (10th Cir. 2022) ........................................................................passim

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.,*

620 F.Supp.3d 167 (D.N.J. 2022) .......................................................................... 12, 30

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,

564 U.S. 135 (2011)...................................................................................................... 20

*KB Partners I, L.P. v. Pain Therapeutics, Inc.,*

No. A-11-CA-1034-SS, 2015 WL 7760201 (W.D. Tex. Dec. 1, 2015)......................... 30

*Khoja v. Orexigen Therapeutics*,

899 F.3d 988 (9th Cir. 2018) ...................................................................................... 18

*Lamothe v. Decentral Life, Inc.*,

No. 23-cv-03251-RMR-STV, 2024 WL 5055576 (D. Colo. Oct. 24, 2024), *adopted sub*

*nom.* 2024 WL 5055579 (D. Colo. Nov. 12, 2024 ...................................................... 21

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,

667 F.3d 1331 (10th Cir. 2012) ................................................................................. 9, 19

*Lorusso v. Boulder Brands, Inc.*,

No. 15-cv-00679-MSK-KMT, 2017 WL 4365180 (D. Colo. Mar. 1, 2017).................. 15

*Luo v. Spectrum Pharms., Inc.*,

No. 2:21-cv-01612-CDS-BNW, 2024 WL 4443323 (D. Nev. Oct. 7, 2024) .......... 19, 25

*Matrixx Initiatives, Inc. v. Siracusano*,

563 U.S. 27 (2011)................................................................................................. 6, 7, 8

*In re Mannkind Sec. Litig.*,

835 F.Supp.2d 797 (C.D. Cal. 2011)...................................................................... 23, 30

*In re Medicis Pharms. Corp. Sec. Litig.*,

Nos. CV-08-1821-PHX-GMS, et. al., 2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ....... 27

*Medina v. Clovis Oncology, Inc.*,

    215 F.Supp.3d 1094 (D. Colo. 2017) .............................................................. 14, 22, 25

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,

    MDL No. 1658 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011)................................ 14

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,

    761 F.3d 1109 (10th Cir. 2014) ................................................................................. 18

*In re MGM Mirage Sec. Litig.*,

    No. 2:09-cv-01558-GMN-VCF, 2013 WL 5435832 (D. Nev. Sept. 26, 2013.............. 16

*In re MicroStrategy, Inc. Sec. Litig.*,

    115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................................. 26, 29

*In re Molson Coors Beverage Co. Sec. Litig.*,

    1:19-cv-00455-DME-MEH, 2020 WL 13499995 (D. Colo. Dec. 2, 2020)................... 27

*In re: Motor Fuel Temp. Sales Pracs. Litig.*,

    872 F.3d 1094 (10th Cir. 2017) ................................................................................... 7

*Mulligan v. Impax Lab'ys, Inc.*,

    36 F.Supp.3d 942 (N.D. Cal. 2014)...................................................................... 12, 23

*N. Port Firefighters' Pension-Loc. Option Plan v. Fushi Copperweld, Inc.*,

    929 F. Supp. 2d 740 (M.D. Tenn. 2013).................................................................... 27

*Nakkhumpun v. Taylor*,

    782 F.3d 1142 (10th Cir. 2015) .................................................................................. 21

*Naomi L. Miles Revocable Tr. v. Lawrence*,

    Nos. 10-CV-034-S, 2013 WL 11431711 (D. Wyo. Mar. 28, 2013) .............................. 20

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,

  No. CIVA–04CV–1030–RPM, 2005 WL 4161977 (D. Colo. Oct. 20, 2005) ............... 14

*In re Nuvelo, Inc. Sec. Litig.*,

  668 F.Supp.2d 1217 (N.D. Cal. 2009) ......................................................................... 17

*Omnicare, Inc. v. Laborers Dist. Cncl. Constr. Indus. Pension Fund*,

  575 U.S. 175 (2015) ...................................................................................... 18, 19

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,

  No. 19-cv-0124-WJM-SKC, 2020 WL 5500458 (D. Colo. Sept. 11, 2020) ........... 13, 29

*Osher v. JNI Corp.*,

  183 F. App'x 604 (9th Cir. 2006) ................................................................................. 30

*Phx. Ins. Co., Ltd. v. ATI Physical Therapy, Inc.*,

  690 F.Supp.3d 862 (N.D. Ill. 2023) ............................................................................ 16

*Pirraglia v. Novell, Inc.*,

  339 F.3d 1182 (10th Cir. 2003) .................................................................................. 19

*In re QuantumScape Sec. Litig.*,

  580 F.Supp.3d 714 (N.D. Cal. 2022) .......................................................................... 13

*In re Ribozyme Pharms., Inc. Sec. Litig.*,

  119 F.Supp.2d 1156 (D. Colo. 2000) .......................................................................... 21

*Robb v. Fitbit Inc.*,

  No. 16-cv-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) .............................. 24

*In re Rocket Fuel, Inc. Sec. Litig.*,

  No. 14-cv-3998-PJH, 2015 WL 9311921 (N.D. Cal. Dec. 23, 2015) .......................... 21

*Rosi v. Aclaris Therapeutics, Inc.*,

    19-cv-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ................................. 22

*Salzman v. ImmunityBio, Inc.*,

    753 F.Supp.3d 1050 (S.D. Cal. June 20, 2024) ............................................ 11, 12, 23

*In re SCANA Corp. Sec. Litig.*,

    C/A No. 3:17-2616-MBS, 2019 WL 1427443 (D.S.C. Mar. 29, 2019) ................. 18, 19

*In re Scottish Re Grp. Sec. Litig.,*

    524 F.Supp.2d 370 (S.D.N.Y. 2007)................................................................... 28

*Schueneman v. Arena Pharm., Inc.*,

    840 F.3d 698 (9th Cir. 2016) ................................................................... 11, 22

*Schwartz v. Celestial Seasonings, Inc.*,

    124 F.3d 1246 (10th Cir. 1997) ................................................................. 20

*SEC v. GenAudio, Inc.*,

    32 F.4th 902 (10th Cir. 2022) ............................................................... 17, 19

*SEC v. Pocklington*,

    No. EDCV 18-0701 JGB (SPx), 2018 WL 6843665 (C.D. Cal. Nov. 29, 2018) .......... 20

*SEC v. Willis*,

    No. 22-cv-02744-GPG-SKC, 2023 WL 11956416 (D. Colo. Sept. 29, 2023) ............. 24

*In re SemGroup Energy Partners, L.P.,*

    729 F.Supp.2d 1276 (N.D. Okla. 2010).............................................................. 8, 22

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,

    348 F.Supp.3d 313 (S.D.N.Y. 2018)........................................................................ 24

*Simmons Invs., Inc. v. Conversational Computing Corp.*,

No. 09-CV-2345 EFM/KMH, 2011 WL 673759 (D. Kan. Feb. 17, 2011).....................16

*Takara Tr. v. Molex Inc.*,

429 F.Supp.2d 960 (N.D. Ill. 2006) ...........................................................................15

*In re Take-Two Interactive Sec. Litig.*,

551 F.Supp.2d 247 (S.D.N.Y. 2008)..........................................................................28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308 (2007) .............................................................................................. 6, 21

*Thant v. Rain Oncology Inc.*,

No. 5:23-cv-03518-EJD, 2025 WL 588994 (N.D. Cal. Feb. 24, 2025) .......................30

*Thomas v. Magnachip Semiconductor Corp.*,

167 F.Supp.3d 1029 (N.D. Cal. 2016)........................................................................28

*Todd v. Staar Surgical Co.*,

No. CV-14-05263-MWF-RZ, 2016 WL 6699284 (C.D. Cal. April 12, 2016) ..............22

*Tomaszewski v. Trevena, Inc.*,

482 F.Supp.3d 317 (E.D. Pa. 2020)...........................................................................10

*Touchtone Grp., LLC v. Rink*,

913 F.Supp.2d 1063 (D. Colo. 2012 ..........................................................................21

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,

No. 18-cv-02104-DME-NYW, 2019 WL 2521834 (D. Colo. June 18, 2019)..............29

*U.S. v. Gordon*,

710 F.3d 1124 (10th Cir. 2013) ............................................................................. 8, 11

x

*Voulgaris v. Array Biopharma Inc.*,

   No. 17-cv-02789-KLM, 2020 WL 8367829 (D. Colo. Nov. 24, 2020) ................... 11, 25

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,

   Nos. 05-cv-01265-WDM-MEH, et. al., 2008 WL 879023 (D. Colo. Mar. 28, 2008) .... 15

