# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01873-RMR-TPO

FORREST A K WELLS, Individually and
on Behalf of All Others Similarly Situated,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　**Oral Argument Requested**

SEASTAR MEDICAL
HOLDING CORPORATION,
ERIC SCHLORFF, and
CARYL BARON,

      Defendants.

---

# REPLY BRIEF IN SUPPORT OF MOTION TO
# DISMISS AMENDED CLASS ACTION COMPLAINT

---

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.    PLAINTIFF'S NEWLY PLED SPECULATION CANNOT PRECLUDE
      DISMISSAL OF THE COMPLAINT. ............................................................ 3

II.   THE OPPOSITION FAILS TO ADDRESS THE FATAL FLAWS OF
      PLAINTIFF'S CLAIMS BASED ON THE HDE STATEMENTS. .......................... 5

      A.    The HDE Statements Are Forward-Looking Statements Protected
            By The PSLRA's Safe-Harbor Provision. ......................................... 6

      B.    Even If The Safe-Harbor Did Not Apply, Plaintiff Fails To Allege
            That The HDE Statements Contain Any Material Misstatements Or
            Omissions Of Fact. ...................................................................... 8

            1.    The HDE Statements Contain Inactionable Opinions And
                  Puffery................................................................................ 8

            2.    There Is No Duty To Disclose Publicly Known FDA
                  Procedures.......................................................................... 10

            3.    Whether SeaStar Submitted Its HDE Application In "June" Or
                  On July 1, 2022 Is Utterly Immaterial. .................................. 11

      C.    Plaintiff Fails To Allege Loss Causation In Connection With The
            HDE Statements. ........................................................................ 12

      D.    Plaintiff Fails To Plead Particularized Facts Giving Rise To A
            Strong Inference Of Scienter Regarding The HDE Statements. ............. 13

            1.    The Opposition's Argument That Defendants "Knew" The
                  HDE Statements Were False Relies On Unpled Speculation. ..... 14

            2.    SEC Correspondence *With LMAO* Does Not Establish
                  Scienter.............................................................................. 15

            3.    Defendants' Alleged Motive To Improve SeaStar's Financial
                  Status Does Not Establish Scienter. ...................................... 15

            4.    SeaStar's Continued Financial Support Of SCD Undermines
                  Scienter.............................................................................. 16

III.  PLAINTIFF'S CLAIMS BASED ON THE ACCOUNTING STATEMENTS
      FAIL TO PLEAD SCIENTER. ..................................................................... 17

      A.    The Complexity Of ASC Topic 815 Undermines Any Inference Of
            Scienter...................................................................................... 17

      B.    The Individual Defendants' Certification Of SeaStar's Public Filings
            Does Not Establish Scienter. ........................................................ 18

**TABLE OF CONTENTS**
(continued)

**Page**

C.     The Alleged Terminations Of Ms. Baron And The Accounting Firms
Do Not Establish Scienter. ........................................................................ 18

D.     *LMAO's* Prior Restatement Does Not Establish Scienter. ...................... 19

E.     Purported Magnitude Of Restatement Does Not Establish Scienter. ....... 20

CONCLUSION .................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abady v. Lipocine Inc.*,
  2023 WL 2938210 (D. Utah Apr. 13, 2023).......................................................... 12, 13

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
  505 F. Supp. 2d 662 (D. Colo. 2007) .................................................................. 12, 20

*Bauer v. Eagle Pharms., Inc.*,
  2017 WL 2213147 (D.N.J. May 19, 2017)................................................................. 5

*Cozzarelli v. Inspire Pharma. Inc.*,
  549 F.3d 618 (4th Cir. 2008)....................................................................... 13, 16, 17

*Fort Worth Employers' Ret. Fund v. Biovail Corp.*,
  615 F. Supp. 2d 218 (S.D.N.Y. 2009) ...................................................................... 13

*In re Amylin Pharms., Inc. Sec. Litig.*,
  2003 WL 21500525 (S.D. Cal. May 1, 2003) ........................................................... 10

*In re Biovie Inc. Sec. Litig.*,
  2025 WL 947667 (D. Nev. Mar. 27, 2025) ........................................................ 16, 18

*In re Emergent Biosolutions Inc. Sec. Litig.*,
  2023 WL 5671608 (D. Md. Sept. 1, 2023) ............................................................... 14

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005).................................................................... 4, 5

*In re Lottery.com, Inc. Sec. Litig.*,
  715 F. Supp. 3d 506 (S.D.N.Y. 2024) ..................................................................... 16

*In re Molson Coors Beverage Co. Secs. Litig.*,
  2020 WL 13499995 (D. Colo. Dec. 2, 2020)............................................... 15, 19, 20

*In re Molycorp, Inc. Secs. Litig.*,
  2015 WL 1540523 (D. Colo. Mar. 31, 2015) ............................................................. 6

*In re Sanofi Secs. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ....................................................................... 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re SemGroup Energy Partners, L.P.*,
   729 F. Supp. 2d 1276 (N.D. Okla. 2010) ................................................................... 14

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022) ........................................................................ 7

*In re U.S. Aggregates, Inc. Sec. Litig.*,
   235 F.Supp.2d 1063 (N.D. Cal. 2002) ...................................................................... 18

*In re Williams Secs. Litig.*,
   339 F. Supp. 2d 1206 (N.D. Okla. 2003) ............................................................... 6, 8

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ................................................................................. 9

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .................................................................................... 8

*Lake v. Zogenix, Inc.*,
   2020 WL 3820424 (N.D. Cal. Jan. 24, 2020) ........................................................... 5

*Luo v. Spectrum Pharms., Inc.*,
   2024 WL 4443323 (D. Nev. Oct. 7, 2024) ....................................................... 4, 5, 14

*Medina v. Clovis Oncology, Inc.*,
   215 F. Supp. 3d 1094 (D. Colo. 2017 ...................................................................... 16

