IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01873-RMR-TPO

RAFFI KHAJERIAN,
individually and on behalf of all others similarly situated,

      Lead Plaintiff,

v.

SEASTAR MEDICAL HOLDING CORPORATION,
ERIC SCHLORFF, and
CARYL BACON,

      Defendants.

---

## RECOMMENDATION

---

**Timothy P. O'Hara, United States Magistrate Judge.**

Before this Court is Defendants' Motion to Dismiss [ECF 33] and their related Request

for Judicial Notice [ECF 34]. The Motions are fully briefed.[1] Oral argument would not

materially assist in the Motions' adjudication. Based on the briefing, the record, and the relevant

case law, this Court recommends **granting** the Motion to Dismiss [ECF 33] and **granting in**

**part** the Request for Judicial Notice [ECF 34].

## BACKGROUND

For purposes of this ruling, this Court accepts as true the well-pleaded factual allegations

---

[1]     Plaintiff responded to the Motion to Dismiss at ECF 42, to which Defendants replied at
ECF 44. Plaintiff responded to the Request for Judicial Notice at ECF 43, to which Defendants
replied at ECF 45.

that Plaintiff raises in his Amended Class Action Complaint (FAC) [ECF 29], which is the operative pleading.

### A.    Documents That Defendants Attach to Their Motion to Dismiss

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). Thus a Fed. R. Civ. P. 12(b)(6) analysis concerns what a plaintiff pleads therein. There are limited exceptions to this general rule when a court may consider materials beyond the four corners of the complaint. *Id.* One such exception concerns "(1) documents that the complaint incorporates by reference [and] (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. Plaintiff separates the Defendants' submitted documents into three groups: 1) Exhibits A-P, R, and V-Y, 2) Exhibits S-U, and 3) Exhibit Q. *See* ECF 43 at 5-10.

As it relates to the first group of documents, Plaintiff concedes that his FAC "at minimum refers to each of these documents." ECF 43 at 6. This Court discerns no dispute from Plaintiff over the authenticity of this group of documents. *See generally id.* And this Court may consider "the contents of a referenced document itself rather than solely to what the complaint alleges the contents to be." *Emps.' Ret. Sys. v. Williams Cos., Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018) (citing *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007)). "[S]uch documents may be properly considered only for what they contain, not to prove the truth of their contents." *Id.* (internal quotation marks omitted). A court also may take judicial notice of "documents contained in the public record." *Sweesy v. Sun Life Assur. Co. of Canada*, 643 F. App'x 785, 789 (10th Cir. 2016). This includes documents filed with the Securities and Exchange Commission (SEC). *Emps' Ret. Sys.,* 889 F.3d at 1158 (quoting *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th

Cir. 2013)); *Voulgaris v. Array Biopharma, Inc*., No. 17-cv-02789-KLM, 2020 WL 8367829, at *2, n. 3 (D. Colo. Nov. 24, 2020).

Pursuant to the above legal authority, this Court includes for consideration Exhibits from the first group of documents, Exhibits A-P, R, and V-Y. The Parties agree that these documents are all referenced by Plaintiff in the FAC. Some include the allegedly materially false and/or misleading statements that Plaintiff claims constitute securities fraud. *See e.g*., ECF 33-2 at 2-433 (Exhibits A-P). Others are referenced in the FAC to provide context about general accounting principles. *Id.* at 493-511 (Exhibits V and W).  Others are forms that Defendants filed with the SEC. *Id*. at 438-481 (Exhibit R) and at 513-521 (Exhibits X and Y).

This Court does not include for consideration the remaining documents submitted by Defendants, i.e., Exhibits Q and S-U. Exhibit Q is not incorporated by reference in the FAC and Defendants seek its admission to contradict details in the FAC. *See* ECF 33 at 30 n.21 ("circumstances evident from SEC filings provide a strong inference *against* scienter."). The Court agrees with Defendants that the document is relevant, but it would be improper for the Court to consider its additional factual allegations at this stage. Similarly, while Plaintiff references various accounting principles in the FAC, *see e.g*., ECF 29 ¶¶ 68-101, ¶¶ 232-45, this Court will consider those well-plead facts alleged as true at this stage. This Court does not intend to convert Defendants' Motion into one seeking summary judgment.[2]

---

[2]    As an aside, as it relates to proposed Exhibits S-U, this Court notes that the earliest of the three, Exhibit S, is dated July 2024, after Defendants already had corrected the accounting statements. Thus, these exhibits, themselves, were not information that was available to the public (or the Defendants) during the time when Defendants made the disputed accounting entries.

Therefore, this Court recommends that Defendants' Request for Judicial Notice [ECF 34] be granted in part (as it relates to Defendants' Exhibits A-P, R, and V-Y) and denied in part (with respect to Exhibits Q and S-U).

**B.     The Parties**

On December 27, 2024, this Court appointed Mr. Raffi Khajerian to serve as the Lead Plaintiff [ECF 24] to represent those who bought SeaStar securities during the Class Period of October 31, 2022, and April 16, 2024 [ECF 29 ¶ 1]. For ease of reference, this Court refers to the class as the "Plaintiff".

The Defendants are made up of SeaStar Medical Holding Corporation (SeaStar) and Mr. Eric Shlorff and Ms. Caryl Baron. SeaStar is a "medical technology company" that was the product of a merger between SeaStar Medical, Inc. (SeaStar Legacy) and LMF Acquisition Opportunities, Inc. (LMAO). *Id.* ¶ 45, 102. The two individual Defendants[3] were corporate officers for the predecessor "SeaStar Legacy" entity, and they served as the management team for the newly formed SeaStart. ECF 29 ¶¶ 12-13, 16.