*Warshaw v. Xoma Corp.*,

   74 F.3d 955 (9th Cir. 1996) ..................................................................... 10

*Weston v. DocuSign, Inc.*,

   No. 22-cv-00824-WHO, 2023 WL 3000583, at *17 (N.D. Cal. Apr. 18, 2023)............ 18

*In re Williams Sec. Litig.*,

   339 F.Supp.2d 1242 (N.D. Okla. 2003)....................................................... 8, 17, 19, 27

*In re Williams Sec. litig.-WCG Subclass*,

   558 F.3d 1130 (10th Cir. 2009) ................................................................ 29

*Yanek v. Staar Surgical Co.*,

   388 F.Supp.2d 1110 (C.D. Cal. 2005) ................................................... 10, 23

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,

   426 F.Supp.3d 864 (D. Kan. 2019) ....................................................... 8, 26

*Zucco Partners, LLC v. Digimarc Corp.*,

   552 F.3d 981 (9th Cir. 2009) ................................................................... 28

**Regulations**

17 C.F.R. § 240.10b-5(b)............................................................................ 9

## I.    INTRODUCTION

Defendants' liability is clear. Internally, they knew SeaStar's only pending application for its flagship product, the Selective Cytopheretic Device (SCD), was rife with deficiencies and review was delayed, yet publicly they told investors that nothing was amiss and remained on schedule. They used these lies to go public via a de-SPAC transaction, raising millions in much needed capital, only made possible through major private placements. Then, to avoid a disproportionate impact on SeaStar's fragile financial status in the near term, they continued to cover up persistent deficiencies and omit materialized risks until it became certain those risks could not be avoided. At the same time, they repeatedly violated fundamental tenets of ASC 815, concealing significant liabilities on SeaStar's balance sheet, while attesting to the accuracy of financial reporting.

The truth about the strength and readiness of the application was partially revealed in May 2023 when SeaStar was forced to announce that instead of achieving target completion, the FDA rejected the application in its then-current form causing a 40% drop in SeaStar stock price. Then, in October 2023, SeaStar revealed further delays due to enduring deficiencies causing another 20% drop in its stock price. Despite these declines, SeaStar securities remained artificially inflated until the truth about Defendants' GAAP violations and deficient internal controls came out with the announcement that SeaStar was restating two years of financials due to ASC 815 errors. Defendants' motion should be denied as Plaintiffs have adequately pleaded violations of the federal securities laws.

## II.    SUMMARY OF FACTS

### A.    SeaStar and Its Lead Product Candidate

As a Class III device, SCD is subject to FDA Pre-Market Approval (PMA) requiring an order declaring it substantially equivalent to specified indications prior to use. ¶¶107-

13.[1] For more than 15 years pre-Class Period, SeaStar prioritized the collection of data necessary for approval, conducting pre-clinical and clinical studies designed to validate several acute organ injury indications. ¶¶102-06. Approval was vital to SeaStar's survival as it had yet to generate any revenue and was operating on a significant deficit. ¶289.

### B. Defendants Exploited HDE Approval to Secure a $85 Million Valuation

Securing funding for the expensive approval process placed SeaStar in a dilemma. ¶¶287-88. SeaStar needed tens of millions of dollars it was unable to raise. ¶¶289-90. But to attract more funding, it needed to be able to sell its flagship SCD – the very product not yet approved. *Id.* Aware of its dire financial condition, SeaStar followed a strategy used by other small companies seeking to avoid traditional IPO disclosure obligations, gaining access to public markets by merging with the SPAC, LMAO. ¶¶19-28, 45-46. However, to complete the deal, SeaStar needed a pre-money valuation of at least $84.5 million. ¶296. Defendants exploited expediated review under the Human Device Exception (HDE) to access capital. ¶¶42, 111-19. Under HDE, a PMA subset, applicants are afforded a relaxed review in that they are not required to establish effectiveness (only safety), and review is shortened from 180-days to 75-days. ¶¶114-22. With no approved products, the prospect of HDE approval for SCD for pediatric AKI primarily contributed to SeaStar's valuation and was a deciding factor for successful merger execution. ¶¶42-46, 297-306.

On April 21, 2022, LMAO and SeaStar Legacy entered into a merger agreement. ¶40. Despite claims of unanimous acceptance by the boards of directors and majority shareholders of SeaStar Legacy, the deal was still subject to LMAO stockholder approval.

---

[1] Citations to "¶__" refer to Amended Class Action Complaint ("Complaint") (ECF No. 29).

¶41. LMAO's deal with SeaStar Legacy marked an abrupt departure from its previously stated intent to acquire a FinTech company with a value of $250-$500 million, thereby resulting in near total exercised redemptions (10,257,655 of the 10,350,000 outstanding shares as of October 17) which in turn necessitated "Forward Purchase Agreements" to close the deal. ¶¶23, 25-29, 44-45, 59-67.

### C.    Defendants Misrepresented the Review Process and FDA Interactions

On July 13, 2022, the FDA accepted SeaStar's application (the "HDE Application"), initiating the 75-day review under HDE. ¶137. Free of any holds or resets, the review period ended September 26, 2022. ¶137. Unbeknownst to investors, however, review was delayed as the FDA privately told SeaStar it lacked significant information necessary for completion, necessitating numerous amendments. ¶138. Despite being aware of non-public FDA concerns, Defendants repeatedly endorsed the application and assured investors that target completion was proceeding as planned. ¶136. On October 31, 2022 (the start of the Class Period), SeaStar announced closing the merger, highlighting submission under HDE and reaffirming its "Q1 2023: FDA approval" and "Q2 2023: Commercial launch." ¶¶140-41. On December 2, they proclaimed SeaStar "remains on a trajectory of growth including near-term potential for commercialization." ¶142. Further obscuring the risks of delay or denial of SeaStar's only application, Defendants provided only positive FDA interactions and implied the traditional 180-day review applied, offering misleading updates, like on March 30, 2023: "[b]ased on the current timeline for the HDE application [submitted in 'June 2022'], we expect the FDA to complete its substantive review … during the first half of 2023." ¶¶143-45. During this time, the FDA continued to privately raise concerns with Defendants, resulting in five additional attempts to cure deficiencies, bringing the then-current total up to seventeen (17). ¶138.

3

### D.    Persistent Deficiencies Forced Formal Action by the FDA

On May 9, 2023, SeaStar was forced to reveal its receipt of a "Not Approvable Letter" indicating the HDE Application was "not approvable in its current form" and outlining "specific guidance as to how the application may be amended and resubmitted." ¶¶147-48. On this news, SeaStar's stock price plummeted 40%. ¶149.

SeaStar securities remained artificially inflated, however, as Defendants continued to misrepresent the strength and readiness of the application and their ability to comply with regulatory standards. ¶¶150-51. As discussed above, their recurring failure to provide sufficient information resulted in seventeen (17) amendments and corresponding delays. Further, according to HDE Guidance, Defendants would have received a Major Deficiency Letter *before* the Not Approvable Letter informing them that it lacked significant information necessary for completion, providing them the opportunity to remedy these issues. ¶¶128-131. Only after the applicant (SeaStar) has failed to provide an adequate response to a Major Deficiency Letter will the FDA issue a Not Approvable Letter. ¶131.

Nevertheless, Defendants declared "each of the current deficiencies cited by the Agency in their letter are readily addressable," and on May 15, claimed to be "working with the FDA to secure a [HDE] for use of the SCD to treat critically ill children with AKI, and we are now targeting approval in later 2023." ¶¶152-53. That same day, SeaStar amended again, followed by two more amendments on June 9 and September 26. ¶138.

Then, on October 3, 2023, Defendants attempted to hedge off negative reaction to SeaStar's receipt of yet another FDA formal action other than an approval order. ¶¶155-57. That day, they announced a "correspondence" indicating an Approvable Letter would be issued within the month claiming this is a "standard part of CBER's approval process," declaring it "an important milestone for SeaStar [], and we intend to follow the regulatory

4

path laid out by the FDA to commercialize SCD for this indication by the end of 2023."
¶¶156-57. What they left out, however, was that non-public FDA communications raised concerns as to SeaStar's continued failure to provide necessary information, resolving to take formal action to cite deficiencies that must be cured prior to any order, triggering another hold for complete response which, in turn, would reset the clock. ¶¶126-27.