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) ................................................................................ 9

*Mulligan v. Impax Lab'ys, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ....................................................................... 15

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
   2005 WL 4161977 (D. Colo. Oct. 20, 2005) ......................................................... 6, 10

*Phx Ins. Co., Ltd. v. ATI Physical Therapy, Inc.*,
   690 F. Supp. 3d 862 (N.D. Ill. 2023) ........................................................................ 7

*Robb v. Fitbit Inc.*,
   2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ......................................................... 15, 20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rosi v. Aclaris Therapeutics, Inc.*,
2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ........................................................... 14

*Salzman v. ImmunityBio, Inc.*,
753 F. Supp. 3d 1050 (S.D. Cal. 2024) .................................................................... 11

*Schott v. Nobilis Health Corp.*,
211 F. Supp. 3d 936 (S.D. Tex. 2016) ..................................................................... 18

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) .................................................................................... 14

*SEC v. GenAudio Inc.*,
32 F4th 902 (10th Cir. 2022) ...................................................................................... 8

*Sudduth v. Citimortgage, Inc.*,
79 F. Supp. 3d 1193 (D. Colo. 2015) ......................................................................... 2

*Takara Trust v. Molex Inc.*,
429 F. Supp. 2d 960 (N.D. Ill. 2006) .......................................................................... 6

*Todd v. STAAR Surgical Co.*,
2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ........................................................... 14

*West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
2008 WL 879023 (D. Colo. 2008) ............................................................................... 6

*Wolfe v. Aspenbio Pharma, Inc.*,
587 F. App'x 493 (10th Cir. 2014) ............................................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .................................................................................... 18

**STATUTES**

15 U.S.C. § 78u-5(c)(1) .............................................................................................. 6

Private Securities Litigation Reform Act of 1998, Pub. L. 104-67, 109 Stat. 737
("PSLRA") ...........................................................................................................passim

Securities Exchange Act of 1934, Pub. L. 73-291, 48 Stat. 88, § 10(b) ....................... 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

OTHER AUTHORITIES

17 C.F.R. § 229.303(b)(2)(ii) .............................................................................. 7

21 CFR § 814.112 .............................................................................. 12

Fed. R. Civ. P. 8 .............................................................................. 4

Fed. R. Civ. P. 9(b) .............................................................................. 1

Fed. R. Civ. P. 12 .............................................................................. 1

**PRELIMINARY STATEMENT**[1]

The most striking feature of the Opposition[2] is its pervasive reliance upon "allegations" appearing nowhere in the Complaint as the primary basis upon which Plaintiff resists dismissal of the FDA claims. Plaintiff's *per se* invalid attempt to do so here merely belies his own understanding that the Complaint must be dismissed. But even if Plaintiff *could* amend his Complaint via his brief (he cannot), the "allegations" are nothing more than a self-serving fiction without facts, manufactured to resemble cases that stated a claim. They would be insufficient under Rule 12, let alone under the PSLRA.

At its core, and supporting virtually every argument against dismissal of the FDA claim, the Opposition pretends to describe private communications in which the FDA supposedly expressed doubts about the HDE Application's viability, warning that it was at risk of delay or denial. Opp. at 9, 16, 17. Defendants thus purportedly "knew" their estimated timelines regarding FDA review were "improbable," rendering their statements that did not disclose this (made up) "fact" false or misleading. When SeaStar announced it would soon receive an Approvable Letter, it purportedly "left out" that it would first need to cure certain purported deficiencies before receiving final approval. *Id.* at 5.

The Opposition's "allegations" fail to plead any facts whatsoever regarding *any* of the supposed private communications between SeaStar and the FDA. While Rule 9(b) and the PSLRA require particularized facts, the Opposition only offers Plaintiff's

---

[1]     Capitalized terms have the same meanings as in the Motion to Dismiss (Dkt. No. 33) (the "Motion" or "Mot."). All emphasis herein is added unless otherwise indicated.
[2]     The "Opposition" or "Opp." refers to Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Class Action Complaint (Dkt. No. 42).

imaginative speculation, insufficient even under *Twombly*, let alone the exacting requirements applicable here.  As for whether SeaStar "left out" a need to cure purported deficiencies before receiving final approval (as if that were somehow unique to SeaStar), the Complaint defeats the Opposition by quoting the very press release that *disclosed* the same: "The Approvable Letter will outline conditions, including language for safety, probable benefit and labeling for intended use, *which will be required for formal marketing approval*."  AC ¶ 219.  Plaintiff cannot avoid dismissal by inventing allegations in the Opposition, even more so when they are refuted in the Complaint.[3]

Regarding what the Complaint *does* allege and the dispositive pleading failures presented in the Motion, the Opposition is practically nonresponsive.  The Opposition does not even attempt to distinguish controlling authority, instead citing cases with no factual connection to this one, except perhaps to the Opposition's made-up allegations.  Thus, Plaintiff claims the PSLRA's forward-looking safe harbor does not apply to claimed omissions like those presented in the Opposition, misleading the Court that there is somehow an "omission exception" to the PSLRA (there is not) applicable to the Opposition's newly invented fiction.  In the same spirit, Plaintiff abandons his "corrective disclosure" theory of loss causation from the Complaint (*see, e.g.*, AC ¶ 310) in favor of an unalleged (and thus irrelevant) "materialization of risk" theory promulgated in the Opposition (Opp. at 29–30)—a theory that, even if it could be considered, is again

---

[3]     *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1199 n.3 (D. Colo. 2015) ("axiomatic" that complaint "may not be amended by the briefs in opposition to a motion to dismiss").

predicated upon the Opposition's improper and unsupported speculation about FDA communications supposedly warning of trouble that later "materialized."