**C.     Summary of Plaintiff's Allegations**

*Background*

At all relevant times of this lawsuit, Defendants were "focused primarily on developing and commercializing its lead product candidate, the Selective Cytopheretic Device (SCD). ECF 29 ¶ 102. The SCD is a medical device used to treat hyperinflammation from acute kidney injury in both children and adults. *Id.* ¶¶ 31, 103, 105. The device already had been in development and

---

[3]     While there may be differences regarding the degree to which each named Defendant was involved with the matters at issue, this is not the thrust of Defendants' argument at this stage. As a result for purposes of this Recommendation, the Court will refer to the Defendants collectively.

subject of clinical studies for 15 years before the period relevant to this civil action. *Id*. ¶ 104.

On July 1, 2022,[4] SeaStar's predecessor company, SeaStar Legacy, submitted the Human Device Exemption (HDE) Application to the Food and Drug Administration (FDA). ECF 29 ¶ 137. The FDA accepted the HDE Application for review on July 13, 2022. *Id.*

Plaintiff provides significant detail about the build-up to the merger between SeaStar Legacy and LMAO. ECF 29 ¶¶ 19-46. For purposes of this Motion, it is important to know that on April 21, 2022, LMAO and SeaStar Legacy entered into an Agreement and Plan of Merger. *Id.* ¶ 40. And on October 28, 2022, the merger was consummated. *Id.* ¶ 45. Then three days later, on October 31, 2022, the new company, Defendant SeaStar, with Defendant Schlorff as CEO and Defendant Baron as CFO, respectively, began publicly trading on the NASDAQ. *Id.* ¶ 46.

As noted by Defendants, Plaintiff's allegations of securities fraud can be divided into two categories of statements: 1) those concerning the FDA's potential approval of the SCD as an HDE and 2) those concerning Defendant SeaStar's financial disclosures. ECF 33 at 9.

*HDE Statements*

According to Plaintiff, the "Class Period," began on October 31, 2022, when Defendant SeaStar issued its first press release. ECF 29 ¶ 173. On that day, Defendant SeaStar announced that it had submitted an HDE Application for its SCD device for use with pediatric patients.[5] *Id.* ¶

---

[4]    In later press releases and reports, Defendants incorrectly referred to the application filing date as "June 2022" (as opposed to the actual filing date of July 1, 2022). Plaintiff includes the "June 2022" references as one of its "HDE Statements" upon which it bases its fraud claim.

[5]    This Court notes that toward the beginning of the press release it states "SCD lead program in Acute Kidney Injury (AKI) with potential FDA approval for pediatric AKI targeted for Q1 2023 and commencement of pivotal trial in adult AKI targeted in Q1 2023." ECF 33-2 at 2. At the end, the press release also contains a disclaimer regarding Forward-Looking Statements. *Id.* at 5-7.

174. The part of the press release that Plaintiff highlights is where Defendant SeaStar's "Upcoming Expected Value-Driving Milestones" are labeled "Q1 2023: FDA approval under HDE" and "Q2 2023: Commercial launch of SCD for pediatric [acute kidney injury]." *Id*. ¶¶ 140-141, 174. Plaintiff also quotes Defendants' statement that "[w]e have a number of value-driving anticipated milestones, including our potential near-term evolution to a commercial stage company driven by potential FDA approval in our lead program, pediatric AKI." *Id*. ¶ 175.

In a November 3, 2022, press release, SeaStar stated that it "expects the FDA to complete a substantive review of its HDE application during the first quarter of 2023, with a potential commercial launch expected in the second quarter of 2023." ECF 29 ¶ 177; *see also* ECF 33-2 at 9-11. Subsequent press releases repeated SeaStar's expectation that the application's substantive review would be completed during the first quarter of 2023 or potential approval in the first quarter of 2023 as well as a potential commercial launch in the second quarter of 2023. *Id*. ¶¶ 179-180 (issued on November 7, 2022), 182 (issued on December 2, 2022), 185 (issued on December 29, 2022), 187 (issued on January 9, 2023). The press release on December 2, 2022, added that SeaStar "**remains on a trajectory of growth including near-term potential for commercialization**." *Id*. ¶ 183 (emphasis in original). The January 9, 2023 press release added that "**[t]he FDA has demonstrated continued support in the SCD** in granting breakthrough therapy status in adults and **a substantive review of a [HDE] for pediatric AKI patients**." *Id*. ¶ 188 (emphasis in original).

On March 30, 2023, Plaintiffs issued both a press release and an annual report to the SEC. The March 30, 2023 press release referenced that SeaStar was "continu[ing] active discussions with the FDA regarding the HDE application and remain hopeful for a near-term determination"

as well as "working with regulators to bring products to market." ECF 29 ¶¶ 193-194. Defendants'

annual report to the SEC on that same day pushed the expected approval time frame out for

completion of the FDA's substantive review of the HDE Application "by" or "during" "the first

half of 2023." *Id.* ¶ 197 Defendants added the disclaimer that "there is no guarantee that the FDA

will approve our HDE application." *Id*. The report also forewarned that the review process can

take "a significantly longer period of time" than the standard track for a variety of reasons. *Id*. ¶

198. One of those possible delays can be due to "hold periods" during which the company must

"address FDA requests for additional information." *Id.*

Plaintiff complains that the March 30, 2023 SEC report was false or materially misleading

because: 1) Defendants submitted the HDE Application on July 1 of 2022 (not in June of 2022),