On October 30, 2023, the market learned the true nature of the Approvable Letter, the extent of cited deficiencies and their impact on target completion. ¶¶158-59. That day, Defendants revealed the letter's contents which indicated multiple deficiencies to cure including "revisions to product labeling" and "modifications to the post-approval study plan," and further delay of approval as a result. ¶159. On this news, SeaStar's stock price dropped nearly 20%. ¶160. Following Defendants' first mention of an Approvable Letter, SeaStar submitted an additional twelve (12) amendments for a total of thirty-two (32) prior to approval, nearly two years after its original submission date of July 1, 2022. ¶¶137-38.

### E.    Perpetual GAAP Violations Required Significant Restatement

With the HDE Application struggling and no other prospects for near-term revenue, Defendants concealed SeaStar's grim financial position after the merger through their misapplication of applicable accounting standards for reporting assets and liabilities. ASC 815 is a well-established GAAP principle that Defendants were required to evaluate and apply correctly to ensure the accuracy and completeness of SeaStar's financial reporting. ¶¶69-72, 80-81, 232. The FASB first issued ASC 815 in 2017, with widely publicized simplifications in 2020. ¶¶72-85, 91-98, 233-35. ASC 815 brings greater transparency to the financial leverage and capital employed by companies. ¶¶73, 79. It requires warrants, not considered indexed to a company's common shares, receive a liability classification (¶¶81-87), and derivative instruments, embedded or not, be recognized as assets or

liabilities and measured at fair value (¶¶91-98). As alleged, ASC 815 can be simple to understand, and the SEC issued numerous advisories for proper application of ASC 815. ¶¶86, 235-44. Throughout the Class Period, Defendants classified outstanding PIPE and Private Placement Warrants as equity, and Forward Purchase Agreements as non-derivative freestanding contracts not to be measured at fair value. ¶¶25, 47-67, 88-101. Schlorff and Baron attested to the accuracy of its financial reporting, disclosure of any material changes to internal controls, and all fraud. ¶¶68, 246-49. In March 2024, however, SeaStar was forced to announce the need to restate its financial statements during Affected Periods due to the misapplication of ASC 815 for identified warrants and Forward Purchase Agreements. ¶¶162-64. In April 2024, SeaStar revealed its full financial impact. ¶¶166-70. SeaStar's stock price dropped after each revelation. ¶¶165, 171.

III.    **RELEVANT LEGAL STANDARD**

To subsist a Rule 12(b)(6) motion, a complaint "need only allege enough facts to state a claim for relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011). For this inquiry, courts "must consider the complaint in its entirety," "accept all factual allegations … as true," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "construe them in the light most favorable to the plaintiff." *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247-48 (10th Cir. 2022).

To state a § 10(b) claim, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant [*i.e.*, falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx*, 563 U.S. at 37-38. Plaintiffs allege two general categories of misstatements relating to:

6

(1) SeaStar's financial results, GAAP compliance, and internal controls over financial reporting (*i.e.*, the "Accounting Statements") (¶¶191, 200-04, 209-12, 214-17, and 225-28); and (2) SeaStar's HDE Application, its approval pathway and target completion, as well as FDA interactions (*i.e.*, the "HDE Statements") (¶¶174-75, 177, 179-80, 182-83, 185, 187-88, 193-94, 197-98, 206-07, 219, and 221-22). Defendants challenge falsity, scienter, and loss causation as to the HDE Statements (Defs. Br. at 7-23); as to the Accounting Statements, they challenge **only scienter** (*Id*. at 24-30). For reasons set forth below, each of their challenges fail, and any arguments not raised are waived. *See, e.g.*, *In re: Motor Fuel Temp. Sales Pracs. Litig.*, 872 F.3d 1094, 1110 n.4 (10th Cir. 2017) (declining consideration when defendant "didn't raise this argument in its opening brief").

## IV.    ARGUMENT

### A.    The Complaint Is Not an Impermissible Puzzle Pleading

As an initial matter, Defendants incorrectly imply the Complaint is an impermissible puzzle pleading, while also arguing it lacks enough facts to satisfy particularity. Defs. Br. at 1-2. The Complaint here is carefully organized with a designated section identifying each alleged misstatement, who made it, when and where, and directly after each, explains why it was false or misleading when made. ¶¶173-229. Courts routinely find "[s]uch straightforward, organized pleading does not constitute a burdensome 'puzzle' for the court to solve." *Gelt Trading, Ltd. v. Co-Diagnostics, Inc*., 2022 WL 716653, at *4 (D. Utah Mar. 9, 2022) (sufficient pleading where plaintiff followed same structure); *Exkae Ltd. v. Domo, Inc*., 2020 WL 7352735, at *3 (D. Utah Dec. 15, 2020) (same); *In re Williams Sec. Litig.*, 339 F.Supp.2d 1242, 1261 (N.D. Okla. 2003) (same). Further, by alleging the "who, what, when, where and why" of the alleged fraud, Plaintiffs satisfy the pleading standards of Rule 9(b) and the PSLRA. *In re SemGroup Energy Partners, L.P.,* 729

F.Supp.2d 1276, 1288 (N.D. Okla. 2010); *see, e.g.*, *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F.Supp.3d 864, 873 (D. Kan. 2019) (rejecting same arguments).[2]

## B.    The Complaint Adequately Pleads Falsity of the HDE Statements

It is unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, … not misleading." 17 C.F.R. § 240.10b-5(b). A statement is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Emps.' Ret. Sys. of R.I v. Williams Cos., Inc.,* 889 F.3d 1153, 1164 (10th Cir. 2018). A statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx*, 563 U.S. at 38. As such, once a defendant "*elects* to disclose material facts, he must speak fully and truthfully, and provide complete and non-misleading information." *U.S. v. Gordon*, 710 F.3d 1124, 1142 (10th Cir. 2013). Defendants here made several materially false and misleading statements under the HDE Statements. Collectively, "these statements [ ] make an attentive investor far more sanguine about the prospects of [timely] approval than was merited by the reality of the situation." *Frater v. Hemispherx Biopharma, Inc.,* 996 F.Supp.2d 335, 347 (E.D. Pa. 2014).

***First***, throughout 4Q22 and 1Q23, Defendants represented that "having met the criteria with clinical results showing safety and probable clinical benefit…," SeaStar "submitted an HDE application … in June 2022," reaffirming its "Upcoming Expected Value-Driven Milestones" as "Q1 2023: FDA approval under HDE" and "Q2 2023:

---

[2] The structure here is distinct from Defendants' cases, where the alleged misstatements were not separated or emphasized nor accompanied by reasons for falsity. *See* Defs. Br. at 2 (citing *Cupat v. Palantir Techs., Inc.*, 2024 WL 1374903, at *1 (D. Colo. Mar. 31, 2024) and *Abady v. Lipocine Inc.*, 2023 WL 2938210, at *12 (D. Utah Apr. 13, 2023)).

8

Commercial launch of SCD for pediatric AKI." ¶¶174-75, 177, 179-80, 182-83, 185, 187, 193, 197. Such statements were "inconsistent with" with internal information known and concealed by Defendants at the time. *IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 706 F.Supp.3d 1225, 1247-51 (D. Kan. 2023) ("expected cost-savings" misleading when "internal reports" showed it significantly behind "projected figure" at the time). The FDA had already told Defendants, multiple times, that the application lacked significant information necessary for review completion and was at risk of delay or denial. ¶¶111-38, 151-54. Their target completion statements "plausibly omit significant contemporaneous facts about [the FDA's] 'inquiry into' underlying data issues, rendering the anticipated dates for [review] completion improbable and bolstering an inaccurate impression about the strength of the [HDE Application] and its data." *In re Biovie Inc. Sec. Litig.*, 2025 WL 947667, at *13 (D. Nev. Mar. 27, 2025) (finding "expected timeline" for "completion and data readout" misleading when internal reports showed enrollment fraud and insufficient data); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1335 (10th Cir. 2012) ("continue to run ahead of plan on … timing and budget perspective," actionable when "inconsistent with" internal reports showing it "spent less than half the money budgeted," concluding "it reasonable to assume" it was not ahead of schedule).[3]

---

[3] *See also Warshaw v. Xoma Corp.*, 74 F.3d 955, 959-60 (9th Cir. 1996) (assurance that "everything is going fine" misleading when it "contravened the unflattering facts in [defendant]'s possession" regarding "the possible hazards of [drug product] and the unlikelihood of FDA approval"); *Cheetany v. Bergstrom*, 2022 WL 2541778, at *7 (D. Nev. June 21, 2022) (finding "target launch date" statements of "main product" which defendants "knew were performing poorly … amount to 'everything is going fine,' when the product and companies were languishing, [thus] were materially misleading"); *Yanek v. Staar Surgical Co.*, 388 F.Supp.2d 1110, 1130 (C.D. Cal. 2005) (implications of "*timely* commercialization" misleading when internal "facts suggest[ed] a possible delay in approval" due to "potential problems with its compliance with FDA [standards]").