Regarding the accounting restatement claims, the Opposition's half-hearted response accomplishes nothing more than to identify cases where Plaintiff's legal theories underlying the restatement claim were accepted, ignoring that those same cases only serve to itemize the requisite factual allegations that do not exist here.  For all of these reasons, the Complaint should be dismissed, with prejudice.

## **ARGUMENT**

**I.    PLAINTIFF'S NEWLY PLED SPECULATION
CANNOT PRECLUDE DISMISSAL OF THE COMPLAINT.**

Recognizing the Complaint as pled must be dismissed, Plaintiff seeks to rewrite it in the Opposition, in the image of cases with no connection to the Complaint that survived dismissal.  Even if Plaintiff's assertions outside the Complaint could be considered, none begin to qualify as particularized allegations of fact required by the PSLRA.

Core to Plaintiff's attempt to amend the Complaint is his claim the FDA "had already told Defendants, multiple times, that the application lacked significant information necessary for review completion and was at risk of delay or denial."  Opp. at 9 (citing (AC ¶¶ 111–38, 151–54)).  The cited paragraphs do not so allege.  They concern: (a) generic, publicly available FDA procedures (¶¶ 111–33); (b) the HDE Application was amended (with no explanation why) (¶ 138); and (c) Schlorff stated SeaStar met with the FDA and would work collaboratively with it following the Not Approvable Letter (¶¶ 151–54).[4]

---

[4]    *See also* Opp. at 21–22 (citing ¶¶ 151–54 for claim that FDA expressed "serious concerns about SeaStar's approach to approval" at purported August 2022 meetings).  Plaintiff occasionally

Defendants' purported "knowledge" that SeaStar's estimated timelines were "improbable" (Opp. at 16) is thus a conclusory assertion grounded only in Plaintiff's self-serving imagination, deficient under Rule 8, never mind the PSLRA. *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014) (dismissal affirmed; it would "eviscerate the heightened PSLRA pleading standard" to credit speculation as to existence and content of communications). A careful reading of the Opposition's claims of false statements (Opp. at 8–13) exposes that their claims of falsity, in every instance, are rooted in the same made-up allegations regarding the supposed content of FDA communications and the implications for approval timeline, untethered to a single alleged fact.

Plaintiff's citation to *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 997 (S.D. Cal. 2005) (Opp. at 13 & 22) only illustrates what is missing from the Complaint. There, the plaintiff sufficiently pled a claim against a company that made positive statements regarding its drug's efficacy, despite a safety board recommending that the company terminate a study for lack of efficacy. *Id.* at 999. Critically, and unlike here, the complaint in *Immune Response* "allege[d] what was disclosed at those meetings, who disclosed what information, [and] when each issue was disclosed." *Id.* at 1022.[5] This case is more akin to segments of *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323 (D. Nev. Oct. 7, 2024) (Opp. at 19 & 25), where the court dismissed claims as mere speculation regarding private communications with the FDA: "[Plaintiff's] speculation, even if not illogical—and even if necessary in the absence of access to the confidential

---

cites nothing for his speculation. *See* Opp. at 16 (no citation for claim Defendants "knew" that "the severity of cited deficiencies [in the application] . . . render[ed] target completion improbable").
[5]    *See also id.* at 999 (alleging meeting dates, attendees, and contents of written reports).

FDA communications—is inadequate to survive the PSLRA's heightened pleading standard." *Id.*, at *10.[6]

Plaintiff relies upon such speculation throughout the Opposition, including with respect to falsity, the PSLRA's safe-harbor provision, and scienter. *See, e.g.*, Opp. at 9 (falsity; FDA allegedly told SeaStar HDE Application was at risk of delay or denial); 16 (safe harbor; alleged severity of unspecified "deficiencies" was an "omission" rendering timely approval supposedly improbable); 22 (scienter; Defendants allegedly knew from FDA meetings that FDA had "serious concerns about SeaStar's approach of approval"). Plaintiff's unsupported speculation must be rejected under the PSLRA.

## II.    THE OPPOSITION FAILS TO ADDRESS THE FATAL FLAWS OF PLAINTIFF'S CLAIMS BASED ON THE HDE STATEMENTS.

Plaintiff's impermissible attempt to amend the Complaint via the Opposition is plainly interposed to compensate for the absence of a serious response to the dispositive arguments for dismissal in the Motion. Plaintiff's newly made-up allegations form the basis of the majority of the Opposition's arguments, and they all fail on that ground alone. Where Plaintiff actually addresses Defendants' points and authorities, the Opposition amounts to little more than smoke and mirrors.

---

[6]    *See also id.* (citing *Lake v. Zogenix, Inc.*, 2020 WL 3820424, at *8 (N.D. Cal. Jan. 24, 2020) (mere fact that new drug application is a non-public document "does not relieve Plaintiffs of their obligation to meet the exacting pleading standards of the PSLRA."); *Bauer v. Eagle Pharms., Inc.*, 2017 WL 2213147, at *7 (D.N.J. May 19, 2017) (although "Plaintiffs may lack information due to the confidentiality of the [FDA's letter], this fact does not give Plaintiffs the authority to speculate. . . . [S]peculation and conjecture will not support a claim under the PSLRA's heightened pleading standard.")).