2) SeaStar had "deficient compliance controls and procedures related to the HDE Application," 3)

there were deficiencies with the HDE Application, and 4) Defendants gave the impression that it

was a 180-day review period rather than a 75-day review period. ECF 29 ¶ 199. The March 30,

2023 press release and SEC report also contain the first accounting-related statement that is part

of Plaintiff's lawsuit. Regarding Defendants' financial state for the preceding fiscal year of 2022,

Defendant stated in the Earnings Release that "**[a]t the closing of the merger agreement in

October 2022, [SeaStar] entered into forward purchase agreements of shares and warrants

with the potential to generate up to $10 million in proceeds, depending on the market price

of shares**." ECF 29 ¶ 191 (emphasis in original). Plaintiff alleges that Defendants "improperly

classified [SeaStar's] Private Placement Warrants, PIPE Warrants, and Forward Purchase

Agreements, and failed to account for all liabilities on its balance sheet," thus overstating its

financial position. *Id*. ¶ 192.

7

On May 9, 2023, Defendants issued a press release about a letter from the FDA that "**the FDA indicated that the application is not approvable in its current form** but outlined specific guidance as to how the application may be amended and resubmitted successfully." ECF 29 ¶ 148 (the "Not Approvable Letter") (emphasis in original). Plaintiff alleges that on May 10, 2023 (in response to the news about the Not Approvable Letter), SeaStar's stock price dropped 40% (down to $1.17). *Id*. ¶ 149.

A press release on May 15, 2023 repeated that "**[i]n May 2023 [Defendants had] received a letter from the FDA indicating that the [HDE] application is not approvable in its current form**." ECF 29 ¶ 206 (emphasis in original). The FDA's letter gave Defendants "specific guidance as to how the application may be amended and resubmitted." *Id.* ¶ 206. Defendants stated their belief "that each deficiency cited in the letter is readily addressable and have put in place a plan with the goal of achieving pediatric HDE approval." *Id*. Defendants indicated that they are working with the FDA and are "targeting approval" of the HDE Application "in late 2023." *Id*. ¶ 207.

On August 14, 2023, Defendants filed a quarterly report with the SEC reporting the Company's financial and operating results for the second quarter of 2023. ECF 29 ¶ 215. Plaintiff alleges that the report improperly stated that their financial statements were "prepared in conformity with generally accepted accounting principles in the United States of America (US GAAP)," while in reality, they failed to account for liabilities on its balance sheet, which materially overstated the company's financial well-being. *Id*. ¶ 218.

On October 3, 2023, Defendants issued a press release stating that they had received correspondence from the FDA which indicated that the FDA considers the HDE Application "**to**

8

**be approvable"** for pediatric use. ECF 29 ¶ 219 (emphasis in original). Defendants described receiving **"an Approvable Letter [as] a standard part of [the] approval process**," and Defendants "expected [the Approvable Letter] to be issued within a month." *Id.* Defendants portrayed this correspondence as "provid[ing] a clear path forward" and "an important milestone," and Defendants anticipated market approval "by the end of 2023." *Id.* ¶¶ 221-222. Plaintiff complains that the above statements created the misleading impression that the product indeed was moving toward market approval. *Id*. ¶¶ 223-224.

Then, on October 30, 2023, Defendants issued a press release to report receipt of the Approvable Letter. ECF 29 ¶ 158. This time Defendants portrayed the Approvable Letter in a less positive (and thus according to Plaintiff a more accurate) light. *Id.* ¶¶ 158-159. Defendants reset the expected endpoint from "by the end of 2023" to "by the end of 2023 <u>or 1Q24</u>." *Id.* ¶ 159 (emphasis added). Plaintiff alleges that news about the Approvable Letter caused the stock price to drop 20% from $1.02 (on October 27, 2023) to $0.82 (on October 31, 2023). *Id*. ¶ 160.

On February 21, 2024, a date within the first quarter, the FDA approved Defendants' HDE Application. ECF 29 ¶ 137.

On March 27, 2024, Defendants issued a press release to announce the restatement of Defendant SeaStar's financial reports for 2022 and for the first three quarters of 2023. ECF 29 ¶ 162. The restatement would change the classification of certain warrants and the prepaid forward purchase arrangement. *Id.* ¶ 163. Defendants explained that the restatement was "not expected to have a material impact on our business operation or our cash position but rather is related to the reporting of non-cash accounting items." *Id.* ¶ 163. Plaintiff counters that Defendants' original accounting had caused the overvaluation of SeaStar's total assets by 36% and the undervaluation

of SeaStar's total liabilities by 200%. *Id.* ¶ 270. Plaintiff alleges that the accounting restatement notice caused the price of SeaStar stock to drop 4.84% (down to $0.71 as of March 27, 2024). ECF 29 ¶ 165.

On April 17, 2024, Defendants issued new financial statements for the prior 2023 fiscal year. Plaintiff construes this report as showing that the accounting restatement "had an expanded impact on SeaStar's financial reporting beyond [what] was previously disclosed in the March 2024 Press Release." ECF 29 ¶ 170. Plaintiff alleges that this news caused SeaStar's stock price to drop 20% from $0.71 (as of April 16, 2024) to $0.54 (as of April 18, 2024). ECF 29 ¶ 171.

In January 2024—a few months before the restatement—Defendant Baron was demoted from Interim CFO to Vice President of Finance. ECF 29 ¶ 258. On April 23, 2024—one week after the restatement—Defendant Baron was terminated. *Id.*

The Class Period ends on April 16, 2024. ECF 29 ¶ 1.