*Second*, in support of timely completion, Defendants provided positive updates on FDA interactions, such as: "[w]e continue active discussions with the FDA regarding the HDE application and remain hopeful for a near-term determination" (¶193); and "[w]e are focusing on executing near-term milestones that will advance our business… Our immediate efforts are aimed at…working with regulators to bring products to market" (¶194). *See also* ¶188. By discussing FDA interactions in a positive light while concealing known concerns suggesting delay or denial, Defendants materially misled investors. *See, e.g., Tomaszewski v. Trevena, Inc.*, 482 F.Supp.3d 317, 323 (E.D. Pa. 2020) (representing non-public meeting as successful misleading without "disclos[ing] the FDA's criticism"); *Gorlamari v. Verrica Pharms., Inc.*, 2024 WL 150341, at *8 (E.D. Pa. Jan. 11, 2024) (finding "interim feedback" placed defendants "under a duty not to falsely imply that the FDA's inspections were on track for a timely approval … when this was not the case").[4]

*Third*, Defendants further supported timely completion implying the application fell under "PMA Approval Pathway," including traditional 180-day review. ¶198; *see also* ¶197 ("In June 2022, we submitted a [HDE] application … Based on the current timeline … we expect the FDA to complete its substantive review … during the first half of 2023"); ¶180 (same). Once Defendants chose to speak, they had to "speak fully and truthfully." *Gordon*, 710 F.3d at 1142. Defendants' materially misled investors as to the timeliness of ongoing review and likelihood of approval success by applying the longer PMA review. *See, e.g., Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at *14 (D. Colo. Nov. 24, 2020)

---

[4] *See also Homyk v. ChemoCentryx*, 2023 WL 3579440, at *8 (N.D. Cal. Feb. 23, 2023) (even if there was "no indication that the FDA's concerns would preclude the drug's approval," "the FDA's undisclosed concerns" were misleading because they "cast doubt" on the likelihood of approval).

(statements that drug "was generally well tolerated" and review would be based on "full NDA package" misleading because failed to disclose "negative study data" for secondary clinical benefits and exclusion of "negative secondary data" from NDA submitted).[5]

Defendants argue their assertion of SeaStar's approval pathway was not misleading because it was "planning submission of PMA application in 2024" for adult use. Defs. Br. at 15-16. At all relevant times, SCD for pediatric AKI was SeaStar's lead candidate. Investors knew from the outset that it had no other pending applications and approval of lead candidate was its only means to near-term access to commercial sales. It is "doubt[ful] that a reasonable investor would have read the statements to pertain to every [product] but the company's lead product candidate." *Salzman v. ImmunityBio, Inc*., 753 F.Supp.3d 1050, 1060-62 (S.D. Cal. June 20, 2024) (finding "statements about established compliance … to mean that [] production of [lead product candidate] was cGMP compliant" and "plausibly create the impression that [it] was not experiencing cGMP difficulties" when it was). "Context further undermines Defendants' argument [as] [s]tatements about [PMA Approval Pathway] were [] immediately preceded by discussions of [submission of the application for pediatric use]." *Id.* at 1060; ECF No. 33-2 at 72-73.

***Fourth***, following the Not Approvable Letter, Defendants assured investors that "each deficiency cited in the letter is readily addressable and [they] have put in place a plan… [in] working with the FDA … and are now targeting approval in late 2023." ¶¶206-

---

[5] *See also Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 709 (9th Cir. 2016) (finding falsity when defendants "withheld information material to the market's assessment of whether and when the FDA would likely approve" drug product); *Glazer Cap. Mngmt., L.P. v. Forescout Tech., Inc.*, 63 F.4th 747, 768-69 (9th Cir. 2023) (finding revenue projections misleading because they "did not reflect the actual state of [company's] affairs at the time" when some of the included "technical wins" or "committed" deals were actually illusory).

07. Such statements concealed the serious, immediate, and known risks posed by formal action taken following months of failed attempts to cure deficiencies, rendering target approval unlikely and reinforcing misleading impression of the strength and readiness of the HDE Application. *See, e.g., Mulligan v. Impax Lab'ys, Inc.*, 36 F.Supp.3d 942, 961 (N.D. Cal. 2014) (finding statements of "remediation efforts" following FDA action and describing cited violations as "a very easy thing to address" misleading based on allegations of "recurring and pervasive problems…many of which were identified by the FDA on more than one occasion"); *Frater,* 996 F.Supp.2d at 346, 350 (finding statements about resubmission plan and FDA's feedback actionable when defendants concealed concerns about "previously submitted data" concluding, "[w]hen the FDA tells a company about problems with a product, and the company nonetheless continues to make confident predictions about a product, courts have inferred scienter and falsity.").[6]

   ***Finally***, in discussing the anticipated October 2023 Approvable Letter, Defendants told investors that "the [FDA] considers [SCD for pediatric use] to be approvable under [HDE]," describing the letter as "a standard part of CBER's approval process" and "an important milestone for SeaStar" providing a "clear path forward in making this much needed therapy accessible … by the end of 2023." ¶¶219, 221-22. Once they chose to tout receipt of the letter, they had a duty to disclose the negative that cut against the

---

[6] *See also Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.,* 620 F.Supp.3d 167, 187 (D.N.J. 2022) (defendants "misrepresented the material, adverse reason underlying and nature of the ship hold" when they "did not disclose that the FDA findings regarding numerous [product] defects" and company's "fail[ure] to fix numerous 'concerning' problems" required a "new 510(k) application"); *Gov't of Guam Ret. Fund v. Invacare Corp.,* 2014 WL 4064256, at *7 (N.D. Ohio Aug. 18, 2014) ("Defendants appreciated the gravity of the FDA's concerns, knew the risks facing the Company, yet downplayed and mischaracterized them in disclosures to the investing public" following undisclosed reports of "numerous, pervasive and repeated violations").

positive. "'[A] statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue.'" *Gelt*, 2022 WL 716653, at *6 (reports of data misleading when "statements attempted to paint a picture of a product for which everything was going right when, in fact, Defendants knew of evidence otherwise"). Non-public communications indicated SeaStar's continued failure to provide significant information necessary for approval, resulting in formal action to identify deficiencies that must be cured prior to any order, rendering target completion improbable. ¶¶126-27. Defendants' public representations created an actionable false impression that SCD for pediatric AKI was past the review stage and on schedule for commercial sales. *See Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2020 WL 5500458, at *11 (D. Colo. Sept. 11, 2020) (describing contract as a "notable booking" and "key accomplishment" without disclosing "significant contractual caveats that could [undercut] the deal" misleading); *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *8 (N.D. Cal. Aug. 5, 2004) (statements about "receipt of an Approvable Letter" actionable when "failed to reveal the depth of the FDA's concerns").[7]

Defendants mischaracterize allegations to argue statements made in connection with the formal action taken not misleading because they had "no duty to disclose publicly known FDA procedures." Defs. Br. at 14-16. The crux of falsity here is their failure to

---

[7] *See also In re QuantumScape Sec. Litig.*, 580 F.Supp.3d 714, 733 (N.D. Cal. 2022) (sustaining complaint when statements gave false impression that product was past conceptual stage and would soon be ready for commercialization); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2011 WL 3444199, at *10 (D.N.J. Aug. 8, 2011) (finding "positive statements" about drug misleading "for failure to completely and accurately represent [negative] information known" at same time); *In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 1019 (S.D. Cal. 2005) (finding reports of study results misleading when presented "in an unduly optimistic light").

13

disclose company-specific risks posed by FDA action taken based on the known and concealed severity of cited deficiencies and SeaStar's pervasive and recurring problems with providing sufficient responses to requests for necessary information. ¶¶150, 158-59, 206-08, 219-24; *see, e.g. Medina v. Clovis Oncology, Inc.*, 215 F.Supp.3d 1094, 1122 (D. Colo. 2017) (holding defendants "could not use the FDA review process as a vehicle to release misleading information," still had a duty to disclose negative information that cut against the positive information already disclosed).[8] Moreover, the truth-on-the-market defense is seldom grounds for dismissal at this stage since it requires showing "the truth was transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations." *Gelt,* 2022 WL 716653, at *5; *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F.Supp.3d 1296, 1335-36 (D. Colo. 2023) (rejecting same falsity challenge asserting regulatory reports were "publicly available information").