5

A.    The HDE Statements Are Forward-Looking
      Statements Protected By The PSLRA's Safe-Harbor Provision.

Plaintiff does not dispute that "[p]rojections about the likelihood of FDA approval are forward-looking statements."  Mot. at 9 (quoting *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *9 (D. Colo. Oct. 20, 2005) (dismissing with prejudice)).  Nor does he dispute virtually all of the HDE Statements concern expectations about future events, prototypical forward-looking statements.  *Id.* (citing *In re Molycorp, Inc. Secs. Litig.*, 2015 WL 1540523, at *25 (D. Colo. Mar. 31, 2015)).[7]  Instead, Plaintiff categorically argues the safe harbor does not apply to forward-looking statements where they allegedly contain omissions, as if there were an "omission exception" in the PSLRA's safe harbor.  Opp. at 14.  Plaintiff cites to no such exception, because the PSLRA states the opposite, providing the safe harbor in any private action "based on an untrue statement of a material fact *or omission* of a material fact." 15 U.S.C. § 78u-5(c)(1).  Plaintiff's authority is not to the contrary.  *West Palm Beach Firefighters' Pension Fund v. Startek, Inc.* (Opp. at 15), for example, held the statements at issue "cannot fairly be described as forward looking"—not that there is some imaginary "omission exception" to the safe harbor.  2008 WL 879023, at *17 (D. Colo. 2008).[8]  In any case, the Opposition

---

[7]    *See* AC ¶¶ 174, 175, 177, 179, 182, 185, 187, 197, 206, 219, 222 (HDE Statements using "expects" or "anticipates" in connection with potential FDA approval).

[8]    Plaintiff similarly mischaracterizes his out-of-state authorities, each of which actually found the challenged statements "are simply not forward-looking but rather are statements of historical or then-existing conditions," not that there is some fictional omission exception to the safe harbor. *In re Williams Secs. Litig.*, 339 F. Supp. 2d 1206, 1231 (N.D. Okla. 2003); *Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960, 974 (N.D. Ill. 2006) ("Molex's statements regarding its ability to absorb raw materials costs refer to Molex's past, not future, performance").  Notably, while *Takara* did observe that "it is axiomatic that the failure to make a statement cannot be forward-looking" (Opp. at 14), Plaintiff unsurprisingly fails to inform the Court that the observation was expressly with respect to "known trends and uncertainties" for which SEC rules impose a free-standing duty to

6

argues theories at odds with the Complaint, which alleges that the challenged statements were "materially false and/or misleading"—*not* that they omitted information.

The Opposition next argues that the HDE Statements are not forward looking because they "refer[] to past or present facts" and are thus "mixed" unprotected statements. Opp. at 15. Plaintiff's own selected quotations—*e.g.*, discussing the "path forward" (*id.* (quoting AC ¶ 221))—belie the argument. That some statements also contain present-tense verbs does not alter this result. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 210–11 (S.D.N.Y. 2022) (while statements that a project was "on track" and "on schedule" arguably reflect beliefs "based on current facts," to rule that such statements are thus not forward looking would "rip a large hole in that statute").[9]

The Opposition's hollow critiques of SeaStar's cautionary statements also fail. Plaintiff *does not dispute* the HDE Statements and other SeaStar public filings had conspicuous warnings that FDA approval of the SCD may never occur or could be delayed for up to several years. Mot. at 11. Rather, Plaintiff complains these warnings were not "sufficiently specific" because they did not warn about "risks of persistent deficiencies or repeated FDA requests for significant information …." Opp. at 17. This is a semantical distinction without a difference—the risk that the FDA may delay approval *is* the risk the FDA may perceive deficiencies or request information. Plaintiff fails to

---

disclose under Item 303 of SEC Regulation S–K. *Id.* *See* 17 C.F.R. § 229.303(b)(2)(ii). The Complaint contains no Item 303 allegations, and accordingly, Plaintiff's contention that Defendants seek to insulate omissions through the shield of the safe harbor is not germane.

[9] Plaintiff's deceptive quotation to *Phx Ins. Co., Ltd. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 862 (N.D. Ill. 2023) (Opp. at 15–16 n.9), misrepresents the outcome of that case. There, the statement that the company was "on track" to meet its goals was held to be "purely forward-looking" (*id.* at 880)—*i.e.*, the opposite of what the Opposition claims.

7

explain how his preferred phrasing changes the "total mix of information available to the

market." *SEC v. GenAudio Inc.*, 32 F4th 902, 929 (10th Cir. 2022) (Opp. at 17).

Plaintiff also claims SeaStar's cautionary statements were ineffective because the

warned-of risks "ha[d] already materialized"—*i.e.*, "Defendants already knew the FDA

harbored serious doubts about the application and were already delayed."   Opp. at 17.

But Plaintiff cites to no warning that the FDA might "harbor serious doubts" that had

"already materialized," because there are none.  In any case, there are no allegations in

the Complaint of "doubts" expressed by the FDA, Defendants' knowledge thereof, or any

"materialized" delays beyond SeaStar's projected timelines.[10]

Finally, the Opposition fails to point to a single allegation demonstrating

Defendants' "actual knowledge" of falsity, as is required for forward-looking statements.

Instead, Plaintiff's "actual knowledge" argument rests on the same unpled, conclusory

assertions of what Defendants "knew," devoid of a single reference to the Complaint

where such facts supposedly are alleged (and they are not so alleged).  Opp. at 16.

**B.**     **Even If The Safe-Harbor Did Not Apply,**
           **Plaintiff Fails To Allege That The HDE Statements**
           <u>**Contain Any Material Misstatements Or Omissions Of Fact.**</u>

1.     <u>The HDE Statements Contain Inactionable Opinions And Puffery.</u>

The Opposition disputes that the HDE Statements include inactionable opinions

and immaterial puffery.  These contentions fail.  First, Plaintiff argues that the HDE

---

[10]     Plaintiff's cases are readily distinguishable.  For example, in *Williams*, the company assured investors it was adequately capitalized and denied impending bankruptcy when internal reports showed the opposite.  339 F. Supp. 2d at 1232.  The Complaint here cites to no internal reports or other non-conclusory facts contradicting the HDE Statements.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), did not involve the PSLRA safe-harbor provision.

Statements do not use "opinion-qualifying" words like "We think" or "We believe." *Id.* at 17–18. Plaintiff's own case law disposes of this argument. In *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109 (10th Cir. 2014) (Opp. at 18), the court *affirmed dismissal* on the basis that "prefatory labels" do not determine what constitutes an opinion, explaining: "[S]tatements not preceded by the word 'opinion' can nevertheless represent opinions rather than facts." *Id.* at 1120.