### D.     Plaintiff's Claims for Relief and Causes of Action

Plaintiff brings two counts for relief. Count I alleges that all three named Defendants violated 15 U.S.C. § 78j(b) and SEC's companion regulation, Rule 10b-5. Under Count I, Plaintiff alleges that each Defendant (1) participated in the issuance of statements that were materially false and misleading (2) that deceived the Class Members into buying SeaStar stock that was artificially inflated. Plaintiff furthers that the Individual Defendants did so with actual knowledge of the statements' falsity or with reckless disregard of the truth. The Class Members would not have bought the stock had they known the truth. ECF 29 ¶¶ 326-334.

Count II is brought only against the Individual Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). To state a prima facie Section 20(a) claim, Plaintiff must

establish a primary violation (i.e., prevail on Count I) and the Individual Defendants' "control over the primary violator." *In re Molson*, 2020 WL 13499995 at \*13. Plaintiff alleges that the Individual Defendants exercised sufficient control of and authority over SeaStar to cause SeaStar to make the misleading statements that are subject of Count I despite their own personal knowledge of the truth about those misstatements. ECF 29 ¶¶ 336-340.

## GOVERNING STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim

The purpose of Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that a plaintiff pleads facts that allow "the court to draw the reasonable inference[6] that the defendant is liable for the misconduct alleged." *Id.* at 678. *Twombly* requires a two-prong analysis. First, a court must exclude from consideration "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, a court should focus on the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then that claim survives the motion to dismiss. *Id.* at 680.

---

[6]    As discussed below, the standard for a motion under Rule 12(b)(6) contains additional considerations in cases involving violations of the Securities Exchange Act.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). While the Rule 12(b)(6) standard does not require a plaintiff to establish a prima facie case in a complaint, the elements of each cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Frey v. Town of Jackson, Wy.*, 41 F.4th 1223, 1233 (10th Cir. 2022) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case." *Frey*, 41 F.4th at 1233 (citing *Iqbal*, 556 U.S. at 679).

12

**II.    Section 10(b) Securities Fraud**

The elements of a securities fraud claim under § 10(b) and Rule 10b-5 are:

(1)    a material misrepresentation or omission by the defendant [i.e., falsity],

(2)    made with scienter,

(3)    a connection between the misrepresentation or omission and the purchase or sale of a security,

(4)    reliance upon the misrepresentation or omission,

(5)    economic loss, and

(6)    loss causation.

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). An omitted fact is "material" if there is a substantial likelihood that a reasonable investor would have viewed its disclosure as having significantly altered the total mix of information made available and if a reasonable investor would have considered it important when deciding whether to buy or sell the stock. *See S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1169 (D. Colo. 2009) and *Yanek v. Staar Surgical Co*., 388 F. Supp. 2d 1110, 1125, n. 9 (C.D. Cal. 2005) (internal citations omitted). A statement is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Mulligan v. Impax Labs., Inc*., 36 F. Supp. 3d 942, 959 (N.D. Cal. 2014).

Moreover 15 U.S.C. § 78u-4(b)(2) imposes a heightened pleading standard for this cause of action. *Medina v. Clovis Oncology, Inc*., 215 F. Supp. 3d 1094, 1101, 1111 (D. Colo. 2017). To successfully plead a misleading statement under element (1), a plaintiff therefore must:

(a)    specify each misleading statement,

(b)    explain why each statement is misleading, and

(c)     if plaintiff relies on information and belief, then the plaintiff must state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4; *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015). The Court evaluates "'the totality of the pleadings' to determine if the [plaintiff has] stated an actionable claim of securities fraud." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1092 (10th Cir. 2003) (citing *City of Philadelphia v. Fleming Cos., Inc.,* 264 F.3d 1245, 1261-62 (10th Cir. 2001)). If the requirements relating to the particularity of each statement are not met, then "the court shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3).

To successfully plead scienter, a plaintiff must plead with particularity facts which taken on the whole "giv[e] rise to a strong inference that the defendant acted with the required state of mind." *Gold Res.*, 776 F.3d at 1109 (quoting 15 U.S.C. § 78u-4(b)(2)(A)); *see also Medina*, 215 F. Supp. 3d at 1125. The required state of mind is "a mental state embracing intent to deceive, manipulate, or defraud." *Gold Res.*, 776 F.3d at 1109. A plaintiff "must demonstrate that: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." *Medina*, 215 F. Supp. 3d at 1125 (quoting *Fleming*, 264 F.3d at 1261). "Negligence, even gross negligence, is not sufficient." *Gold Res.*, 776 F.3d at 113. The scienter requirement is marked by "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Gold Res.*, 776 F.3d at 1113 (citing *Fleming*, 264 F.3d at 1245); *Medina*, 215 F. Supp. 3d at 1125. As part of this analysis, the court "must take into account plausible opposing inferences." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

In short, a plaintiff bringing suit under § 10(b) "bears a heavy burden at the pleading stage."

14

*Gold Res.*, 776 F.3d at 1108 (quoting *In re Level 3 Communications, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012)).

## DISCUSSION

### I.     Introduction—the Pleading's General Format

As noted above, the Parties have organized the allegedly fraudulent statements into two groups: those statements involving the HDE Application to the FDA and those statements involving Defendants' accounting practices. This Court agrees with that division and will structure its analysis accordingly. In doing so, this Court conducts a "holistic" analysis, taking into account all of the well-plead facts alleged the FAC. *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201-02 (10th Cir. 2015). The Court must not, and will not, scrutinize each allegation in isolation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (citations omitted).