### 1.    The HDE Statements Are Not Shielded by Statutory Safe Harbor

Defendants contend that each HDE Statement is a protected forward-looking statement. Defs. Br. at 7-12. However, the safe harbor does not apply to omissions of present fact. *See Williams*, 339 F.Supp.2d at 1231; *see also Takara Tr. v. Molex Inc.*, 429 F.Supp.2d 960, 974 (N.D. Ill. 2006) ("[I]t is axiomatic that the failure to make a statement cannot be forward looking"). As detailed above, each statement omits present facts including persistent deficiencies and SeaStar's recurring problems with its regulatory

---

[8] Defendants' reliance on *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *7 (D. Colo. Oct. 20, 2005) and *Goucher v. Iterum Therapeutics plc,* 648 F.Supp.3d 962, 974 (N.D. Ill. 2022), is inapt because, unlike here, the allegedly concealed information was previously disclosed or publicly available.

14

compliance, and therefore, not protected. *See, e.g., W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 WL 879023, at *17 (D. Colo. Mar. 28, 2008) ("statements about future demand and future business from customers" not protected because "[t]he alleged non-disclosure of" the "cancellation or delay" of contracts "is not a forward-looking event").

Further, statements rooted in current conditions or past events are not considered forward-looking. *In re Gold Res. Corp. Sec. Litig.*, 957 F.Supp.2d 1284, 1295 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015); *see, e.g., Lorusso v. Boulder Brands, Inc.*, 2017 WL 4365180, at *10 (D. Colo. Mar. 1, 2017) (listing unprotected "mixed" statements). Each statement here refers to past or present facts. *See, e.g.*, ¶177 ("SCD is currently being evaluated…"); ¶180 ("Having submitted… we are planning towards…"); ¶197 ("Based on the current timeline…"); ¶183 ("SeaStar has continued to evolve and remains on a trajectory…"); ¶188 ("The FDA has demonstrated continued support…"); ¶193 ("We continue active discussions… and remain hopeful for near-term determination."); ¶207 ("Following the recent receipt of … we are working with the FDA … and are now targeting…"); ¶221 ("correspondence provides a clear path forward… we intend to follow the regulatory path laid out …"). These are inherently "mixed" unprotected statements. *See, e.g., Gold Res.*, 957 F.Supp.2d at 1296 (statement, "as we *continue* on our trajectory for aggressive production growth," not forward-looking); *Biovie*, 2025 WL 947667, at *14 ("timeline of Study completion" not forward-looking "because the statements were largely integrated into discussions of *current* conditions and the progress of the Study").[9]

---

[9] *See also In re Atossa Genetics Inc. Sec. Litig.,* 868 F.3d 784, 801 (9th Cir. 2017) (not forward-looking when "emphasis on the past tense indicates that [defendant] was referring to prior events"); *Phx. Ins. Co., Ltd. v. ATI Physical Therapy, Inc.*, 690 F.Supp.3d 862, 879 (N.D. Ill. 2023) (company "'continues to match its clinical staffing levels

Even so, the safe harbor does not apply if the forward-looking statement is not accompanied by "meaningful cautionary statements" or made with "actual knowledge" of falsity. *Gold Res.*, 957 F.Supp.2d at 1293. Defendants do not pass either hurdle here. ***First***, Defendants had actual knowledge of falsity in that they knew of the repeated non-public FDA requests for significant information, SeaStar's numerous failed attempts to comply, each delaying review, and they knew the severity of cited deficiencies and risks posed, rendering target completion improbable. *Simmons Invs., Inc. v. Conversational Computing Corp.*, 2011 WL 673759, at *3, *5 (D. Kan. Feb. 17, 2011) (no protection for "projections and promises" of near-term investments and "launching five new products" when defendants knew they "had no reasonable basis in fact when made"); *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F.Supp.3d 189, 211 (E.D. Pa. 2021) ("Defendants' unrealistic, and ultimately impossible, timeline statements were knowingly false when made" based on "serious problems" that beset project completion). Defendants cannot "benefit from safe harbor by simply saying they 'anticipated' success when, in fact, they had a reasonable belief that defeat was just around the corner." *Hsing Ching Hsu v. Puma Biotech., Inc.*, 2017 WL 3205774, at *3 (C.D. Cal. July 25, 2017); *In*

---

accordingly' … and [] was 'on track' to meet its 2021 target … communicated then-existing, concrete facts"); *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at *15 (N.D. Ill. Aug. 11, 2021) (finding use of "is," "are dealing with," "are now," and "are increasing" were "describing the Company's current status and actions"); *Costabile v. Natus Med. Inc.*, 293 F.Supp.3d 994, 1013 (N.D. Cal. 2018) (when "expected to receive the first prepayment" under contract not protected because "included implicit representations that the stated 'expectation' was consistent with" its "existing, present facts"); *In re MGM Mirage Sec. Litig.*, 2013 WL 5435832, at *8 (D. Nev. Sept. 26, 2013) ("statements that a project is 'on-track,' … or 'on-schedule,' statements relating to *current* conditions"); *CV Therapeutics*, 2004 WL 1753251, at *10 ("projections" like, "we still believe that we're going to launch [drug] next year," not protected when "inadequately disclosed historical facts" of "FDA's serious reservations concerning [drug]'s safety and efficacy").

*re Nuvelo, Inc. Sec. Litig.*, 668 F.Supp.2d 1217, 1221, 1230 (N.D. Cal. 2009) (plaintiffs "need not allege that defendants knew [drug trial] would fail; [plaintiffs] need merely allege that defendants misled investors by omitting to disclose a material *risk* that [it] would fail").

**Second**, none of the cautionary statements relied on here are "sufficiently specific … to nullify any potentially misleading effect." *SEC v. GenAudio, Inc.*, 32 F.4th 902, 928-29 (10th Cir. 2022) ("statements must be substantive and tailored to the specific future projections, estimates or opinions which … plaintiffs challenge"). Cautionary statements here make no mention of the specific risks of persistent deficiencies or repeated FDA requests for significant information, following each inadequate response given. *See, e.g., Glazer*, 63 F.4th at 780 (holding "language is not 'meaningful' [when] it amounts to only a boilerplate listing of generic risks and does not mention the specific risk"). Cautionary language is also insufficient where, as here, it warns of risks as mere hypotheticals even though they have already materialized. *Williams*, 339 F.Supp.2d at 1232 (finding "generic warnings of problems that can affect the Company's revenues [] insufficient because Defendants failed to disclose that these problems had already manifested themselves"). Warnings here did not indicate that Defendants already knew the FDA harbored serious doubts about the application and were already delayed. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1016 (9th Cir. 2018) (warning study results "'*may*'" be inconsistent with interim results insufficient when defendants "knew already that the 'new data' revealed exactly that"); *Weston v. DocuSign, Inc.*, 2023 WL 3000583, at *17 (N.D. Cal. Apr. 18, 2023) (warning pandemic "'could'" impact business insufficient when it likely already had).

### 2.    The HDE Statements Are Material Statements of Fact

Defendants improperly contend these are inactionable opinions or immaterial puffery. Defs. Br. at 13-14, 16. **First**, apart from one (¶206), none use opinion-qualifying

17

language like "We think" or "We believe." *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.,* 761 F.3d 1109, 1120 (10th Cir. 2014). All "express[] certainty" about "a thing done or existing" or "[a]n actual happening." *Omnicare, Inc. v. Laborers Dist. Cncl. Constr. Indus. Pension Fund*, 575 U.S. 175, 192 (2015); *In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443, at *9 (D.S.C. Mar. 29, 2019) ("statements regarding the status of the Project, the scope and sequencing of the schedule, and the reasonableness of the completion deadlines constituted objectively verifiable statements of fact").