Faring no better is Plaintiff's argument that the HDE Statements are not opinions because they "express certainty" about "a thing done or existing." Opp. at 18. Plaintiff cites no paragraphs from the Complaint showing which statements "express certainty" or what "thing" was "done or existing." Nor could he, as the HDE Statements expressed only what SeaStar "expected" to occur—by their nature, statements of *un*certainty.

Plaintiff also argues that the HDE Statements are not puffery because they are "grounded in concrete metrics or other objectively verifiable data[.]" Opp. at 19 (quoting *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248–49 (10th Cir. 2022)). But the Opposition identifies no such "concrete metrics" or "objectively verifiable data." In *Pluralsight*, all of the challenged statements were deemed puffery except a statement regarding the number of sales representatives the company employed. *Id.* at 1251. The puffery cited in the Motion in no way concerns such objectively verifiable data.[11]

Plaintiff's fallback argument is that the HDE Statements are "actionable" opinions because they "lacked basis." Opp. at 18. But that assertion rests on his made-up

---

[11]    Mot. at 16 (quoting AC ¶¶ 193 (SeaStar "remain[s] hopeful for a near-term determination" by the FDA); 206 (SeaStar "believe[s] that each deficiency cited in the [FDA's Not Approvable Letter] is readily addressable"); 221 (FDA's Approvable Letter "provides a clear path forward")).

assertions in the Opposition that when Defendants made the HDE Statements, they "knew about repeated FDA concerns which 'shed serious doubt on' the application in its current form, its review pathway, SeaStar's compliance with regulatory standards, and commercialization in the near-term." Opp. at 18. Plaintiff's reliance upon cases like *In re Amylin Pharms., Inc. Sec. Litig.*, 2003 WL 21500525 (S.D. Cal. May 1, 2003), only exposes the reasons dismissal is required, illustrating the type of factual showing that is missing here. There, in striking contrast, the complaint *quoted meeting minutes* in which the FDA discussed specific flaws in a study design, rendering actionable the company's stated opinion that "the trial results *met the requirements for FDA approval*." *Id.*, at *8 (emphasis in original). Nothing remotely of the sort is alleged here.

### 2. There Is No Duty To Disclose Publicly Known FDA Procedures.

The Opposition does not dispute that there is no duty to disclose publicly known FDA procedures, which are "presumed to be known in an efficient market." Mot. at 15 (quoting *Noble*, 2005 WL 4161977, at *7). Thus, Defendants' alleged statement that an Approvable Letter is "a standard part" of the FDA review process is not actionable, as a matter of law. *Id.* Plaintiff thus argues this "mischaracterize[s]" the Complaint because the "crux of falsity here is the[] failure to disclose company-specific risks posed by FDA action taken based on the known and concealed severity of cited deficiencies and SeaStar's pervasive and recurring problems with providing sufficient responses to requests for necessary information." Opp. at 13–14.[12] But these assertions of "company-

---

[12]    And, Defendants got the "crux" exactly right. *See* AC ¶ 219–20 (alleging referring to Approvable Letter as "standard part" of review process is false because it was inconsistent with "applicable federal regulations" governing the "FDA's substantive review process").

specific risks," "cited deficiencies," and "concealed severity" are merely conclusory assertions based upon self-serving imagination, not facts pled in the Complaint.[13]

Plaintiff's argument that disclosure of the 180-day review period for PMA applications was misleading is also without basis. *Id.* at 10–11. Plaintiff cannot dispute the FY2022 10-K explained in plain terms that the HDE process was distinct from the standard PMA process (MA, p. 73 – FY2022 10-K), the Company was "pursuing an HDE [for the SCD] for the *pediatric* population" (*id.*), and it was following the standard PMA process for the SCD for the *adult* population (MA, p. 52 – FY2022 10-K). He nonetheless argues that by describing the PMA process, Defendants somehow misled investors to believe that that process also governed the HDE Application because pediatric use of the SCD was "SeaStar's lead candidate" and the PMA application for adult use had not yet been filed. Opp. at 11. The Opposition fails to explain how these alleged facts even relate to—let alone contradict—the express disclosures of the FY2022 10-K.[14]

### 3. Whether SeaStar Submitted Its HDE Application In "June" Or On July 1, 2022 Is Utterly Immaterial.

The Opposition's claim that the Company's disclosure of submitting the HDE Application in "June 2022" (Opp. at 19) was false and materially misleading because,

---

[13] This is especially apparent as to the Approvable Letter. Even assuming *arguendo* the HDE Application was deficient, the Complaint does not allege what, if any, "company-specific risks" or "sever[e] . . . deficiencies" remained by the time the FDA was ready to send the Approvable Letter. *Id.* at 14. Moreover, as alleged, the Company *disclosed* anticipated conditions for approval (AC ¶ 219), which Plaintiff does not challenge.

[14] *Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050 (S.D. Cal. 2024) (Opp. at 11), held that a company's general statement that its manufacturing was FDA compliant—without mentioning specific products—would lead investors to believe such compliance pertained to all of the company's products, including its lead product candidate. *Id.* at 1060. Here, SeaStar disclosed that approval of the SCD for pediatric use and adult use were on two different pathways.

allegedly, it was submitted July 1, is specious.  21 CFR § 814.112 gives the FDA 30 days

from its receipt of an HDE application to notify the applicant it will begin substantive

review.  Thus, by disclosing the application was submitted in "June 2022," investors knew

the FDA must notify SeaStar by July 30 (30 days after the end of June).  Even assuming

*arguendo* the application was submitted on July 1, the FDA would be obligated to notify

SeaStar by July 31.  In a process that "can take several years" (as SeaStar warned; Mot.

at 11), it is inconceivable that a reasonable investor would care whether the FDA's notice

deadline regarding the beginning of that process was July 30 versus July 31.[15]