It is worth noting that Plaintiff's FAC resembles the type of pleading that courts have "repeatedly condemned" in securities class actions. *See Abady v. Lipocine*, No. 2:19-cv-00906, 2023 WL 2938210, at *11 (D. Utah Apr. 13, 2023) (collecting cases). The practice is to "excerpt long passages including numerous statements and, to a large degree, leave the Court to the task of teasing out which specific statements are at issue." *Level 3*, 667 F.3d at 1339 n.8. The long narratives are then followed with a general statement suggesting that some or all of the aforementioned statements were false or misleading. *Abady*, 2023 WL 2938210 at *11 (citing *Rumbaugh v. USANA Health Sciences, Inc.,* No. 2:17-CV-106, 2018 WL 5044240, at *4 (D. Utah Oct. 17, 2018)).

To demonstrate the problem, the Court provides an example from the FAC. ECF 29 ¶ 198. Plaintiff identifies the FY22 10-K, and then cites the following:

A pre-market approval application must be submitted to the FDA for Class III devices for which the FDA has required a PMA. The pre-market approval application process is more extensive than the 510(k) pre-market notification and de novo request processes. A PMA application must be supported by extensive data, including but not limited to technical, preclinical, clinical trials, manufacturing and labeling to demonstrate to the FDA's satisfaction reasonable evidence of safety and effectiveness of the device.

After a pre-market approval application is submitted, the FDA has 45 days to determine whether the application is sufficiently complete to permit a substantive review and thus whether the FDA will file the application for review. The FDA has 180 days of FDA review time to review a filed premarket approval application, although the review of an application generally occurs over a significantly longer period of time due to hold periods during which the submitting sponsor (the company) gathers information to address FDA requests for additional information. The total review process is highly variable and can take up to several years. During this review period, the FDA may request additional information or clarification of the information already provided. Also, an advisory panel of experts from outside the FDA may be convened to review and evaluate the application and provide recommendations to the FDA as to the approvability of the device.

Although the FDA is not bound by the advisory panel decision, the panel's recommendations are important to the FDA's overall decision-making process. In addition, the FDA generally conducts a pre-approval inspection of the manufacturing facilities to ensure compliance with the Quality System Regulation ("QSR"). The agency also may inspect one or more clinical sites to assure compliance with FDA's regulations.

Upon completion of the PMA review, the FDA may: (i) approve the PMA that authorizes commercial marketing with specific prescribing information for one or more indications, which can be more limited than those originally sought; (ii) issue an approvable letter that indicates the FDA's belief that the PMA is approvable and states what additional information the FDA requires, or the post-approval commitments that must be agreed to prior to approval; (iii) issue a not approvable letter that outlines steps required for approval, but which are typically more onerous than those in an approvable letter, and may require additional clinical trials that are often expensive and time consuming and can delay approval for months or even years; or (iv) deny the application. If the FDA issues an approvable or not approvable letter, the applicant has 180 days to respond, after which the FDA's review clock is reset.

*Id*. The statement consists of 13 sentences. Plaintiff fails to identify which statement among the many is false or misleading.[7] *See also id.* ¶¶ 211-12, 216-17, 227-28. Then, Plaintiff follows the

---

[7]    And in other places, a portion of the passage is in bold, but Plaintiff fails to explain whether only the portion in bold is considered as the false/misleading statement or the entire

citation up with this paragraph:

> The statements identified above are materially false and/or misleading because (i) SeaStar did not submit the HDE Application until July 1, 2022; (ii) SeaStar had deficient compliance controls and procedures related to the HDE Application resulting in the need for multiple amendments to provide the necessary information regarding the device for the FDA to complete its review; and (iii) because there were deficiencies with the HDE Application, the FDA was unlikely to approve the HDE Application in its present form, and the SCD's regulatory prospects were overstated. Additionally, Defendants created the false impression that SeaStar's regulatory review process was not substantially delayed by providing the longer 180-day review period for PMA applications, not the applicable 75-day review period for HDE applications.

*Id.* ¶ 199. Plaintiff's explanation of the alleged fraud is a carbon copy in each instance, either completely or partly. *See e.g., id.* ¶ 178, 181, 186, 189, 195, 208. This type of pleading places "burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting plaintiffs' claims." *Abady*, 2023 WL 2938210 at *12 (citing *Rumbaugh*, 2012 WL 504420 at *4).

Unlike in *Abady*, there is an overall lack of clarity about exactly which statements Plaintiff claims are false, this Court does not find that Plaintiff's FAC as a whole fails to comply with the general pleading requirements of Rule 8 and the PSLRA, 2023 WL 2938210 at *13.[8]

## II.    HDE Statements

First, this Court considers Defendants' statements about the FDA's expected approval of their HDE Application. For multiple reasons, Plaintiff's FAC is deficient in this area.

---

statement. *See e.g.*, ECF 29 ¶¶ 175, 177, 179, 182, 187, 191, 193, 197, 201-02, 204, 206, 209, 219, and 221. In one place, Plaintiff cites a statement by Defendants that is five paragraphs in length, of which only one paragraph is in bold. *Id.*¶ 204.

[8]     Because this Court recommends that Plaintiff be allowed a chance to correct the pleading errors through amendment, if so allowed by District Judge Rodriguez, this Court advises Plaintiff to correct these issues as part of any subsequent complaint.