Even if the HDE Statements qualified as opinions (they do not), all are actionable because Defendants "lacked basis for making those statements." *Omnicare*, 575 U.S. at 184-86, 196. When made, they knew about repeated FDA concerns which "shed serious doubt on" the application in its current form, its review pathway, SeaStar's compliance with regulatory standards, and commercialization in the near-term. *In re Amylin Pharms. Inc. Sec. Litig.*, 2003 WL 21500525, at *8 (S.D. Cal. May 1, 2003) ("represent[ing] that, in their opinion, the trial results *met the requirements for FDA approval*" misleading when "the FDA express[ed] significant concerns regarding the sufficiency of the trials"); *InnovAge,* 709 F.Supp.3d at 1339 (holding "statements do not need to be interpreted as guarantees to be false and misleading"). These statements did not "fairly align[]" with the information in [Defendants] possession at the time," nor can they credibly claim after the fact that they simply believed in their predictions. *Omnicare*, 575 U.S. at 192 (defendant must "desist from misleading investors by saying one thing and holding back another").[10]

---

[10] *See also GenAudio*, 32 F.4th at 924 ("no matter how heartfelt their subjective beliefs, [defendants] … cannot make material representations … in disregard or contravention of obvious facts, nor can they find absolution in the failures of others to disabuse them of their magical thinking"); *SCANA*, 2019 WL 1427443, at *9 (opinions actionable when defendants "could not have sincerely believed [them] given [contradicting] reports").

*Second*, such statements cannot be immaterial puffery as all are "grounded in concrete metrics or other objectively verifiable data," *Pluralsight*, 45 F.4th at 1248-49, expressing assurances about ongoing review and near-term launch of the flagship SCD, information any "reasonable investor would consider … important." *Level 3*, 667 F.3d at 1339-40; *Williams*, 339 F.Supp.2d at 1228 (statements that company would "continue to perform" and "deliver on our promises" were "neither puffery nor immaterial").[11]

*Likewise*, stripping statements of their context, Defendants prematurely challenge materiality of repeated "June 2022" submission date (Defs. Br. at 17). *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1192 n.3 (10th Cir. 2003) (finding materiality "not ripe for resolution at the Rule 12(b)(6) stage"). Notably, they do not dispute falsity here. Defendants touted timely commercialization of SCD for pediatric AKI based on a misleading review timeline triggered by submission, explained approval was the primary factor driving SeaStar's growth trajectory and used this information to attract investors. A reasonable investor would consider a month discrepancy in this pivotal timeline "as having significantly altered the 'total mix' of information available." *Pluralsight*, 45 F.4th at 1248-51 (affirming statement, "'today we have about 250' quota-bearing sales representatives," as "both false and material" when "the accurate figure was about 200").[12]

---

[11] *See also Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *11 (D. Nev. Oct. 7, 2024) ("'we feel really strong about … the data readout in Q4'" actionable "because either defendant (1) read the relevant data and expressed optimism despite knowing … not promising [] or (2) did not read the relevant data but was representing to shareholders that he had, and expressed unfounded/blind optimism, which in itself is misleading").

[12] "The significance of this information is illustrated by the frequency with which Defendants emphasized [SeaStar's submission under HDE, its FDA interactions and approval pathway, and commercialization of SCD for pediatric AKI] in press releases and other public statements, as well as the fact that analysts frequently repeated and commented on Defendants' statements." *Atlas v. Accredited Home Lenders Holding Co.*,

### C.    The Complaint Adequately Pleads Baron "Made" All Misstatements

Defendants improperly contend Baron is liable only for misstatements she signed. Defs. Br. at 30, n.30. This argument, relegated to a footnote, is insufficient and may be disregarded. *Pluralsight,* 45 F.4th at 1257 (deeming argument raised only in a footnote waived). Even still, *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011), "does not stand for the proposition that corporate officers cannot be liable for false and misleading statements in their own company's [public] statements." *SEC v. Pocklington*, 2018 WL 6843665, at *5 (C.D. Cal. Nov. 29, 2018).[13] Baron is also liable for press releases collectively published on SeaStar's website. Such statements are at least implicitly attributable to her, given Baron "possessed the power and authority to control the contents of" those statements (¶16)—and the others issued during the Class Period—as evidenced by: (i) her position as one of SeaStar's most senior executives involved in its day-to-day affairs (¶¶13, 272-77); and (ii) the fact that many of these statements were issued in connection with SEC filings she signed (¶¶174-229). *See, e.g., Lamothe v. Decentral Life, Inc.*, 2024 WL 5055576, at *4 (D. Colo. Oct. 24, 2024) ("plaintiff need not allege any facts demonstrating an individual defendant's participation in the particular communication containing the misstatement or omission where the defendants are

---

556 F.Supp.2d 1142, 1155 (S.D. Cal. 2008); *see also Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, at *9 (W.D. Wash. Sept. 7, 2011) ("capital ratios remain strong" actionable when it referred to specific operations and investors were likely to rely on the statement).

[13] *See also Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997) ("Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents … involve[ing] collective actions of corporate directors or officers."); *Naomi L. Miles Revocable Tr. v. Lawrence*, 2013 WL 11431711, at *3 (D. Wyo. Mar. 28, 2013) ("*Janus* did not alter the well-established rule that a corporation can act only through its employees").

20

'insiders or affiliates' of the company").[14] Tellingly, Defendants concede her control over SeaStar for purposes of § 20(a) liability. *See* Defs. Br. at 30.

### D.    The Complaint Adequately Pleads Scienter to HDE Statements

"Scienter is a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *Pluralsight*, 45 F.4th at 1258-59; *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1153 (10th Cir. 2015) (scienter "exist[s] if [defendants] recklessly disregarded a likelihood of misleading shareholders even if he did so out of an effort to fulfill his fiduciary duties"). The "inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23. The inference is "strong" if a reasonable person would deem it "cogent and compelling" and "*at least as likely as* any plausible opposing inference." *Id.* at 324-29. No "smoking-gun" required. *Id*.

"One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting their public statements were materially inaccurate." *SemGroup*, 729 F.Supp.2d at 1297. Without question, Defendants knew about the persistent deficiencies afflicting the application but consistently declined to inform investors. Defendants learned

---

[14] *See also Touchtone Grp., LLC v. Rink*, 913 F.Supp.2d 1063, 1078-79 (D. Colo. 2012) (finding under *Janus* and *Schwartz*, a valid 10(b) claim for "group-published documents" based on defendants' positions as corporate officers they "had ultimate authority over the statements that they allegedly prepared … or for which they were otherwise responsible"); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 119 F.Supp.2d 1156, 1165 (D. Colo. 2000) (sustaining 10(b) claim finding defendant "'has been [CEO], President, and Director … since 1992'" sufficient to "plead with particularity [his] connection to the Press Release"); *In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *10 (N.D. Cal. Dec. 23, 2015) (rejecting that unsigned website posting lacked attribution when alleged defendants "possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations").

as early as August 2022 through their "collaborative meetings and correspondence" with the FDA that it had serious concerns about SeaStar's approach to approval and with the information provided. ¶¶137-38, 151, 154. Defendants considered FDA concerns serious, as evidenced by their thirty-two attempts to resolve the issues. ¶¶137-38. FDA formal action following months of requests for significant information confirmed recurring and pervasive problems that SeaStar failed to remedy. ¶¶147-60. Defendants also knew that such repeated requests and amendments each triggered a review hold, or worse a reset, which only increased the improbability of target completion. ¶¶111-33. These allegations give rise to a strong inference that they acted with scienter. *See, e.g.*, *In re Emergent Biosolutions Inc. Sec. Litig.*, 2023 WL 5671608, at *23-24 (D. Md. Sept. 1, 2023) (finding alleged access to "FDA reports" supported strong inference that defendants "were aware that their plans to address known deficiencies were considered insufficient, but nevertheless recklessly omitted those deficiencies"); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *22 (S.D.N.Y. Mar. 29, 2021) (scienter where alleged defendants attended meetings with the FDA to discuss concerns about company's product).[15]

---

[15] *See also Medina*, 215 F.Supp.3d at 1127 (scienter where defendants had knowledge of confirmed response rates but continued to report more favorable unconfirmed response rates); *Schueneman*, 840 F.3d at 708-09 (scienter where alleged defendant had access to negative data rendering earlier statements false); *Todd v. Staar Surgical Co.*, 2016 WL 6699284, at *12 (C.D. Cal. April 12, 2016) (scienter where alleged defendants "aware of adverse observations" by the FDA even before formal action); *In re Mannkind Sec. Litig.*, 835 F.Supp.2d 797, 809 (C.D. Cal. 2011) (finding later contradictory statements about FDA process help imply scienter); *Yanek*, 388 F.Supp.2d at 1130 (defendants' "failure to report serious injuries and other incidents attributed to STAAR products" raised a "strong inference" of "'actual knowledge'"); *Immune Response*, 375 F.Supp.2d at 1022 (scienter where defendants had access to specified reports or statements with contrary facts and described meetings where issues were discussed).