### C.    Plaintiff Fails To Allege Loss Causation In Connection With The HDE Statements.

The best indication that the Complaint's loss causation theory fails as a matter of

law is that Plaintiff completely abandons it in the Opposition.  Loss causation is generally

satisfied by pleading corrective disclosures (Mot. at 17–18) or "a theory of 'materialization

of a concealed risk' in which a plaintiff shows that the defendant's misrepresentation

concealed a risk that caused a loss for the plaintiff when the risk materialized."  *Abady v.*

*Lipocine Inc.*, 2023 WL 2938210, at *26 (D. Utah Apr. 13, 2023).  The Complaint expressly

alleges a "corrective disclosure" theory of loss causation.  AC ¶ 310.  The Opposition

does not.  Instead, without explanation, it pivots to a "materialization of risk" theory of loss

causation (Opp. at 29–30), a theory that appears nowhere in the Complaint.  Plaintiff's

---

[15]    Plaintiff's response that materiality is *generally* not resolved on a motion to dismiss (Opp. at 19) is undermined by his case law—courts will "not hesitate to dismiss securities claims . . . where the alleged misstatements or omissions are plainly immaterial[.]"  *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 675 (D. Colo. 2007) (Opp. at 27).

decision to give up on pleading a corrective disclosure makes sense—the Complaint does not allege what any disclosure supposedly "corrected." Mot. at 18; ignored in Opp.

But Plaintiff's new materialization of risk theory—even if it could be considered when presented for the first time in the Opposition—fares no better, relying upon unpled speculation that SeaStar knew it "misrepresented the strength and readiness of the HDE application"—risks that "materialized" with the Not Approvable and Approvable letters. Opp. at 29. Again, the only basis for Defendants' "knowledge" is Plaintiff's impermissible speculation regarding FDA communications—conclusory assertions unconnected to facts. *See Abady*, 2023 WL 2938210, at \*28–29 (rejecting "materialization of risk theory based on a concealed risk that the chances of NDA approval were lower than investors were led to believe" because of the "complaint's failure to allege facts" in support).[16]

### D. Plaintiff Fails To Plead Particularized Facts Giving Rise To A Strong Inference Of Scienter Regarding The HDE Statements.

Even if the Opposition overcame each independently dispositive failure identified above, it would still fail as it does not support a "strong inference" of scienter. Preliminarily, the Opposition does not (and cannot) dispute the void of direct evidence of scienter—internal documents, confidential witness statements, insider stock sales, or motive for personal financial gain—the absence of which makes pleading scienter an especially "difficult task." Mot. at 19 (quoting *Cozzarelli v. Inspire Pharma. Inc.*, 549 F.3d

---

[16] The Opposition's attempts to distinguish the Motion's cases (Opp. at 30 n.21) lack merit. Its characterization of *Abady* covers only part of that opinion—the portion quoted above disposes of Plaintiff's loss causation argument. And its description of *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 223–24 (S.D.N.Y. 2009), explains why it applies: "[N]o causal link because application denial made no reference to study plaintiff claimed caused the denial and no factual allegations that defendant had any FDA warning of insufficiencies." So too here.

618, 626 (4th Cir. 2008)).  Plaintiff also abandons his attempts to plead scienter through the "core operations" theory (Mot. at 22) and the Individual Defendants' high-level positions (*id.* at 22–23).  The theories the Opposition pursues fail as a matter of law.

### 1.     The Opposition's Argument That Defendants "Knew" The HDE Statements Were False Relies On Unpled Speculation.

The Opposition first contends that a "classic fact pattern[]" establishing scienter is when a defendant makes statements despite knowing facts that render the statements false or misleading.  Opp. at 21 (quoting *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1297 (N.D. Okla. 2010)).  In attempting to fit the Complaint into this archetype, however, the Opposition again runs wild with speculation regarding what Defendants purportedly "learned" at meetings and in unspecified correspondence with the FDA regarding the FDA's "serious concerns about SeaStar's approach to approval." Opp. at 22.  These facts simply are not pled—not in the paragraphs cited in the Opposition (AC ¶¶ 111–33, 137–38, 147–60) or anywhere else in the Complaint.  For this simple reason, the cases cited in the Opposition stand in stark contrast.[17]  Speculation cannot substitute for particularized allegations under the PSLRA.  *Luo*, 2024 WL 4443323, at *10 (speculation "inadequate to survive the PSLRA's heightened pleading standard").[18]

---

[17]     *See SemGroup*, 729 F. Supp. 2d at 1290 ("plethora of facts" supported claims, including witness statements and report by court-appointed examiner); *In re Emergent Biosolutions Inc. Sec. Litig.*, 2023 WL 5671608, at *23 (D. Md. Sept. 1, 2023) (scienter supported by, *inter alia*, internal emails, FDA report "detailing . . . contamination and quality control issues," Congressional investigation, and witnesses); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *22–23 (S.D.N.Y. Mar. 29, 2021) (nine witnesses and contents of internal meetings); *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 700 (9th Cir. 2016) (FDA report disclosing correspondence with company and study results suggesting product may cause cancer); *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *2 (C.D. Cal. Apr. 12, 2016) (public FDA warning letter and report).