### A.    Materiality

This Court finds statements about the expected FDA approval of the HDE Application could be material in the securities fraud context. *See e.g., Yanek*, "[a]ny facts bearing on possible delays in FDA approval of the [SCD device] are thus material because [Defendants'] entire strategy depended on the timely approval and commercial launch of the [SCD device]. 388 F. Supp. 2d at 1129. However, as noted in *Level 3*, not everything that defendants say about a certain topic is material. 667 F.3d at 1339.

As to some of the statements allegedly made by Defendants on this topic, this Court sees that materiality is lacking. For example, take Defendants' press release issued on October 31, 2022:

> SeaStar Medical has continued to deliver on its promises with operational excellence. I am incredibly pleased with the progress made and proud of the team that has put in a tremendous amount of effort to get the Company to where we are today … As a publicly listed company, we gain valuable access to the capital markets which I believe will help build momentum and propel the Company to the next level of growth. In addition to the progress we've made on the corporate front, we continue to advance our innovative SCD therapy platform. ***We have a number of value driving anticipated milestones, including our potential near-term evolution to a commercial stage company driven by potential FDA approval in our lead program, pediatric AKI*** … I am excited for what is to come and look forward to providing updates as we execute on the milestones ahead.

ECF 29 ¶ 175 (emphasis added in ECF 29 not in original). Nothing about this statement involves an objectively verifiable matter. Even the portion of the statement highlighted by Plaintiff in bold provides no dates or specific information that could be verified. To the contrary, the statement is a general forward-looking statement, indicative of vague management-speak. This Court finds that this statement is one of corporate optimism as it only discusses "potential FDA approval" and unspecified "value driving milestones." *See Level 3*, 667 F.3d at 1339 (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997)). For the same reasons, the Court finds two other groups of statements from the FAC are immaterial. *See* ECF 29 ¶¶ 193-94 (FY22 Earnings Release – Part

18

II) and 206-07 (May 15, 2023 Press Release).

And this Court does not find Defendants' references to a "June 2022" application date (instead of the correct July 1, 2022 date) to be a material difference. Plaintiff makes no explanation how this discrepancy would have impacted a reasonable investor's decision-making. As a result, the Court will not find materiality in any statement for that reason.

The remainder of the statements in ECF 29, accepting Plaintiff's well-plead facts as true, and viewing the FAC holistically, are material and merit further consideration.

### B.    Falsity

For many of the statements labeled by Plaintiff in the FAC as false or misleading, this Court does not find that Plaintiff has sufficiently demonstrated that the statements were actually false or misleading. Under the heightened pleading standard in these types of cases, it is not sufficient for Plaintiff to just claim the statements are false or misleading.[9] The facts alleged in the complaint must support "a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Adams*, 340 F.3d at 1099. Courts will look beyond Plaintiff's mere affirmation and will examine the following factors to determine if plaintiff has demonstrated sufficient evidence on this topic:

1) The level of detail provided by the facts in the complaint,

2) The number of facts provided,

3) The coherence and plausibility of the facts when considered together,

---

9    Plaintiff repeatedly states in conclusory fashion that certain statements are "materially false and/or misleading." *See e.g.,* ECF 29 ¶¶ 176, 178, 181, 184, 186, 189, 192, 195, 199, and 205.

4)  Whether the source of the plaintiff's knowledge about a stated fact is disclosed,

5)  The reliability of the sources from which the facts were obtained, and

6)  Any other indicia of how strongly the facts support a conclusion of reasonableness that the statements were false or misleading.

*Medina*, 215 F. Supp. 3d at 1111 (citing *Adams*, 340 F.3d at 1099).

For example, Plaintiff contends that Defendants falsely portrayed the Approvable Letter as a positive development. ECF 29 ¶¶ 219, 221-22. However, on October 3 and October 5, 2023, Defendants announced only the anticipated issuance of an Approvable Letter. *Id.* ("**an Approvable Letter, which is a standard part of CBER's approval process**, is expected to be issued within a month") (emphasis added in ECF 29); ("The FDA has informed us to expect an Approvable Letter within a month . . ."). Plaintiff never denies the accuracy of these statements. Instead, Plaintiff suggests with no specific support, that Defendants created a false impression. Based on the *Adams* factors identified above, this Court does not find a reasonable person would believe that these statements were false or misleading. *See Medina*, 215 F. Supp. 3d at 1111.

For the same reasons, this Court finds that the following statements have been insufficiently supported as false or misleading: ECF 29 ¶¶ 177 (November 3, 2022 press release); ¶ 180 (November 7, 2022 press release); (December 2, 2022 press release); ¶ 185 (December 29, 2022 press release); ¶ 187 (January 9, 2023 press release); ¶ 191 (FY22 Earnings Release – Part I); ¶¶ 197-98 (2022 10-K – Part I).

### C.    Scienter with Particularity

Before analyzing the statements as it relates to scienter, this Court notes that Plaintiff provides some information as "Additional Allegations Probative of Scienter." ECF 29 ¶¶ 230-306. To the extent that the allegations are plead as facts and not conclusions, this Court considers them

as part of its holistic approach to ruling on the Defendants' Motion. The Court notes that some information is more probative on the issue of scienter than other information. For example, the resignation of Armanino as the company's independent registered public accounting firm and termination of Defendant Baron, the CFO, provides some evidence of scienter, but it is insufficient to state a plausible claim in and of itself. "The inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324.