This inference is "further bolstered by the importance' of [SCD for pediatric AKI] to Defendants, as their lead product candidate." *Salzman*, 753 F.Supp.3d at 1067 (finding it "reasonable to infer that [defendant]'s leadership 'would be involved closely in ensuring compliance with FDA regulations, especially where any violations could postpone the approval of [lead product].'"); *Pluralsight*, 45 F.4th at 1264 (when facts are key to company, "there can be no serious question that affirmatively misrepresenting" such facts present "a danger of misleading investors"); *Croker v. Carrier Access Corp.,* 2006 WL 2035366, at *7 (D. Colo. July 18, 2006) ("the only fair and reasonable inference is that [CEO] knew the status of the development of the one product on which [company]'s future profitability depended"). SeaStar had yet to generate any revenue from any products and did not expect to do so in the near term unless SCD for pediatric AKI received approval. ¶¶281-82. "[I]t is 'absurd' to think that the CEO and CFO of a [medical device] company would be unaware of the alleged substandard, non-compliant conditions pervading their company's [approval pathway of its lead candidate]—the heart of a company whose main business is manufacturing [medical devices] for public consumption. The idea that the defendants here would be unaware of these [] problems is even more unlikely given the repeated [warnings] from the FDA." *Mulligan*, 36 F.Supp.3d at 970.

Defendants also confirmed they closely monitored the application and its review, repeatedly discussing its progress and their FDA interactions with investors and analysts demonstrating familiarity with the subject. *See Pluralsight*, 45 F.4th at 1264 (noting knowledge of falsity may be adequately pleaded where executives "repeatedly described" that information "to analysts and investors"); *SEC v. Willis*, 2023 WL 11956416, at *11-13 (D. Colo. Sept. 29, 2023) (facts demonstrating defendant was a "hands-on CEO"

23

supported scienter).[16] Additionally, as CEO and Finance Controller of SeaStar Legacy, Schlorff and Baron were actively involved in the merger, including providing information about the company's operations in support of the deal. ¶¶12-13, 39-43, 272-80. Following the merger, all LMAO directors and executives became members of SeaStar's Board. ¶45. As such, pre-Class Period SEC communications about misleading nature of similar target completion statements followed by the changed language in earlier filings before reverting to same misleading language during the Class Period, supports an inference of scienter. ¶¶283-86; *see, e.g.*, *Robb v. Fitbit Inc.*, 2017 WL 219673, at *7 (N.D. Cal. Jan. 19, 2017) (non-defendant executives' awareness of defects gave rise to inference that they would not keep that "secret from the company's CEO, CFO, and CTO").

In addition, SeaStar raised millions at the expense of retail investors while in possession of material nonpublic adverse information. ¶¶25-28, 36-46. The merger would not have been possible but for Defendants' fraudulent concealment of known FDA concerns, recurring delays, and persistent deficiencies. ¶¶287-306. Throughout the Class Period, Defendants knew the application was at risk of further delay or denial, yet they declined to share this information to take advantage of unsuspecting retail investors. ¶¶111-39. Courts routinely find a need for working capital establishes motive when it is "necessary to ensure that [the company] would not run out of cash and could fund ongoing operations." *In re Ibis Tech. Secs. Litig.*, 422 F.Supp.2d 294, 317 (D. Mass. 2006); *Medina*, 215 F.Supp.3d at 1128-29 ("Defendants had a strong incentive to mislead potential

---

[16] *See also Homyk*, 2023 WL 3579440, at *19 (scienter where CEO repeatedly discussed drug trials and data with investors and "opin[ed] on the significance of particular data"); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F.Supp.3d 313, 326 (S.D.N.Y. 2018) (scienter where "central roles in [drug]'s development, the drafting of its NDA, and [their] repeated issuance of public statements at odds with the true contents of that NDA").

investors about the efficacy and safety of [their drug] in order to attract the investors' capital"); *Biovie*, 2025 WL 947667, at *18 (motive to "conceal information—or at least delay informing investors about materialized risks" when "delays or failures in NM101's testing could make a disproportionate impact on BioVie's overall financial status").[17]

In a footnote, Defendants argue an innocent inference, contending it implausible to spend so much on a product they knew was doomed. Defs. Br. at 23, n. 21. "But, here, the allegations are not that the defendants were *convinced* the FDA would deny approval, it is that they withheld important *warning signs* from the market." *In re BioMarin Pharm. Inc. Sec. Litig.,* 2022 WL 164299, at *14 (N.D. Cal. Jan. 6, 2022) (rejecting the same finding similar allegations of access to contradicting FDA concerns, importance of product to financial success and financial motive supported scienter); *see, e.g.*, *Voulgaris*, 2020 WL 8367829, at *24 (finding "an equally compelling and cogent explanation is … that Defendants intended to deceive or recklessly deceive investors by not providing the negative data because they knew that it might impact the public offering and the price of the stock, meaning that [the company] would not be able to raise the money it needed").

---

[17] *See also Butala v. Owlet,* Inc., 2024 WL 3648141, at *7 (C.D. Cal. Aug. 5, 2024) (scienter where "Owlet was facing a 'quintessential Catch-22' between raising funds required to secure FDA approval of its 'flagship' product and selling the product without FDA regulation to raise the capital required to obtain FDA approval"); *Spectrum*, 2024 WL 4443323, at *15 (motive and scienter where alleged that "with resources dwindling and no way to earn revenue," defendants were "expressing optimism about the success of" drug product they knew was "falling well short" "simultaneously with [public] offering"); *Homyk*, 2023 WL 3579440, at *19-20 (finding motive to "conceal[] adverse facts regarding trial results … in order to buy time and finance the company's operations while trying to alter the potential effect of those adverse facts on the NDA process" supports scienter); *Frater,* 996 F.Supp.2d at 350 (scienter adequately pleaded when alleged that company "was ... sufficiently short on cash at the time of the alleged misrepresentations that it could not afford to finance an additional clinical trial as the FDA had recommended").

**E.    The Complaint Adequately Pleads Scienter to Accounting Statements**

While "[t]he mere fact that there was a restatement or a violation of GAAP, by itself, cannot give rise to a strong inference of scienter; the nature of such a restatement or GAAP violation, however, may ultimately do so." *In re MicroStrategy, Inc. Sec. Litig.,* 115 F. Supp. 2d 620, 635 (E.D. Va. 2000). "After all, books do not cook themselves." *Central Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 552 (5th Cir. 2007).

*First*, Defendants were in a position to know of perpetual accounting violations supporting a strong inference of scienter. ¶¶272-80; *see, e.g., Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1106 (10th Cir. 2003) (noting the fact that defendant "was the most senior executive in a company is ... relevant in our weighting of the totality of the allegations").[18] In particular, SeaStar's restatement concerned specific accounting matters Defendants are alleged to have been aware of prior to the Class Period. ¶¶47-67, 259-69, 275.[19] They were also responsible for the information contained in SeaStar's financial statements and the propriety of its underlying accounting policies. ¶¶68-72; *see, e.g., Yellowdog*, 426 F.Supp.3d at 875 (defendants' failure to disclose information that they would have been closely monitoring supported scienter); *see also Williams*, 339 F.Supp.2d at 1241 (scienter exists when defendant's conduct amounts to an "egregious refusal to see the obvious, or to investigate the doubtful"). And Defendants here spoke

---

[18] Defendants' "S[OX] certifications filed with the SEC support [their] scienter, because those certifications required [them] to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *7 (N.D. Cal. July 26, 2017).

[19] Defendants were actively involved in the merger, engaging in due diligence meetings and hiring a financial advisor to assist with evaluation of corporate materials. ¶¶272-80, 291. After, all LMAO directors and executives became SeaStar board members. ¶45. Such allegations support their knowledge of prior restatement and application of ASC 815 to the same matters. *See, e.g.*, *Robb v. Fitbit Inc.*, 2017 WL 219673, at *7.

frequently about the specific transactions at issues. ¶¶88-90, 99-101; *see, e.g., N. Port Firefighters' Pension-Loc. Option Plan v. Fushi Copperweld, Inc.*, 929 F.Supp.2d 740, 784 (M.D. Tenn. 2013) (a strong scienter inference arises where defendants emphasized "careful monitoring of the very areas" in which the accounting violations occurred).