[18]     Plaintiff's argument that scienter is supported because the SCD is allegedly important to SeaStar's success and the Individual Defendants "closely monitored the application" (Opp. at 23)

14

2.    SEC Correspondence *With LMAO* Does Not Establish Scienter.

The Opposition argues that scienter is pled because the HDE Statements "revert[ed] to the same misleading language" contained in *LMAO's* Form S-4.  Opp. at 24.  As alleged, this is simply false.[19]  While this alone is dispositive, Plaintiff's attempt to impute LMAO's knowledge to SeaStar fails.  That Schlorff and Baron allegedly "provid[ed] information" about SeaStar during the merger does not create a strong inference that *LMAO's* knowledge transfers to SeaStar.  Nor does the Complaint allege any facts about the "LMAO directors and executives" that came to SeaStar aside from their titles— insufficient to establish scienter as a matter of law.  *In re Molson Coors Beverage Co. Secs. Litig.*, 2020 WL 13499995, at *9 (D. Colo. Dec. 2, 2020).[20]

3.    Defendants' Alleged Motive To Improve
SeaStar's Financial Status Does Not Establish Scienter.

Plaintiff argues scienter is established because, during the Class Period, Defendants had a financial motive to hide information from investors to ensure SeaStar

---

misses the point.  Unlike in cases cited in the Opposition, the issue here is not whether SeaStar's executives were made aware of negative facts known within the Company.  *See, e.g.*, *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) (finding it "unlikely" CEO would be unaware of manufacturing deficiencies communicated to company in writing by FDA).  Rather, the Complaint fails to allege the existence of any negative facts—let alone facts known by anyone at SeaStar—that rendered the HDE Statements false or misleading.

[19]    *Compare* AC ¶ 284 (SEC letter requested LMAO change statement: "we expect *to obtain regulatory approval* of our SCD product candidate for pediatric patients in the first quarter of 2023" so as not to "imply that this or any product will be approved by the FDA") *with, e.g.*, ¶ 182 ("The Company expects *the FDA to complete a substantive review* of its HDE application during the first quarter of 2023, with a *potential* commercial launch expected in the second quarter of 2023.").

[20]    Plaintiff's lone cited case, *Robb v. Fitbit Inc.*, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) (Opp. at 24), is irrelevant.  There, the court held that because plaintiffs sufficiently pled scienter as to the defendant CEO, CFO, and CTO—largely based on statements by confidential witnesses—"scienter may properly be imputed to the company as well." *Id.*, at *7.  It does not even suggest that LMAO's knowledge may be imputed to SeaStar.

15

had working capital.  Opp. at 24.  Even if this supported scienter (it does not; Mot. at 21–22), these facts are not alleged in the Complaint.  Rather, the "financial motive to commit fraud" (AC at 115) alleged in the Complaint concerns only the de-SPAC between SeaStar Legacy and LMAO: "SeaStar Legacy was under immense pressure to raise working capital *through the consummation of the Business Combination with LMAO*."  AC ¶ 305; *see also* ¶¶ 287–306 ("financial motive" allegations limited to de-SPAC).  As explained in the Motion (at 22 n.20; ignored in Opp.), this purported motive ended before the Class Period, as the "business combination" had long concluded.[21]  Regardless, if Plaintiff now contends SeaStar's alleged "need for working capital" during the Class Period supports scienter, the case law cited in the Motion (ignored in the Opposition) is to the contrary.  *See* Mot. at 21–22 (citing *Cozzarelli*, 549 F.3d at 627 (optimistic statements regarding FDA approval to "raise money to fund [company's] operations" fail)).[22]

### 4.    SeaStar's Continued Financial Support Of SCD Undermines Scienter.

Plaintiff's failure to plead a strong inference of scienter is dispositive.  Defendants note, however, that the Opposition also fails to rebut facts providing a strong competing inference *against* scienter.  Plaintiff does not dispute that, at the time Defendants

---

[21]    *See In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 555 (S.D.N.Y. 2024) (SPACs are not "an exception to the general principle that the prospect of a public offering, standing alone, is insufficient to establish motive," but even if they were, "the alleged motive to commit fraud arose out of Defendants' desire to ensure that the de-SPAC transaction happened, [a] motive [that] dissipated once the de-SPAC transaction was complete").

[22]    Cases cited in the Opposition, where plaintiffs also alleged specific data known to the defendants that contradicted their positive statements, are inapposite.  *See, e.g.*, *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1125–26 (D. Colo. 2017) (scienter found where plaintiff alleged content of internal data contradicting statements regarding trials); *In re Biovie Inc. Sec. Litig.*, 2025 WL 947667, at *19 (D. Nev. Mar. 27, 2025) (plaintiff alleged "the contents of [internal] reports [contradicting statements] in detail").

16

allegedly made the HDE Statements, SeaStar continued to fund the SCD's development and efforts to obtain timely FDA approval. Mot. at 23 n.21. Plaintiff argues this fact does not undermine scienter because the Complaint does not allege that Defendants were "*convinced* the FDA would deny approval," but rather that Defendants withheld "warning signs[.]" Opp. at 25. The Complaint fails to allege these purported "warning signs," and case law makes no such distinction. *See In re Sanofi Secs. Litig.*, 87 F. Supp. 3d 510, 530–32 (S.D.N.Y. 2015) ("implausible" that company continued funding product while "secretly believing" FDA approval was "on a delinquent time schedule").

## III.   PLAINTIFF'S CLAIMS BASED ON THE ACCOUNTING STATEMENTS FAIL TO PLEAD SCIENTER.

As with the HDE Statements, Plaintiff does not remedy his failure to plead a strong inference of scienter as to the Accounting Statements. Again, the Opposition cannot cite any direct evidence of scienter, making pleading scienter an especially "difficult task." *Supra* at 13 (quoting *Cozzarelli*, 549 F.3d at 626). It abandons the claim that Defendants' titles support scienter. Mot. at 26 n.27. The remaining scienter arguments lack merit.

### A.   The Complexity Of ASC Topic 815 Undermines Any Inference Of Scienter.

The Opposition all but abandons its allegations of scienter via the purported simplicity of ASC 815. Dedicating 11 pages of the Complaint to this subject, Plaintiff devotes only three sentences to it in the Opposition, "arguing" that ASC 815 is simple because Plaintiff says it is. Opp. at 27. Tellingly, Plaintiff makes no attempt to distinguish case law cited in the Motion dismissing Section 10(b) claims for failure to plead scienter

17

because ASC 815 was not "clear and obvious."  Mot. at 25–26 (quoting *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 955–56 (S.D. Tex. 2016)).