Even though this Court has found that all the HDE-related statements are either not material or are insufficiently supported as false or misleading, the Court continues its analysis to address the scienter requirement. On this topic, Plaintiff also pleads only a general and vague reason why Defendants should have known their expected FDA application approval timeframes were false. Instead of demonstrating how Defendants knew of the false/misleading nature of the statements, Plaintiff relies on vague statements of indirect culpability more consistent with negligence than intentional deception: Defendants' "compliance controls and procedures" were "deficient," there were deficiencies in the HDE application such that "the FDA was unlikely to approve the HDE Application in the present form, and the SCD's regulatory prospects were overstated." ECF 25 ¶¶ 176, 178, 181, 184, 186, 189, 195, 199, and 208. This is insufficient to meet the elevated pleading standard for scienter under Rule 9(b). Complaints must provide "particularized allegations" demonstrating awareness *as of the date each particular statement* to demonstrate scienter at the pleading stage. *Meitav Dash Provident Funds and Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, 79 F.4th 1209, 1222-23 (10th Cir. 2023) (emphasis added) (finding the complaint's failure to demonstrate awareness of the underlying fact prior to the statement insufficient to demonstrate

21

scienter).

If such a deficiency existed such that it would have impacted the FDA approval process, Plaintiff fails to prove *that Defendants were even aware of it*.[10] Without a clear basis to understand why Defendants' statements were dishonest, Plaintiff fails to meet the heightened pleading burden to establish the first element.

As noted above, the Court takes a holistic approach in its analysis and considers all the well-plead facts in the FAC. In doing so, the Court considers the information favorable to Plaintiff relating to scienter, including, but not limited to: the multiple amendments to the FDA application that occurred (referenced at ECF 29 ¶ 138), the identified accounting errors that required a restatement (referenced at ECF 29 ¶¶ 162-65), and the resignation/termination of accounting personnel in 2023/24 (referenced at ECF 29 ¶¶ 250-58).

Balanced against that, is general information that would suggest no scienter existed during this time, including, but not limited to: **the FDA's approval of the HDE application on February 21, 2024 (referenced at ECF 29 ¶ 137);**[11] the transparency demonstrated by the Defendants through the process, including its issuance of multiple press releases to announce its financial and

---

[10]    This Court notes that in its Response, Plaintiff argues that Defendants "knew SeaStar's only pending application for its flagship product, the Selective Cytopheretic Device (SCD), was rife with deficiencies," *see* ECF 42 at 13, however, the facts to support this argument are insufficiently plead in the FAC. Additionally, Plaintiff accuses Defendants of withholding "non-public FDA communications [that] raised concerns as to SeaStar's continued failure to provide necessary information, resolving to take formal action to cite deficiencies that must be cured prior to any order." ECF 42 at 17 (citing ECF 29 ¶¶ 126-27). The factual support for that argument is also lacking in the FAC.

[11]    In the FAC, Plaintiff references "[n]on-public communications" between Defendants and the FDA that would be suggestive of Defendants' timeline being improbable, but no such communications are included as part of the FAC. Plaintiff's citation at ECF 42 at 25 to ECF 29 ¶¶ 126-27 does not reflect what Plaintiff suggests.

FDA application-related deficiencies (referenced at ECF 29 ¶ 162, 193, 204, 206, 219, 221), Plaintiff's implicit acknowledgment that amendments to FDA applications are a part of the process (referenced at ECF 29 ¶ 120-33), the protections provided by law to forward-looking statements, coupled with Defendants' frequent use of such statements and disclaimers in press releases to inform investors about those context of their prognostications, *see e.g.,* ECF 33-2 at 10-11.

While no smoking gun is required, *Tellabs*, 551 U.S. at 324, a complaint plead with particular facts "that give rise to a 'strong'—i.e., a powerful or cogent—inference," *id*. at 323, is.[12] While it is possible that false or misleading statements were made by Defendants with knowledge (at the time) that such statements were false or were likely to be false, it is just as possible that the statements reflected a constantly changing business environment as the company: navigated the uncertainty of the FDA approval process, attempted to utilize every legal accounting advantage in order to do so, and attempted to keep investors informed in real time. In this Court's opinion, looking at the totality of the circumstances, each possible explanation is equally likely.[13]

Importantly, Plaintiff cites no on-point decision where a court found similar allegations to meet the heightened pleading standard. As a result, the cases cited by Plaintiff are not persuasive. Mostly, Plaintiff's case citations concern more concrete situations when a defendant made specific fact representations that were contrary to known specific problems about the company. *See e.g*.,

---

[12]    In this analysis, this Court is able to consider "other explanations" for the factual record provided by Plaintiff. *Tellabs*, 551 U.S. at 324.

[13]    As it relates to Plaintiff's argument that Defendants' statement regarding the pathway to approval was false or misleading, ECF 29 ¶ 198, Plaintiff fails to demonstrate that it was anything but a mistake to include that information in the FY 10-K filing. The Court notes that in the FAC, Plaintiff cites to four paragraphs from the document, which is *110 pages long*. *See* ECF 33-2 at 48-158.

ECF 42 at 25 (citing *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs., Inc.*, 2020 WL 5500458, at *11 (D. Colo. Sept. 11, 2020) (where employer represented a key contract as a "notable booking" prior to the contract actually being obtained); (also citing *In re CV Therapeutics*, Inc., No. C 03-03709 SI, 2004 WL 1753251, at *8 (N.D. Cal. Aug. 5, 2004) (defendant made a misleading statement about a specific communication about an FDA notification that "substantial additional clinical data are needed" and that the FDA "has three specific safety concerns that will need to be addressed prior to approval."). Additionally, in *Medina*, a case cited by Defendant at ECF 42 at 26, the defendant did not disclose four specific problems with its new drug, 215 F. Supp. 3d at 1105, and it made statements of specific facts that overstated the drug's efficacy and ability to compete with a competitor drug, *id*. at 1106-08. Unlike here, these cases present fact situations where a strong inference of misrepresentation can be inferred.