**Second**, the "significant magnitude" of the alleged falsity supports this inference. *Andropolis v. Red Robin Gourmet Burgers, Inc.,* 505 F.Supp.2d 662, 681 (D. Colo. 2007); *see also In re Carter's, Inc. Sec. Litig.*, 2012 WL 3715241, at *3 (N.D. Ga. Aug. 28, 2012) ("when the alleged accounting errors are sufficiently basic and large, their existence … support the requisite scienter inference"). The misapplication of ASC 815 here caused SeaStar to overstate its total assets by 36% while also understating its total liabilities by nearly 200% and shareholder deficit by almost 250%. ¶¶270-71; *see, e.g., Adams*, 340 F.3d at 1106 (scienter inference strengthened when fraud increased net income by 25%); *In re Catalina Marketing Corp. Sec. Litig.,* 390 F.Supp.2d 1110 (M.D. Fla. 2005) (by 43%).

**Third**, GAAP errors considered "simple" support the inference. *In re Molson Coors Beverage Co. Sec. Litig.*, 2020 WL 13499995, at *4 (D. Colo. Dec. 2, 2020) ("the simpler the rule the stronger the implication"); *In re Medicis Pharms. Corp. Sec. Litig.*, 2010 WL 3154863, at *5-7 (D. Ariz. Aug. 9, 2010) ("allegations pertaining to the simplicity and obviousness of [accounting standards] give rise to at least some inference of intentional or deliberate misconduct"). As alleged, ASC 815 is simple to understand, interpret, and apply, particularly for accounting professionals. ¶235. And the SEC issued numerous advisories instructing proper application in similar scenarios. ¶¶86, 236-44.

**Next**, "[f]acts critical to … an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers." *In re Ancor*

27

*Communs., Inc. Sec. Litig.*, 22 F.Supp.2d 999, 1005 (D. Minn. 1998); *see also In re Take-Two Interactive Sec. Litig.*, 551 F.Supp.2d 247, 301 (S.D.N.Y. 2008) (holding that claim of ignorance of accounting standard is not credible when it is of significant importance to the issuer). Defendants' GAAP violations here significantly impacted SeaStar's reporting of all PIPE and Private Placement Warrants issued in the merger and Forward Purchase Agreements providing access to nearly all available working capital thereafter. ¶¶47-67. "These were not minor accounting errors. To the contrary, they dramatically affected [Defendants]' financial results, and in ways that a typical corporate executive should have noticed them." *Thomas v. Magnachip Semiconductor Corp.*, 167 F.Supp.3d 1029, 1042 (N.D. Cal. 2016) (violations that impacted income and profits supported scienter).[20]

**Lastly**, uncharacteristic "resignations, terminations, and other allegations of corporate reshuffling" can be indicative of scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). The shuffling of independent accounting firms after the merger (¶¶250-53), followed by Armanio's suspiciously timed resignation (¶¶254-57) and Baron's secret termination, effective one week after the restatement but announced retroactively (¶258), bolsters scienter. *See, e.g.*, *InnovAge*, 709 F.Supp.3d at 1347, 1349-50 (departure of an executive that "was not only effective immediately—it was retroactive when announced," added to scienter); *Turner Ins. Agency, Inc. v. Farmland Partners Inc.,* 2019 WL 2521834, at *6 (D. Colo. June 18, 2019) (fact that defendant "switched auditors" soon after making improper loans added to inference of scienter).

---

[20] *See also Adams*, 340 F.3d at 1106 (scienter established when CFO knew that "a key operation of the company was losing money" and "falsely reported a profit for it"); *In re Scottish Re Grp. Sec. Litig.,* 524 F.Supp.2d 370, 394 (S.D.N.Y. 2007) ("contemporaneous circumstances (none of which changed), of which [defendants] were aware ... made their failure to take an earlier valuation allowance tantamount to conscious misbehavior").

28

*Collectively*, these allegations give rise to a strong and cogent inference that Defendants acted with scienter. *See MicroStrategy,* 115 F.Supp.2d at 635-36 (scienter allegations adequate where complaint detailed "the magnitude of the restated financials and the pervasiveness and repetitiveness of ... GAAP violations; the simplicity of the accounting principles violated in this case; and the importance of the contracts involved.").

**F.     The Complaint Adequately Pleads Loss Causation to HDE Statements**

Loss causation is the "causal connection between the material misrepresentation and the loss," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005), evaluated under Rule 8. *Maxar*, 2020 WL 5500458, at *16. In a fraud-on-the-market case, like here, the inquiry begins with the allegation that defendant's misstatements artificially inflated the stock price, followed by some event or occurrence that revealed fraud to the market. *Dura*, 544 U.S. at 347. This circuit takes a flexible approach in evaluating whether an alleged revelation contained enough information to undermine the earlier misrepresentations. *See In re Williams Sec. litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009) ("To be corrective, the disclosure need not precisely mirror the earlier misrepresentation" just "relate back"); *Nakkhumpun*, 782 F.3d at 1154 (a "risk materialized" is deemed corrective when that risk "was within the zone of risk concealed by the misrepresentation").

Plaintiffs allege Defendants repeatedly misrepresented the strength and readiness of the HDE Application and timely approval of SCD for pediatric AKI, artificially inflating SeaStar securities. ¶¶307-08. Then, on May 9, 2023, SeaStar was forced to disclose the Not Approvable Letter revealing the materialized risk of rejection in its current form and obliterating prior completion targets, causing SeaStar's stock to drop 40% in a single day. ¶¶147-49. On October 30, SeaStar was forced to disclose the details of the Approvable Letter revealing deficiencies to cure prior to approval and further delay, causing SeaStar's

29

stock to drop nearly 20%. ¶¶158-60.[21] Nothing more is required to show Defendants misrepresented or omitted the very facts and related risks that caused Plaintiffs' loss. ¶¶309-11; *see, e.g.*, *Yanek*, 388 F.Supp.2d at 1132 (loss causation where "share price declined 18% upon revelation of the FDA's Dec. 22, 2003 Warning Letter, which made known previously undisclosed problems with Defendants' manufacturing facilities").[22]

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety. In the alternative, Plaintiffs respectfully request leave to amend to cure any perceived deficiencies. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001); *see also Heiner v. Watford*, 2022 WL 18777077, at *21 (D. Colo. Nov. 21, 2022) ("'Leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet.'") (*quoting Osher v. JNI Corp.*, 183 F. App'x 604, 605 (9th Cir. 2006)).

---

[21] Defendants' cited authorities are inapt here. *See* Defs. Br. at 18. In *Abady v. Lipocine Inc.,* 2023 WL 2938210 (D. Utah Apr. 13, 2023), FDA rejection could not "reveal the truth" when failed endpoints were previously disclosed. *Id.* at *27-28; *cf. Industriens*, 620 F.Supp.3d at 199 (finding causal link between expected timing of commercial sales and "FDA's views" because it revealed "previously unknown information about the severity of [device]'s regulatory issues and software issues previously minimized as 'upgrade[s]'"). In *Fort Worth Employers' Retirement Fund v. Biovail Corp.,* 615 F.Supp.2d 218 (S.D.N.Y. 2009), no causal link because application denial made no reference to study plaintiff claimed caused the denial and no factual allegations that defendant had any FDA warning of insufficiencies. *Id.* at 223-24; *cf. KB Partners I, L.P. v. Pain Therapeutics, Inc.,* 2015 WL 7760201, at *13 (W.D. Tex. Dec. 1, 2015) (distinguishing *Biovail* finding link between misrepresented stability problems and FDA rejection as materialization of the risk).

[22] *See also Mannkind*, 835 F.Supp.2d at 815-16 (finding FDA rejection "revealed the falsity of defendants' prior statements and was a materialization of the previously undisclosed risks"); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2022 WL 4491093, at *14 (S.D. Cal. Sept. 27, 2022) (same); *Thant v. Rain Oncology Inc.*, 2025 WL 588994, at *10 (N.D. Cal. Feb. 24, 2025) (clinical trial statements and disclosed failure "fit precisely into a 'materialization of the risk' theory, so Plaintiffs have pled loss causation").

Dated: June 20, 2025                    Respectfully submitted,

                                        LEVI & KORSINSKY, LLP


                                        *s/ Adam M. Apton*
                                        Adam M. Apton
                                        Devyn R. Glass
                                        33 Whitehall Street, 17th Floor
                                        New York, New York 10004
                                        Tel.: (212) 363-7500
                                        Fax: (212) 363-7171
                                        Email: aapton@zlk.com
                                               dglass@zlk.com

                                        *Attorneys for Lead Plaintiff and*
                                        *Lead Counsel for the Class*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Adam M. Apton, hereby certify that the foregoing brief complies with the page limitation requirements set by the Court's Minute Order dated April 29, 2025, allowing 30 pages of briefing (ECF No. 32).

*s/ Adam M. Apton*
Adam M. Apton

32