**B.    The Individual Defendants' Certification Of**
**SeaStar's Public Filings Does Not Establish Scienter.**

The Opposition similarly has little to say in support of scienter based on the Individual Defendants' certification of SeaStar's public filings.  Its "argument" is a footnote consisting of a single sentence quoted from a single out-of-jurisdiction case (Opp. at 26 n.18), ignoring the 10th Circuit cases rejecting the very same theory.  *See* Mot. at 26.

**C.    The Alleged Terminations Of Ms. Baron And**
**The Accounting Firms Do Not Establish Scienter.**

The Opposition ignores the arguments in the Motion establishing that the purported terminations of Baron and the Accounting Firms do not support scienter.  It cites no allegations stating the reasons for Ms. Baron's alleged termination, let alone circumstances that are remotely "suspicious."  Mot. at 27.  Plaintiff's case law *supports* dismissal.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) (Opp. at 28) (*affirming dismissal*: "Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of [the] restatement's issuance itself in order for a resignation to be strongly indicative of scienter.").[23] Continuing to label Armanino's resignation "suspiciously timed" (Opp. at 28), Plaintiff

---

[23]    *See also id.* (quoting *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) ("Plaintiff can point to no particularized allegation refuting the reasonable assumption that [the CFO] was fired simply because the errors that lead to the restatement occurred on his watch or because he failed adequately to supervise his department.")).

18

simply ignores Armanino's disclosure that the resignation had nothing to do with SeaStar, and abandons the allegation that MaloneBailey was "terminated." Mot. at 28. Thus, case law in which a company "switched auditors" (Opp. at 28) does not apply.

### D.     *LMAO's* Prior Restatement Does Not Establish Scienter.

Sidestepping the Complaint's mischaracterization of a prior restatement as "*the Company's* prior restatement" when it was in fact *LMAO's* (Mot. at 29), the Opposition persists that it nonetheless supports scienter because it made Defendants "aware" of the "specific accounting matters" at issue, citing allegations that: (a) Schlorff and Baron were involved in "due diligence" between SeaStar Legacy and LMAO prior to the combination; and (b) LMAO's directors and executives—who are not defendants in this action—thereafter became SeaStar directors. Opp. at 26. Neither allegation is sufficient.

Regarding Schlorff and Baron, the Complaint merely alleges that their participation (years earlier) in the due diligence process gave them "access to" information. As a matter of law, access does not equate to actual knowledge.[24] As to the non-defendant LMAO directors and executives, Plaintiff alleges little more than their titles at LMAO. *Id.* ¶ 45. From this alone, Plaintiff asks the Court to assume: (a) their scienter as to LMAO's restatement; and (b) when they became SeaStar directors, that unalleged scienter transferred to the Accounting Statements. Courts do not infer scienter based solely on a

---

[24]     *See Molson*, 2020 WL 13499995, at *9 (no scienter related to accounting restatement; rejecting argument that "because Defendants were familiar with [the company's] operations and *had access* to its tax returns, Defendants had 'direct knowledge' of the tax-accounting error" because "Plaintiffs assert no particularized facts showing what Defendants *actually knew*").

person's title.  *See Molson*, 2020 WL 13499995, at \*9 ("At best, the allegations regarding [the defendant] assert that this is the sort of thing a CFO should have known.").  *Id.*[25]

### E.      Purported Magnitude Of Restatement Does Not Establish Scienter.

Finally, Plaintiff's arguments regarding the magnitude of the Restatement carry no weight.  Plaintiff makes no attempt to distinguish cases from this Court and others rejecting scienter even where the accounting error had a "significant financial magnitude." *Molson*, 2020 WL 13499995, at \*5–6.  Its own case law undermines its argument.  *See Andropolis*, 505 F. Supp. 2d at 680–81 (Opp. at 27) (magnitude of error created only a "weak inference of scienter"; *granting dismissal* in the absence of "a single written document showing that [the company] was actually aware that it was utilizing improper accounting procedures" or allegations showing the "accounting failures were so obvious").

### CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed.[26]  Moreover, Plaintiff's cursory "request" for leave to amend (Opp. at 30) is procedurally improper and the Court should dismiss with prejudice.  *See In re Gold Res. Corp. Sec. Lit.*, 776 F.3d 1103, 1118–19 (10th Cir. 2015) (affirming dismissal with prejudice; request to amend "amounted to a single sentence at the end of" opposition brief).

---

[25]    As noted at 16, *supra*, *Robb* does not support imputation of LMAO knowledge to SeaStar.

[26]    Plaintiff argues Baron "made" all of the challenged statements under the "group-published documents" doctrine.  Opp. at 20–21.  The 10th Circuit has not revisited this doctrine since the Supreme Court's seminal decision in *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011).  And as Plaintiff's own case law holds, "[u]nder *Janus*, the defendants must not only have prepared [the challenged] statements, but also *had ultimate authority over their content and their communication*."  *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1079 (D. Colo. 2012) (holding CFO and CLO "possessed ultimate authority over any statement that *they prepared* or for which *they were otherwise responsible*").  Aside from the documents Baron signed, the Complaint alleges no facts regarding Baron relevant to this analysis.  Mot. at 30 n.30.

Dated:  July 21, 2025          Respectfully submitted,


MORRISON & FOERSTER LLP

*/s/ Nicole K. Serfoss*
Nicole K. Serfoss
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
Tel: (303) 592-2246
nserfoss@mofo.com

and

MORGAN, LEWIS & BOCKIUS LLP

Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
Tel: (860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

*Attorneys for Defendants SeaStar Medical Holding*
*Corporation, Eric Schlorff, and Caryl Baron*

21

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 21st day of July 2025, I filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nicole K. Serfoss*
Nicole K. Serfoss