### D.    Safe Harbor Provision

A statement is "forward-looking" if it is a statement about "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 78u-5(i)(1)(B). A statement of a "forward-looking" nature is not actionable if it "is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement. 15 U.S.C. § 78u-5(c)(1)(A). Alternatively, a forward-looking statement is not actionable if it was not made "with actual knowledge" of its falsity or misleading nature. 15 U.S.C. § 78u-5(c)(1)(B). Thus, the scienter standard is higher for a forward-looking statement. *Yanek*, 388 F. Supp. 2d at 1124.

Because this Court finds that all of the Defendants' HDE Application-related statements

are not actionable for one reason or another, this Court need not reach the Safe Harbor Provision at this time (beyond what has already been discussed above). This Court only notes that based on the allegations in the FAC viewed in their entirety, this provision likely would provide an additional reason to support dismissal as it relates to many of the statements made by Defendant.

## III.    Accounting Restatement

Plaintiff also alleges a second source of false or misleading statements: those concerning Plaintiff's financial disclosures. In particular, Plaintiff claims that Defendants' failure to properly account for financial instruments called warrants and forwards caused it to "materially overstate[] its financial results." ECF 29 ¶ 191-92. Plaintiff also alleges that Defendants failed to prepare its financial reports in accordance with generally accepted accounting principles (GAAP) and failed to keep internal controls.

The Court starts by noting that accounting errors can provide the basis for a finding of scienter. However, much depends on the complexity of the error: the more complex, the less likely it can be directly attributed to scienter. *See In re Molson Coors Beverage Comp. Securities Litig.*, No. 1: 19-cv-00455-DME-MEH, 2020 WL 13499995 at *4 (D. Colo. Dec. 2, 2020) ("A violation of a simple accounting rule could be indicative of scienter, and the simpler the rule, the stronger the implication."). "Allegations of GAAP violation or accounting irregularities are insufficient to state a securities fraud claim." *Gold Res*., 776 F.3d at 1113 (citing *Fleming*, 264 F.3d at 1261)).

To state a claim, Plaintiff must couple the restatement "with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors." *Gold Res*., 776 F.3d at 1113. There are two potential causes for the error that the restatement corrected. One potential cause is a simple mistake or negligence. The other is an intent to misstate the accounting

for the purpose of misleading investors about Defendants' financial condition. While this claim is closer than the HDE-Application related claims, this Court finds that Plaintiff still falls short.

In his favor, Plaintiff identifies several circumstances surrounding the accounting matter that provides evidence in support a finding of scienter. For example, the issuance of the restatement in April of 2024 and the terminations of the CFO and accounting team. ECF 29 ¶ 256-58.

However, there is evidence on the other side of the equation as well. The area of accounting, involving warrants and how to count them on a company's budget is a complex area of accounting. Also, there is no indication that the accounting errors were indicative of abject fraud and/or company theft so grave as to cause financial ruin to the company. And the mere fact of restatement and of a financial officer's termination or resignation does not necessary indicate fraud. Additionally, Plaintiff suggests that this accounting matter was a pre-existing concern,[14] not one that arose during this time. This case is similar to *Gold Res*. where the plaintiff failed to plead circumstances that could indicate an improper motive to overcome what otherwise appeared to be a legitimate accounting correction. 776 F.3d at 1113-18. There, the Tenth Circuit upheld the district court's dismissal of the complaint. *Id*. at 1119.

This Court therefore recommends that the Motion to Dismiss [ECF 33] be granted with respect to the accounting restatement-based claim. This Court finds that Plaintiff failed to meet his pleading burden with respect to this claim as well.

## IV.    Section 20 Violation

Because this Court finds that Plaintiff has failed to state a claim under § 10b-5, then

---

[14]    Plaintiff alleges that around the time of SeaStar's creation, there already was doubt over whether the warrants should be treated as equity rather than a liability. ECF 29 ¶¶ 253, 257.

Plaintiff's claim under § 20(a) necessarily must be dismissed. To establish a claim under § 20(a), Plaintiff "must first establish a violation of the underlying securities law." *Nardy v. Chipotle Mexican Grill, Inc*., No. 17-cv-01760-WYD-STV, 2019 WL 3297467, at \*10 (D. Colo. Mar. 29, 2019) (citing *Adams*, 340 F.3d at 1107).

## V. Leave to Amend

Because the Court does not believe that amendment would be futile, the Court recommends that dismissal be without prejudice, *see Zorn v. City of Marion*, 774 F. Supp. 3d 1279, 1339-40 (D. Kan. 2025), except as to those statements the Court finds to be non-material.

## CONCLUSION

With respect to Count I, this Court finds that Plaintiff fails to adequately plead a Section 10(b) claim. Without a primary claim, this Court also recommends dismissal of the secondary Count II claim. *See In re Molson*, 2020 WL 13499995 at \*13.

Accordingly, the Court respectfully recommends[15] that:

---

[15] The Parties have **fourteen days from the date of this Recommendation** to file with the Clerk of Court written objections to findings of fact, legal conclusions, or recommendations that this Court proposes here. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla* (In re *Griego*), 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352

(1)    Defendants' Request for Judicial Notice [ECF 34] be **granted in part**.

(2)    Defendants' Motion to Dismiss [ECF 33] be **granted** but with leave to amend.

DATED at Denver, Colorado, this 27th day of February, 2026.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge

---

(10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review). Finally, all Parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

28